**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| WOOD MOUNTAIN FISH LLC,<br><br>    Plaintiff<br><br> v.<br><br>Mowi ASA (fka Marine Harvest ASA), Marine Harvest USA, LLC, Marine Harvest Canada, Inc., Ducktrap River of Maine LLC, Grieg Seafood ASA, Grieg Seafood BC Ltd., Bremnes Seashore AS, Ocean Quality AS, Ocean Quality North America Inc., Ocean Quality USA Inc., Ocean Quality Premium Brands, Inc., SalMar ASA, Leroy Seafood Group ASA, Leroy Seafood USA Inc., and Scottish Sea Farms Ltd.,<br><br>    Defendants. | **CASE NO. 19-cv-22128-RS**<br><br>**PLAINTIFF'S MOTION FOR APPROVAL OF PLAN FOR ALTERNATIVE SERVICE OF PROCESS ON NORWEGIAN DEFENDANTS AND INCORPORATED MEMORANDUM OF LAW** |

    Plaintiff Wood Mountain Fish LLC, pursuant to Federal Rules of Civil Procedure 4(e) and 4(f)(3), requests entry of an Order authorizing alternative service of process on six Norwegian defendants: Mowi ASA ("Mowi"), Grieg Seafood ASA ("Grieg"), Bremnes Seashore AS ("Bremnes"), Ocean Quality AS ("OQ"), SalMar ASA ("SalMar"), and Leroy Seafood Group ASA ("Leroy") (collectively, the "Norwegian Defendants") pursuant to the "Service Plan" discussed below.

**I. INTRODUCTION**

    This civil antitrust action arises from the alleged unlawful coordination of the prices charged to indirect purchasers of farm-raised salmon and salmon products derived therefrom (such as salmon fillets or smoked salmon) that were sold by multiple defendants. Dkt # 1 at 1. According to the European Commission, Defendants are "participat[ing in] or have participated in anti-competitive agreements and/or concerted practices related to different ways of price

coordination in order to sustain and possibly increase the prices for Norwegian salmon." *Id*. at 2. The complaint names fifteen defendants: five U.S. companies, three Canadian companies, one United Kingdom company, and the six Norwegian Defendants.[1] *Id*. at 3-9. As an antitrust action, this case falls under the purview of Section 12 of the Clayton Act, which authorizes worldwide service. 15 U.S.C. § 22.

In this Motion and Incorporated Memorandum, Plaintiff seeks an Order authorizing a three-part alternative service of process on the six Norwegian Defendants by email, by digital publication on a specially created website, and by service on U.S. subsidiary offices (except SalMar, which has no U.S. office or subsidiary).

## II. ANOTHER COURT IN THIS JURISDICTION HAS ORDERED THE IDENTICAL ALTERNATIVE SERVICE PLAN ON THE IDENTICAL DEFENDANTS.

In a related action proceeding in this jurisdiction, involving the same allegations of wrongdoing and the same Norwegian Defendants,[2] Judge Altonaga has already ordered the identical Plan for Alternative Service of Process on Norwegian Defendants requested in this Motion to be implemented. *In re: Farm-Raised Salmon and Salmon Prods. Antitrust Litig.*, Case No. 19-21551-CIV-ALTONAGA/Goodman (S.D. Fla. May 14, 2019). (Order attached as Exhibit 1 to the Declaration of Heidi M. Silton, ("Silton Decl."), ¶¶ 2, 3). The Order states:

> "Plaintiffs' service plan is reasonably calculated to give notice to the foreign Defendants. Plaintiffs cite numerous cases where courts have authorized plaintiffs to serve foreign defendants through e-mail, publication, and a subsidiary. . . . Similarly, here (1) Defendants conduct a majority of their business over the Internet; (2) Defendants routinely use e-mail to conduct their business; (3) Defendants have subsidiaries in the United States that have a sufficiently close

---

[1] Plaintiff has already served four of the U.S. defendants; Leroy Seafood USA, Inc. (North Carolina), Ducktrap River of Maine, LLC, Ocean Quality Premium Brands, Inc. (Delaware), and Ocean Quality USA, Inc. (Delaware), and is in the process of serving Marine Harvest USA, LLC (Florida), and, as well as Canadian defendants Marine Harvest Canada, Inc., Grieg Seafood BC Ltd., and Ocean Quality North America Inc. and U.K. defendant Scottish Sea Farms Ltd.

[2] That case is brought by the direct purchasers; this case is brought by the indirect purchasers.

> relationship to the Defendant parent companies; and (4) Plaintiffs show that email is likely to reach Defendants."

*Id*. at 3.  The Court ordered:

> "1. Plaintiffs may serve summons, a copy of the Complaint, and all other future filings in this matter upon each Norwegian Defendant via the e-mail addresses provided by that Defendant (i) as part of the data related to its online marketing, advertising, sales and website, including customer service e-mail address and onsite contact form; or (ii) via its sales agents in the United States listed on the website for each domain name; and
>
> 2. Plaintiffs may serve summons, a copy of Schneider's Fish and Seafood Corp.'s Complaint, and all other future filings in this matter upon the Norwegian Defendants via publication by posting a copy of the same on the website available at [website url set up for that purpose]."

*Id*. at 4.  Such alternative service in the present case is warranted and permissible in light of the above, and as set forth more fully below.

**III.  DOMESTIC SERVICE ON NORWEGIAN ENTITIES IS WARRANTED AND PERMISSIBLE.**

This motion addresses service of process on the Norwegian Defendants. Norway is a signatory to The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). Norway, however, has objected to the more liberal Section 10 of the Hague Convention, under which section Plaintiff intends to serve the Canadian and United Kingdom defendants via direct service on those defendants in Canada and the United Kingdom. However, service under the Hague Convention in Norway—which must proceed through Norway's Central Authority—will take too long for the speedy and inexpensive determination of this case. The Service Plan will fulfill the mandate of Rule 1 "to secure the just, speedy, and inexpensive determination of every action and proceeding." *See, e.g.*, *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 542-43 (1987) ("A rule of first resort [to the Hague Evidence Convention] in all cases would therefore be inconsistent with the overriding interest in the 'just, speedy, and inexpensive

3

determination' of litigation in our courts") (citing Rule 1); *Marks v. Alfa Grp.*, 615 F. Supp. 2d 375, 379 (E.D. Pa. 2009) (authorizing alternative service under Rule 4(f)(3) and citing the policy of Rule 1). Service in Norway via the Hague Convention will result in extensive and unnecessary delay and expense. First, it will require translation of the summonses, cover sheet, and complaint. The complaint alone is 69 pages and the cost of translation will exceed $2,000. *See* Silton Decl., ¶ 22. Once translated, the documents will have to be transmitted to Norway's Central Authority, which will then serve the documents. In Norway, "[t]he average time from receipt at the Central Authority to execution of the request varies between 3-5 months."[3] The Hague Law Blog gives an even longer estimate of five to six months.[4] The Federal Rules of Civil Procedure give courts the discretion in situations precisely like this to *approve* reasonable alternatives to the costly, time consuming, and potentially fruitless procedure of attempting service through the Hague Convention. *See Cincinnati Ins. Co. v. Belkin Corp.*, No. 07-0615-WS-C, 2008 WL 60402, at *1 (S.D. Ala. Jan. 2, 2008) ("[S]ervice of process . . . pursuant to the Hague Convention will take between four and six months."). This extended wait is unnecessary in this case because the Norwegian Defendants are all major companies with strong U.S. connections, including wholly-owned subsidiaries in several cases with business emails listed on their websites. If approved, Plaintiff plans to serve each of the Norwegian Defendants except SalMar[5] in three

---

[3] *See* Silton Decl., ¶ 23, Exs. 13 and 14; https://www.hcch.net/en/states/authorities/details3/?aid=246.

[4] *See id.*; https://www.haguelawblog.com/2017/04/serve-process-norway/.

[5] SalMar does not have an identifiable U.S. subsidiary or office. However, according to its 2018 Annual Report, "[s]ales are focused in the markets of Europe, Asia, and the USA." Therefore, service upon it via email at its designated email address, salmar@salmar.no, plus digital publication as described in the next section, is sufficient notice. *See* https://www.salmar.no/en/contact-us/, Silton Decl., ¶ 17, Ex. 9.

separate ways to satisfy the Constitutional notice requirement. This Service Plan will also not violate any strictures of international law, the federal rules, or any other applicable law.

**IV.   THE SERVICE PLAN IS PERMISSIBLE UNDER THE FEDERAL RULES OF CIVIL PROCEDURE AND COURTS HAVE AUTHORIZED SUCH PLANS IN SIMILAR CIRCUMSTANCES.**

Service of process *outside* the United States is governed by Rule 4(f), which provides that such service may be made by means that include international agreements such as the Hague Convention or, under Rule 4(f)(3), "by other means not prohibited by international agreement, as the court orders." *See Brookshire Bros., Ltd. v. Chiquita Brands Inter., Inc.*, No. 05-CIV-21962, 2007 WL 1577771, at *1-2 (S.D. Fla. May 31, 2007) (citations omitted) (finding that Rule 4(f)(3) includes no qualifiers or limitations indicating its availability only after attempting service of process by other means). "Rule 4(f)(3), Fed. R. Civ. P., allows a district court to order an alternate method for service to be effected upon foreign defendants, provided that it is not prohibited by international agreement, and is reasonably calculated to give notice to the defendants." *Abercrombie & Fitch Trading Co. v. 2cheapbuy.com*, No. 14-60250-CIV-ROSENBAUM, 2014 WL 11706443, at *2 (S.D. Fla. Mar. 5, 2014). According to the Ninth Circuit:

> As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement. No other limitations are evident from the text. In fact, as long as court-directed and not prohibited by an international agreement, service of process ordered under Rule 4(f)(3) may be accomplished in contravention of the laws of the foreign country.

*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).[6] The Hague Convention Outline prepared by the Hague Conference on Private International Law explains that the Hague Convention is an optional or "non-mandatory" method of effecting service on foreign

---

[6] "Federal Rule of Civil Procedure 4(h)(2) authorizes service of process on a foreign business entity in the manner prescribed by Rule 4(f) for individuals." *Id.*

5

defendants. *See* Silton Decl., ¶ 20, Ex. 12. In fact, the international agreements set forth in the Hague Convention *only* come into play if the local law of the forum where the civil action is pending requires that service of process to a foreign defendant physically take place within a foreign country. *Id*. ("[T]he law of the forum State determines whether or not a document has to be transmitted abroad for service in the other State."). The Florida Rules of Civil Procedure do not have any such requirement. Accordingly, the Hague Convention does not prohibit service of the Norwegian Defendants through other means. *See LDK Solar Securities Litg.*, No. C-07-05182-WHA, 2008 WL 2415186, at *3 (N.D. Cal. June 12, 2008) ("Plaintiffs are therefore correct that nothing in the Convention bars the requested means of service."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-5944-SC, 2008 WL 4104341, at *1 (N.D. Cal. Sept. 3, 2008) ("The Hague Convention therefore does not prohibit service on Defendants under Rule 4(f)(3)."). Courts have rejected the argument that plaintiffs must use the other methods of overseas service authorized by Rule 4(f), such as the Hague Convention, before asking a court to authorize service by "other means." These subsections are not mutually exclusive and "there is no indication" they "are meant to be read as a hierarchy." *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. 2012); *see also Atlas One Fin. Group, LLC v. Alarcon*, No. 12-CV-23400, 2014 WL 12571403, at *4 (S.D. Fla. Feb. 28, 2014) (Rule 4(f)(3) "is not considered as a last resort or as extraordinary relief."); *Rio Props*, 284 F.3d at 1015. In *Rio Properties*, the court explained:

> We find no support for [the defendant's] position. No such requirement is found in the Rule's text, implied by its structure, or even hinted at in the advisory committee notes.
>
> By all indications, court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2). Indeed, Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f), and each subsection is separated from the one previous merely by the simple conjunction "or." Rule 4(f)(3)

6

> is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently, on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates their primacy, and certainly Rule 4(f)(3) includes no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Id.* (footnote and citations omitted); *see also Bank Julius Baer & Co. Ltd. v. Wikileaks*, No. C 08-00824, 2008 WL 413737, at *2 (N.D. Cal. Feb. 13, 2008) ("a plaintiff is not first required to attempt service under Rule 4(f)(1) or Rule 4(f)(2)" before seeking court approval to serve under Rule 4(f)(3)). Any "method of service crafted by the district court [pursuant to Rule 4(f)(3)] must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Rio Props.*, 284 F.3d at 1016-17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 06-00025, 2007 WL 269087, at *5 (D. Guam Jan. 25, 2007) ("We should not lose sight of what service of process is about, it is about giving a party notice of the pendency of an action and the opportunity to respond."); *Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, No. 06-CV-477-BR, 2007 WL 219944, at *2 (D. Or. Jan. 24, 2007) (noting that the federal rule "stresses actual notice, rather than strict formalism"). Service under Rule 4(f)(3) also "must comport with constitutional notions of due process." *U.S. Commodity Futures Trading Commc'n v. Aliaga*, 272 F.R.D. 617, 620 (S.D. Fla. 2011). It must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). While notice must only be "reasonably calculated to give notice to the defendants," Plaintiff's Service Plan for the Norwegian Defendants goes well beyond that bar, consisting of two parts: service on email addresses created by the Norwegian

Defendants themselves, as well as service on U.S. subsidiary offices (except SalMar, which has no U.S. office or subsidiary).

  **A.**  **Email Service Is Permissible and Practical.**

Email service is permissible and practical and is not violative of international law. *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, No. 15-20590-CIV 2015, 2015 WL 5320947, at *2-4 (S.D. Fla. Sep. 14, 2015) is instructive as to why email service is permissible here. In that case, the plaintiff sought permission under Rule 4(f)(3) for alternative service where the defendant was located in a jurisdiction (Poland) that was a signatory to the Hague Convention, but objected to Section 10. The plaintiff argued that alternative service was warranted on the ground that "properly serving the Foreign Defendant [] could require substantial additional time if international agreements and protocol are strictly followed . . . . These methods . . . would serve to expedite the service of process on the Foreign Defendant . . . so that this case may proceed on the merits without sacrificing adequate notice or due process." *Id*. at *2. The district court agreed, found that email service to a defendant in Poland was not prohibited by the international agreement, and accepted plaintiff's argument that it is widely used within the Eleventh Circuit and comports with due process. *See id*. at *3 (citing *Lexmark Int'l, Inc. v. Ink Techs Printer Supplies*, LLC, 295 F.R.D. 259, 261 (S.D. Ohio 2013)) (citations omitted); *see also Chanel, Inc. v. PVBAG.com*, No. 13-23896- CIV-ALTONAGA/Simonton, 2013 WL 12065875, at *2 (S.D. Fla. Nov. 6, 2013); *Fru Veg Mktg. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1182-83 (S.D. Fla. 2012); *TracFone Wireless,* 278 F.R.D. at 694; *U.S. Commodity Futures Trading Comm'n*, 272 F.R.D. at 621; *Prewitt Enter. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 921, 927 (11th Cir. 2003).[7]

---

[7] Other examples include: *Bank Julius Baer*, 2008 WL 413737, at *2 (approving email service pursuant to Rule 4(f)(3)); *Jenkins v. Pooke*, No. C-07-30112-JSW, 2009 WL 412987, at *2-3 (N.D. Cal. Feb. 17, 2009) (email service); *Williams-Sonoma Inc. v. Friendfinder Inc.*,

Each of the Norwegian Defendants is a major international business that conducts substantial business by email and maintains well-kept webpages in the English language. *See, e.g.*, Leroy: post@leroyseafood.com[8]; Bremnes: bremnes@seashore.no[9]; OQ: jo@oceanquality.com[10]; Mowi: norway@mowi.com[11]; Grieg: info@griegseafood.com[12]; SalMar: salmar@salmar.no[13]; *see also* Silton Decl., Exs. 2-3, 6-8, 10.

### B.  Digital Publication Adds to the Validity of Email Service.

In addition to service by e-mail as described above, Plaintiff proposes service through a publication website where the complaint, and all other pleadings and documents would be posted, such that anyone accessing the website would find all documents filed in the case. Silton Decl., ¶ 3.

In addition to approving an identical digital publication format in *In re: Farm-Raised Salmon and Salmon Products Antitrust Litigation*, (Silton Decl., ¶ 3), the United States District Court for the Southern District of Florida held in a recent and highly analogous decision that service by email and digital publication is permissible where, as here, the defendants have not expressly objected to service by those means. *See generally Karsten Mfg. Corp. v. Store*, No. 18-61624-CIV, 2018 WL 8060707 (S.D. Fla. July 26, 2018) (Altonaga, J.) The *Karsten* defendants were located overseas (in China, Indonesia, and other Asia-Pacific nations), but had done business within the Southern District of Florida. *Id.* at *1. In support of their motion for alternative service, the *Karsten* plaintiffs submitted a declaration explaining that China was a signatory to the Hague

---

No. C-06-06572-KSW, 2007 WL 1140639, at *1-2 (N.D. Cal. April 17, 2007) (email service permitted where foreign defendants refused to accept service).
[8] https://www.leroyseafood.com/en/contact/our-offices/
[9] https://www.seashore.no/en/
[10] https://oceanquality.com/contact/
[11] https://mowi.com/contact/
[12] https://www.griegseafood.no/en/
[13] https://www.salmar.no/en/contact-us/

Convention, but that it had declared its opposition to the service of documents in its territory by the alternative means of service outlined in Article 10 of the Hague Convention, which does not mention email or digital publication. *See id.* Explaining that "[w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such a e-mail or publication[,]" the Court stated that "[a] court acting under Rule 4(f)(3) therefore remains free to order alternative means of service" based on "e-mail or internet communication." *Id.* The Court concluded that service by e-mail and publication was "reasonably calculated to give notice to Defendants . . . where, as here: (1) the defendants conducted their business over the Internet; (2) the defendants used e-mail regularly in their businesses; and (3) the plaintiff shows e-mail is likely to reach defendants." *Id.* at *2 (citing *Rio Props.*, 284 F.3d at 1017-19).

Judge Altonaga in her opinion in *In re: Farm-Raised Salmon and Salmon Prods. Antitrust Litig.*, relied squarely on *Karsten* when it approved the identical plan of alternative service in the related direct purchasers salmon antitrust case. *See* Silton Decl., Ex. 1.

> Both the United States and Norway are signatories to The Hague Convention on the Service Abroad of Extra-Judicial Documents in Civil and Commercial Matters, Nov. 15, 2965, 20 U.S.T. 361 (the "Hague Convention"), which does not specifically preclude service by e-mail or publication. *See Karsten*, 2018 WL 8060707, at *1. Where a signatory nation has objected to the alternative means of service provided by Section 10 of The Hague Convention, that objection is expressly limited to those means listed in the objection and does not present a blanket objection to other forms of service, such as e-mail or publication. *See, id.* at *2 (authorizing service by e-mail and publication) (citing *Stat. Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv-20590, 2015 WL 532097, at *3 (S.D. Fla. Sept. 14, 2015 (authorizing service by e-mail)). A court acting under Rule 4(f)(3) therefore remains free to order alternative means of service where a signatory nation has not expressly objected to those means. *See Karsten*, 2018 WL 8060707, at *2 (citing *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011)).

Silton Decl., Ex. 1 at 2-3. As the Court ordered in both *Karsten* and the related direct purchasers' salmon antitrust case, service by e-mail and digital publication is appropriate here.

10

**C. Subsidiary/Local Office Service Is Permissible and Plaintiff Seeks Court Permission in an Abundance of Caution.**

In addition to the e-mail and digital publication notice approved by this Court in both *Karsten* and the related direct purchasers' salmon antitrust case as described above, Plaintiff also proposes to effect service on the Norwegian Defendants' U.S. subsidiaries, where available. Service on a subsidiary of a foreign corporation is often permissible as an independent means of accomplishing service, if that subsidiary is an agent. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2008 WL 4104341, at *1 (service of foreign defendant through domestic subsidiary and counsel); *LDK Solar Securities Litig.*, 2008 WL 2415186, at *4 (authorizing service on local subsidiary); *Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 707-08 (1988) (Hague Convention need not be used to serve process on a foreign corporation when service can be made on a U.S. subsidiary with a sufficiently close relationship to overseas parent); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513-15 (D.N.J. 2008) (service upon Volkswagen of America ("VWoA") was effective upon Volkswagen AG because agency relationship existed but service upon VWoA was not effective against Audi AG and Volkswagen De Mexico, S.A. de C.V. because neither of those entities had an agency relationship with VWoA); *Lamb v. Volkswagenwerk AG*, 104 F.R.D. 95, 97-101 (S.D. Fla. 1985) (control exercised by German parent corporation over wholly owned U.S. subsidiary was sufficient basis for finding that parent transacted business in Florida or that subsidiary acted as parent's agent; objection of Federal Republic of Germany to direct mail service pursuant to Hague Service Convention inapplicable when service accomplished upon alter ego within United States); *Zisman v. Sieger*, 106 F.R.D. 194, 199-200 (N.D. Ill. 1985) (service accomplished within United States on local

agent of foreign defendant renders Hague Service Convention inapplicable). Florida's long-arm statute likewise provides for service on a foreign corporation:

> (2) If a foreign corporation has a resident agent or officer in the state, process shall be served on the resident agent or officer.
>
> (3) Any person, firm, or corporation which sells, consigns, or leases by any means whatsoever tangible or intangible personal property, through brokers, jobbers, wholesalers, or distributors to any person, firm, or corporation in this state is conclusively presumed to be both engaged in substantial and not isolated activities within this state and operating, conducting, engaging in, or carrying on a business or business venture in this state.

Fla. Stat. § 48.181. Further, sections 48.181(3) and 48.181(1) provide that if a nonresident defendant does business in the forum through "brokers, jobbers, wholesalers, or distributors," service through such an entity is proper as service on an agent of process." *See Vega Glen v. Club Mediterranee, S.A.*, 359 F. Supp. 2d 1352, 1356 (S.D. Fla. 2005) (finding plaintiffs failed to allege sufficient facts to show agency.). Fla. Stat. § 48.081 states in pertinent part:

> (1) Process against any private corporation, domestic or **foreign**, may be served:
>
> (a) On the president or vice president, or head of the corporation;
>
> (b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or **general manager**;
>
> (c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or
>
> (d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph (c), on any officer **or business agent** residing in the state.
>
> (2) If a foreign corporation has none of the foregoing officers or agents in this state, **service may be made on any agent transacting business for it in this state**.

*Id*. (emphasis added); *see also* Rule 4(e)(1) (service may be accomplished "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the

district court is located or where service is made"). Thus, service on a subsidiary or local office need not be "alternative service" under Rule 4(f)(3); rather, it qualifies as standard service of process under Rule 4(e). Nonetheless, Plaintiff includes it as part of the Service Plan. *See, e.g.*, *LDK Solar Securities Litig.* 2008 WL 2415186, at *3 (authorizing service of certain foreign defendants via service upon California office of corporation in which they served as officers pursuant to Rule 4(f)(3), notwithstanding that Hague Convention service had not yet been attempted). Based on the foregoing rules and authorities, Plaintiff seeks authorization to serve the following Norwegian Defendants through their domestic agents:

1. Mowi ASA (fka Marine Harvest ASA)

Mowi is a Norwegian seafood company with operations in several countries around the world. Mowi has at least two-wholly owned subsidiaries in the United States: Marine Harvest USA in Florida and Ducktrap in Maine. Mowi's website advertises that "Mowi USA is located in sunny Florida where salmon are flown in daily from Canada, Chile, Norway and other fish farms around the world." *See* Silton Decl., Ex. 2. Mowi's website also provides a postal address in Medley, Florida. *Id*. News articles have described the Miami-based entity as the "US downstream division" of Mowi ASA.[14] Silton Decl., Ex. 3. Finally, Marine Harvest ASA recently changed its name to Mowi ASA. In lockstep, Marine Harvest USA, LLC filed a change of name to change its name to Mowi USA, LLC. Silton Decl., ¶ 10, Ex. 4. The Mowi website also lists three high-level employees as contacts in the United States:

- Robert Clark, Sales Director Consumer Products. Robert Clark's Linkedin page lists him as the "Sales Directors, Consumer Products US at Marine Harvest Group."

---

[14] *See Marine Harvest to More-Than Double Miami Production with New Plant*, MLEX, Jan. 26, 2018, https://www.undercurrentnews.com, attached as Exhibit 3 to the Silton Decl.

- Diana Dumet, Marketing Director.

- Greg Dumais, Sale Manager (Ducktrap). Ducktrap is another Mowi subsidiary based in Maine.

Silton Decl., ¶¶ 7-12.

Further, the 2018 Mowi Integrated Annual Report, hosted on its website, boasts of the extent of their Miami ties: "In March, Mowi moved its operations to a new plant twice the existing site."[15] Clearly, Mowi holds the Miami headquarters out as a part of Mowi ASA. Thus, Marine Harvest USA is a wholly-owned subsidiary of Mowi and a mere "downstream division" of Mowi, and when Mowi recently changed its name, Marine Harvest USA followed suit. Therefore, service on Mowi via Marine Harvest USA is constitutionally sufficient and permissible.

### 2. OQ

OQ is a foreign corporation engaged in the salmon distribution business, with its headquarters in Bergen, Norway. Among the entities it operates through is OQ USA, a Delaware corporation headquartered in Dallas, Texas. That same Dallas office is listed as a "Sales Office" of OQ on its website, staffed by a General Manager, Dennis Bryant. *See* Silton Decl., ¶ 13, Ex. 5. Dennis Bryant is likewise the General Manager listed as the sales manager of OQ USA. Therefore, service upon Dennis Bryant in his capacity as General Manager of OQ and OQ USA is sufficient to serve OQ.

### 3. Grieg and Bremnes

Service upon OQ at its Dallas sales office is also sufficient to accomplish service on Grieg and Bremnes, each of which are Norwegian companies, either by itself or as a component of the Service Plan. As noted on the front page of OQ's website, "Ocean Quality is the sales organisation

---

[15] Mowi 2018 Annual Report at 140, https://issuu.com/hg-9/docs/mowi_annual_report_2018_4e0dacb83168e4?e=19530043/68703955.

[sic] of Grieg Seafood and Bremnes Seashore."[16] Thus, OQ holds itself out as a subdivision and an agent of Grieg and Bremnes. Bremnes reciprocates, stating on its web page that OQ is "the sales organization of Grieg Seafood and Bremnes Seashore[.]" *See* Silton Decl., Ex 6, 7. Grieg's webpage likewise confirms on its "Sales" page that "Ocean Quality AS is the sales organization of Grieg Seafood and Bremnes Seashore (60% owned by Grieg Seafood ASA and 40% owned by Bremnes Fryseri AS)." *See* Silton Decl., ¶ 15, Ex. 7. Grieg then lists contact information for OQ for those that wish to buy Grieg products. *Id*. Further, Grieg owns 60% of OQ and Bremnes owns 40% of OQ, demonstrating their effective control over OQ.[17] Clearly, Grieg and Bremnes use OQ to sell and distribute its product around the globe, including in the United States. In sum, OQ is the business agent of both Bremnes and Grieg and it may properly receive service of the summons and complaint on behalf of both companies. *See* Silton Decl., ¶ 16, Ex. 8.

    4.    <u>Leroy</u>

Leroy, while based in Norway, has a sales office in the United States. Leroy USA, a North Carolina corporation with its principal place of business in Chapel Hill, is a distribution subsidiary of Leroy, which exists to distribute Leroy products in the United States and thus may properly receive service of the summons and complaint on behalf of Leroy. *See* Silton Decl., ¶ 18, Ex. 10.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court enter an Order authorizing alternative service of process on the six Norwegian Defendants pursuant to the three-part Service Plan.

Dated: June 27, 2019

---

[16] *See* https://oceanquality.com/?pageID=28.
[17] *See* https://oceanquality.com/about-us/.

**SHEPHERD FINKELMAN MILLER & SHAH, LLP**

*/s/ Jayne A. Goldstein*
Jayne A. Goldstein
1625 North Commerce Parkway, Suite 320
Fort Lauderdale, FL 33326
Tel: 954-515-0123
Fax: 866-300-7367
Email: jgoldstein@sfmslaw.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

Fred Taylor Isquith (Admitted PHV)
Thomas H. Burt (Admitted PHV)
Veronica Bosco (Admitted PHV)
270 Madison Avenue
New York, New York 10016
Tel: 212-545-4600
Fax: 212-545-4653
isquith@whafh.com
burt@whafh.com
bosco@whafh.com

**PRITZKER LEVINE LLP**

Elizabeth C. Pritzker (Admitted PHV)
180 Grand Avenue, Suite 1390
Oakland, CA 94612
Tel: 415-692-0772
Fax: 415-366-6110
ecp@pritzkerlevine.com

**VITA LAW OFFICES P.C.**

Richard J. Vita
100 State Street, Suite 900
Boston, MA 02109
Tel: 617-426-6566
Email: rjv@vitalaw.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

Heidi M. Silton (Admitted PHV)
100 Washington Av. S., Suite 2200
Minneapolis, MN 55401-2159
Tel: 612-596-4092
Email: hmsilton@locklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of June 2019, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jayne A. Goldstein*_____
Jayne A. Goldstein
