# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Wood Mountain Fish, LLC, on behalf of itself and all others similarly situated, | Case No. 1:19-cv-22128-RS |
| Plaintiff, | **COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINITIFFS' RENEWED MOTION TO MODIFY RULE 23(g) ORDER AND APPOINT CUNEO GILBERT & LADUCA, LLP; COTCHETT, PITRE & MCCARTHY; AND GUSTAFSON GLUEK PLLC INTERIM LEAD COUNSEL AND MEMORANDUM OF LAW IN SUPPORT** |
| v. | |
| Mowi ASA (f/k/a Marine Harvest ASA), Marine Harvest USA, LLC, Marine Harvest Canada, Inc., Ducktrap River of Maine LLC, Grieg Seafood ASA, Grieg Seafood BC Ltd., Ocean Quality AS, Ocean Quality North America Inc., Ocean Quality USA Inc., Ocean Quality Premium Brands, Inc., SalMar ASA, Leroy Seafood Group ASA, Leroy Seafood USA Inc., and Scottish Sea Farms Ltd, | |
| Defendant. | |

| |
|---|
| This Filing Relates to Consolidated Case: |
| *Prime Steakhouse v. MOWI ASA*, *et al*, 1:20-cv-21463-RS |

| |
|---|
| This Filing Relates to Consolidated Case: |
| *Portland Hunt-Alpine Club v. MOWI ASA*, *et al*, 1:20-cv-21509-RS |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................. 1

II.  STATEMENT OF FACTS ..................................................................................... 2

    A.  Background on Indirect Purchaser Actions Pending Before this Court ................. 2

    B.  Background on the Court's Previous Rule 23(g) Order Appointing Counsel ....... 4

    C.  Background on the Salmon Distribution Chain .................................................. 5

III.  LEGAL STANDARD ............................................................................................ 6

IV.  ARGUMENT ......................................................................................................... 8

    A.  The Wood Mountain Fish Proposed Indirect Purchaser Class Definition is
    Overbroad and Causes Intraclass Tensions, Warranting Modification of the
    Court's Rule 23(g) Order to Ensure the Interests of the CIIPP Class Are
    Protected ................................................................................................. 8

        1.  Given the Distribution Chain at Issue in the Salmon Market, the Wood
        Mountain Fish Class Definition is Overbroad ............................................. 9

        2.  Plaintiff Wood Mountain Fish's Class Definition Leads to Irreconcilable
        Intraclass Tensions ................................................................................ 11

    B.  The Moving Firms Should be Appointed as Class Counsel to the Commercial and
    Institutional Indirect Purchaser Plaintiffs ............................................................ 13

        1.  The Moving Firms Thoroughly Investigated the Misconduct Alleged in
        this Action (Fed. R. Civ. P. 23(g)(1)(A)(i)) ............................................. 13

        2.  The Moving Firms Have Substantial Knowledge and Experience in
        Prosecuting Complex Litigation and in Antitrust Law (Fed. R. Civ. P.
        23(g)(1)(A)(ii))-(iii) ............................................................................. 14

        3.  The Moving Firms are Willing and Able to Commit Resources to
        Represent the Proposed Commercial and Institutional Indirect Purchaser
        Plaintiff Class (Fed. R. Civ. P. 23(g)(1)(A)(iv)) ...................................... 19

    C.  Ability to Work Cooperatively With Others........................................................ 19

    D.  A Class Dedicated to the Interests of Commercial and Institutional Purchasers is
    Particularly Important in Light of the Issues Presented by COVID-19 ................ 20

V.  CONCLUSION ...................................................................................................... 20

    CERTIFICATE OF GOOD FAITH CONFERENCE ................................................. 21

    REQUEST FOR HEARING ..................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997).............................................................................11

*In re Automotive Parts Antitrust Litigation,*
  2:12-md-02311 (E.D. Mich.) ..................................................2, 14, 15, 16

*In re Automotive Parts Antitrust Litigation,*
  2:12-md-02311 (E.D. Mich) ...................................................................17

*Bhatia v. 3M Co.,*
  16-cv-1304 (D. Minn.)...........................................................................17

*In re Broiler Chicken Antitrust Litig.,*
  Case No. 1:16-cv-08637, ECF No. 144 ....................................... *passim*

*In re Capacitors Antitrust Litigation,*
  Case No. 3:14-cv-03264-JST (N.D. Cal.).............................15, 16, 18, 20

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
  4:07-cv-05944-JST (N.D. Cal.) ...............................................................17

*In re: CenturyLink Residential Customer Billing Disputes Litig.,*
  MDL No. 17-2795 (D. Minn.) ..................................................................18

*Coleman v. Gen. Motors Acceptance Corp.,*
  220 F.R.D. 64 (M.D. Tenn. 2004) .............................................................6

*In re: Dealer Management Systems Antitrust Litig.,*
  MDL No. 2817 (N.D. Ill.).........................................................................17

*In re Disposable Contact Lens Antitrust Litig.,*
  MDL No. 2626 (M.D. Fla.).......................................................................18

*In re Domestic Airline Travel Antitrust Litigation,*
  Case No. 15-1404 (CCK)..........................................................................17

*In re Dynamic Random Access Memory (DRAM II) Antitrust Litigation,*
  Case No. 4:18-cv-03805 (N.D. Cal.) ...................................................17, 18

*In re Generic Pharmaceuticals Pricing Antitrust Litig.,*
  MDL No. 2724 (E.D. Pa.)..........................................................................15

*In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*,
  3:18-cv-00850 (E.D. Va.) ......................................................................................17

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-MD-2420 YGR, 2018 WL 1156797 (N.D. Cal. Mar. 5, 2018) ..............................9, 16

*In re Lithium Ion Batteries Antitrust Litigation*,
  Case No. 4:13-md-02424 (N.D. Cal.) ..................................................................15

*In Re Medtronic, Inc. Implantable Defibrillators Products Liability Litig.*,
  MDL No. 1726 (D. Minn.) ...................................................................................17

*In Re: Medtronic, Inc., Sprint Fidelis Leads Products Liability Litig.*,
  MDL No. 1905 (D. Minn.) ...................................................................................17

*In re Methionine Antitrust Litigation*,
  Case No. 00-1311 CRB (N.D. Cal.) .....................................................................16

*Millman v. Brinkley*,
  No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113 (N.D. Ga. Oct. 1,
  2004) ............................................................................................................14

*In re Optical Disk Drive Antitrust Litigation*,
  3:10-md-02143-RS (N.D. Cal.) ...........................................................................17

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ........................................................................................11

*In re Packaged Seafood Products Antitrust Litig.*,
  Case No. 3:15-md-02670-JLS-MDD, ECF No. 119..................................................... *passim*

*In re Parking Heaters Antitrust Litigation*,
  Case No. 1:15-mc-00940-JG-JO (E.D.N.Y.) ..........................................................16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  827 F.3d 223 (2d Cir. 2016)...............................................................................13

*In re Photochromic Lens Antitrust Litig.*,
  No. 8:10-CV-00984-T-27EA, 2014 WL 1338605 (M.D. Fla. Apr. 3, 2014) .........................11

*In re Pork Antitrust Litig.*,
  Case No. 18-1776-JRT-HB, ECF No. 150 ................................................................ *passim*

*Precision Associates v. Panalpina*,
  No. 08-0042 JG (E.D.N.Y.) ................................................................................17, 20

*In re Resistors Antitrust Litigation*,
  Case No. 5:15-cv-03820-RMW (N.D. Cal.)..........................................................15, 16, 18, 20

*The Shane Group, Inc., et al., v. Blue Cross Blue Shield of Michigan,*
    10-cv-14360 (E.D. Mich.) ................................................................................18

*In re Syngenta Litig.,*
    No: 27-CV-15-3785 (Minn. Dist. Ct.) (MN) ....................................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    MDL No. 07-1827 (N.D. Cal.) ........................................................................18

*In re Transpacific Passenger Air Transportation Antitrust Litigation,*
    3:07-cv-05634 (N.D. Cal.) ..............................................................................17

*In re Vitamin C Antitrust Litig.,*
    MDL No. 1738 (E.D.N.Y.) ..............................................................................18

**Statutes**

28 U.S.C. § 1404 ................................................................................................4

**Rules**

Federal Rules of Civil Procedure
    Rule 23(a) ........................................................................................................11
    Rule 23(g) ...................................................................................................*passim*
    Rule 23(g)(1)(A)(i) ..........................................................................................13
    Rule 23(g)(1)(A)(i)-(iv) ....................................................................................7
    Rule 23(g)(1)(A)(ii) ........................................................................................14
    Rule 23(g)(1)(A)(iv) ........................................................................................19
    Rule 23(g)(3) ....................................................................................................6

Local Rule
    7.1(a)(3) ..........................................................................................................21
    7.1(b) ..............................................................................................................21

**Other Authorities**

Buying From Us, woodmountainfish.com (April 21, 2020),
    https://woodmountainfish.com/buying-from-us.html ....................................1, 12

THE INTERNATIONAL HANDBOOK OF PRIVATE ENFORCEMENT OF
    COMPETITION LAW (Edward Elgar Publishing Inc., 2010) ............................15

Gunnar Knapp, Cathy A. Roheim, & James L. Anderson*, The Great Salmon Run:*
    *Competition Between Wild and Farmed Salmon* ..........................................5, 6

*Manual for Complex Litig.* § 10.221 (4th ed. 2004) ..........................................6

*Manual for Complex Litig.* § 21.11 (4th ed. 2004) ............................................6

## I.       INTRODUCTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 23(g), Cuneo Gilbert & LaDuca, LLP (the "Cuneo Firm"), Cotchett, Pitre & McCarthy, LLP ("CPM"), and Gustafson Gluek PLLC (together, "Moving Firms") hereby renew their previously filed motion[1] and move the Court to adjust its Rule 23(g) orders appointing indirect purchaser plaintiff counsel (*see* ECF Nos. 24, 92) and for an order appointing the Moving Firms as Interim Lead Class Counsel for the Proposed Commercial and Institutional Indirect Purchaser Plaintiff ("CIIPP") Class. The CIIPPs primarily consist of restaurants (and other commercial food preparers) that purchase salmon indirectly.

As explained herein, the Moving Firms seek to address unavoidable tension within the current indirect purchaser plaintiff class definition (Pl. Wood Mountain Fish Compl. ¶ 5) and to bring clarity to the various indirect purchaser constituencies that exist in the salmon market. As currently pled, the indirect purchaser plaintiff class is defined to include <u>all</u> indirect purchasers. Pl. Wood Mountain Fish Compl. ¶ 5. However, members of the proposed CIIPP Class, namely restaurants, are a discrete group of indirect purchasers that often purchase salmon from other indirect purchasers, distributors such as Plaintiff Wood Mountain Fish LLC ("Wood Mountain Fish"). Specifically, Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club are restaurant/food service entities that buy salmon and then prepare finished meals.  By contrast, Plaintiff Wood Mountain Fish is a distributor that buys and then resells salmon, usually to restaurants.[2]  For every dollar of overcharge it paid on farm-raised salmon, Plaintiff Wood Mountain Fish and other distributors or resellers either offset that overcharge by raising its

---

[1] Prior to transfer, the Moving Firms sought appointment as interim class counsel for the putative class in the District Court of Maine. See Case No. 2:19-cv-00446-JAW, ECF No. 21.

[2] Buying From Us, woodmountainfish.com (April 21, 2020), https://woodmountainfish.com/buying-from-us.html.

downstream price (*i.e.*, passing-on the overcharge) to restaurants and other foodservice entities, or Plaintiff Wood Mountain Fish absorbed the overcharge by compressing its margins. Indirect purchaser distributors and indirect purchaser restaurants are adverse to one another on a dollar-for-dollar basis when it comes to determining which set of entities actually suffered damages as a results of the defendants' alleged conduct. This tension explains other courts confronting this situation in antitrust cases involving the food supply chain has appointed separate class counsel. *See*, *e.g.*, *In re Broiler Chicken Antitrust Litig.,* Case No. 1:16-cv-08637, ECF No. 144; *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD, ECF No. 119; *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB, ECF No. 150; *See also Automotive Parts Antitrust Litigation*, MDL 2311 (E.D. Mich.) (March 23, 2012), ECF. No. 64.

In this way, the interests of all indirect purchasers are best served by separating the CIIPP Class from the currently defined Indirect Purchaser Class and allowing each to be represented by their respective set of highly respected advocates. Accordingly, it is necessary to modify the current indirect purchaser plaintiff class leadership structure to appoint separate counsel on behalf of the proposed CIIPP Class. In making this request, the undersigned do not question the capability, experience, effort or professionalism of the counsel the Court has appointed. This motion poses the simple question whether any counsel can represent two groups in an action, if successful, will pit one group against the other.  The correct answer is no.

## II.  STATEMENT OF FACTS

### A.  Background on Indirect Purchaser Actions Pending Before this Court

On May 9, 2019, the Moving Firms, the first firms to file an indirect purchaser action regarding price-fixing in the Salmon industry, filed a class action complaint on behalf of Plaintiff Prime Steakhouse in the District Court of Maine alleging Defendants unlawfully coordinated the

price of farm-raised salmon and salmon products derived therefrom.  In that action, the Prime Steakhouse Plaintiffs defined an indirect purchaser class comprised of the following entities: commercial and institutional indirect purchasers (*i.e.*, restaurants) of farm-raised salmon and/or products derived therefrom. Pl. Prime Steakhouse Compl. ¶ 5. These commercial and institutional indirect purchasers primarily obtain their salmon from distributors and consist of entities like restaurants, hotels, and other food service establishments.

On May 24, 2019—two weeks after Plaintiff Prime Steakhouse—Plaintiff Wood Mountain Fish LLC filed a class action complaint in this Court alleging unlawful price coordination of farm-raised salmon and salmon products derived therefrom against the same Defendants. In that action, the Wood Mountain Plaintiffs defined an indirect purchaser class comprised of the following:

> [A]ll persons and entities in the States or territories recognizing the right of indirect purchasers to recover for injuries caused by anticompetitive conduct . . . who indirectly purchased farm-raised salmon or products derived therefrom from one or more Defendants and/or entities owned or controlled by them from July 1, 2015 to the present.

> Pl. Wood Mountain Fish Compl. ¶ 5.

As that definition objectively demonstrates, the Wood Mountain Fish Plaintiff's indirect class definition purports to represent all indirect purchasers, despite the fact that indirect purchasers in this market operate on many different levels of the distribution chain and, in some cases, sell to each other thereby creating a class with competing interests, as presently defined.  As such, the Wood Mountain Fish Plaintiff's indirect class, as defined, is overbroad, creates intraclass tension that will lead to unavoidable conflicts, and cannot proceed as presently defined.

Similarly, on October 1, 2019, Plaintiff Portland Hunt-Alpine Club, LLC filed its class action complaint in the District Court of Maine alleging unlawful price coordination of farm-raised salmon and salmon products derived therefrom against nearly the same Defendants. Like the *Prime*

*Steakhouse* case, the indirect class in the *Portland Hunt-Alpine Club* case is defined as: commercial and institutional purchasers (*i.e.*, restaurants) of farm-raised salmon and/or products derived therefrom. Pl. Portland Hunt-Alpine Club Compl. ¶ 6. Consequently, that case seeks to represent the same segment of commercial and institutional indirect purchasers as Prime Steakhouse.

Following this, the actions filed by Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club were transferred from the District Court of Maine to this Court pursuant to 28 U.S.C. § 1404. Prior to transfer, however, the Moving Firms sought appointment as interim class counsel for the putative CIIPP Class. Case No. 2:19-cv-00446-JAW, ECF No. 21. These actions were transferred before the District Court of Maine ruled on the motion for appointment pursuant to Rule 23(g).

B.    **Background on the Court's Previous Rule 23(g) Order Appointing Counsel**

On May 31, 2019, counsel for Plaintiff Wood Mountain Fish sought appointment as interim class counsel for the Indirect Purchaser Class in its entirety. Pl. Mot. to Appoint Lead Counsel, ECF No. 9. On June 21, 2019, this Court appointed Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as interim class counsel for the Indirect Purchaser Class. Order Granting Mot. to Appoint Lead Counsel, ECF No. 24. On January 10, 2020, Plaintiff Wood Mountain Fish sought to modify the Court's previous Rule 23(g) order by seeking appointment of Lockridge Grindal Nauen P.L.L.P ("Lockridge Grindal") as Co-Lead Class Counsel, (Pl. Mot. to Appoint Lead Counsel, ECF No. 91), which this Court granted on February 24, 2020. Order Granting Mot. to Appoint Lead Counsel, ECF No. 92 (Wolf Haldenstein and Lockridge Grindal are collectively referred to herein as "Wood Mountain Fish Counsel").

Notwithstanding the fact that Wood Mountain Fish Counsel are immensely qualified to serve as lead counsel in a complex action such as this, the commercial relationship between Plaintiff Wood Mountain Fish, and other indirect resellers of salmon on the one hand, and Plaintiffs

Prime Steakhouse and Portland Hunt-Alpine Club, and other indirect commercial food preparers that purchase from distributors, reveals that the current class leadership structure is untenable.

It is for this reason that the Moving Firms now seek to renew their previously filed motion to appoint the Moving Firms as interim class counsel for the Proposed CIIPP Class and modify the Court's previous Rule 23(g) order.

### C.    Background on the Salmon Distribution Chain

The salmon distribution chain in the United States is complex and includes a range of participants. Gunnar Knapp, Cathy A. Roheim, & James L. Anderson, *The Great Salmon Run: Competition Between Wild and Farmed Salmon*, TRAFFIC North America, January 2007, at 147.

Primary and secondary processors operate at the beginning of the distribution chain and prepare the product to either be shipped directly to a fresh market or stored for later processing and distribution. *Id.* Middlemen such as brokers or traders are then used to facilitate sales of the processed product. *Id.* Seafood importers subsequently become involved when the product originates from a foreign country. *Id*. at 150. These importers will purchase the product from foreign suppliers and then sell it in the United States. *Id.*

Many distributors purchase salmon and salmon products from processors, traders, importers or wholesalers and deliver those products to food service operations (such as restaurants, hotels, schools, or hospitals) or retail markets (such as supermarkets or fish markets). *Id.* at 149. Additionally, these distributors are generally classified as one of two types: broadline distributors or specialty seafood distributors. *Id.* Broadline distributors sell a wide range of food and non-food items, including salmon, to either food service markets or supermarkets. *Id.* Importantly, broadline distributors generally do not purchase seafood directly from foreign suppliers, but instead buy from importers, processors, and brokers. *Id.* Specialty seafood distributors are those that specialize in

seafood or seafood-related products and tend to sell to both food service and retail accounts. *Id.* As with broadline distributors, specialty seafood distributors generally purchase their seafood from importers, processors, brokers, and traders, as well as other distributors. *Id.*

As noted above, restaurants generally purchase seafood from broadline and specialty seafood distributors, at least some of whom are themselves indirect purchasers. *Id.* Consequently, restaurants, hotels, schools, and hospitals are generally supplied by such distributors. Thus, while each of these entities can be characterized as a type of indirect purchaser, restaurants, like Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club, operate at a discrete level of the distribution chain than entities like Wood Mountain Fish, despite both being indirect purchasers.

## III.    LEGAL STANDARD

According to the Manual for Complex Litigation, the primary consideration in appointing leadership in a complex action "is achieving efficiency and economy without jeopardizing fairness to the parties." *Manual for Complex Litig.* § 10.221 (4th ed. 2004). Rule 23(g) authorizes courts to "designate interim counsel to act on behalf of a putative class before determining whether to certify the actions as a class action." Fed. R. Civ. P. 23(g)(3). The designation of interim counsel "clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litig.* § 21.11 (4th ed. 2004). "In considering a motion to appoint interim lead class counsel, a court should consider who will best represent the interests of the class, and who is best able to accomplish the class action goals of efficiency and economy in doing so." *See Coleman v. Gen. Motors Acceptance Corp.*, 220 F.R.D. 64, 100 (M.D. Tenn. 2004).

Rule 23(g) sets forth four considerations for the appointment of interim lead class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed R. Civ. P. 23(g)(1)(A)(i)-(iv). No single factor is determinative; all factors must be weighed to determine who can best represent the class. *See* Advisory Committee Notes (2003 Amendments).

The leadership structure described herein best satisfies the foregoing considerations, as the Moving Firms have vast experience in complex antitrust actions and are well situated to represent the unique interests of the recently transferred proposed CIIPP Class. Moreover, while the Moving Firms recognize that this Court previously appointed Wolf Haldenstein and Lockridge Grindal as interim class counsel for the indirect purchasers, and believes those firms are still very well suited to represent other segments of the Indirect Purchaser Class, the presence of a new and distinct subset of indirect purchasers warrants modification of the Court's previous order. This is particularly true given that many indirect purchasers sell to other indirect purchasers in this market, rendering it impossible to represent a class that purports to represent all indirect purchasers. Thus, appointing the Moving Firms as Interim Lead Counsel for the CIIPP Class will ensure the interests of all parties are fairly and adequately represented.

The Moving Firms are three of the nation's leading law firms practicing complex litigation and have recovered substantial damages and settlements for injured plaintiffs. *See* Declaration of Jonathan Cuneo ("Cuneo Decl."), Exhibit A ("CGL Resume"); Declaration of Adam J. Zapala ("Zapala Decl."), Exhibit A ("CPM Bio"); Declaration of Daniel C. Hedlund ("Hedlund Decl."), Exhibit A ("Gustafson Gluek Resume"). The Moving Firms also have substantial experience

representing restaurants and other commercial food preparers in antitrust litigation. *See, e.g., In re Broiler Chicken Antitrust Litigation,* Case No. 1:16-cv-08637, ECF No. 144; *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD, ECF No. 119; *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB, ECF No. 150. As explained herein, the Moving Firms' lawyers satisfy the factors outlined in Federal Rule of Civil Procedure ("Rule") 23(g).

## IV.    ARGUMENT

As provided below, the facts and arguments demonstrate that it is appropriate to modify the Court's existing Rule 23(g) order, and each criterion set forth in Rule 23(g) supports the Moving Firms' request and the proposed leadership structure. In particular, the Moving Firms' immense experience in leadership roles in many of the largest indirect purchaser antitrust class actions ever brought in the United States will allow them to best serve the interests of the class and efficiently and effectively pursue this matter. *See* Cuneo Decl.; Zapala Decl.; Hedlund Decl.

### A.    The Wood Mountain Fish Proposed Indirect Purchaser Class Definition is Overbroad and Causes Intraclass Tensions, Warranting Modification of the Court's Rule 23(g) Order to Ensure the Interests of the CIIPP Class Are Protected

As a preliminary matter, the Moving Firms recognize and appreciate that this Court has previously appointed interim class counsel for "indirect purchasers." Order Granting Mot. to Appoint Lead Counsel, ECF Nos. 24, 92.  But this order should be modified because it predated the transfer and consolidation of two actions filed by entities representing a different segment of indirect purchasers.  Moreover, the class definition in the Wood Mountain Fish case (*see* Pl. Wood Mountain Fish Compl. ¶¶ 5, 75) leads to potentially serious intraclass tensions that cannot, and should not, be pushed further down the road when they will unavoidably develop into actual conflicts.  Thus, the only way to address these present tensions is to appoint separate class counsel now to protect the interests of the different constituencies that make up "indirect purchasers."

### 1.    Given the Distribution Chain at Issue in the Salmon Market, the Wood Mountain Fish Class Definition is Overbroad

As currently pled, Plaintiff Wood Mountain Fish purports to represent *all* indirect purchasers of farm-raised Salmon. Pl. Wood Mountain Fish Compl. ¶¶ 5, 75. However, as explained *supra* at § I.C., there are a number of different levels of indirect purchasers, some of which overlap, some of whom sell to each other, and some of whom are completely separate. Each of these links in the chain will require a different economic analysis and econometric model to measure pass-through of the alleged overcharge arising from the unlawful conduct. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2018 WL 1156797, at *3 (N.D. Cal. Mar. 5, 2018) ("In a class of indirect purchasers, proof of class-wide antitrust impact is made more complex because plaintiffs must offer a model of impact and damages that demonstrates the alleged overcharge was passed through to each successive link in the distribution chain, and ultimately to the plaintiffs.").[3]

For example, as described *supra* at § I.C., Defendants sell to direct purchasers of farm-raised Salmon. DPPs' Consolidated Amended Class Action Compl. ¶ 6, Case No. 1:19-cv-21551-CMA, ECF No. 168. Most of these direct purchasers are wholesalers and large food distributors of farm-raised Atlantic salmon. *Id.* ¶¶ 12-18. These direct purchasers, in turn, ultimately sell to a variety of indirect purchasers, including but not limited to: (1) secondary resellers or distributors, who further sell (and presumably, pass-on the overcharge) to other indirect purchasers;[4] (2)

---

[3] Moreover, to show pass through, Wood Mountain Fish Counsel will need to subpoena transactional data from the entities at the different levels of the distribution chain with which Wood Mountain Fish does business. Consequently, Wood Mountain Fish Counsel will be put in the position of subpoenaing such information from its own class members to do so.

[4] Plaintiff Wood Mountain Fish appears to be a secondary distributor of farm-raised salmon. In other words, it indirectly purchases farm-raised salmon from wholesalers and turns around and sells that salmon to restaurants and grocers.

restaurants and other commercial food preparers, like hospitals, nursing homes, and schools who purchase farm-raised salmon to prepare into meals; (3) grocery stores that purchase farm-raised salmon from wholesalers and distributors; and (4) customers who purchase farm-raised salmon at grocery stores,. The current Wood Mountain Fish complaint, however, purports to represent *all* of the foregoing entities and persons, and likely others who are not listed herein.

Although not apparent at the outset, the arrival of Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club brings a host of questions to the forefront of consideration. Can current class counsel represent secondary distributors who only resell farm-raised Atlantic salmon *and* also purport to represent these other levels of the distribution chain?  Can any one entity represent grocery stores that indirectly purchase salmon, while at the same time representing that grocery store's customers, who also indirectly purchased salmon *from* these grocery stores? Wouldn't the grocery stores' interest to argue that it suffered from Defendants' overcharges be in conflict with the grocery store customers' argument that the grocery stores passed on these overcharges to them resulting in injury? Does the current group of class counsel purport to represent *both* restaurants and their distributors? Does the current group of class counsel represent other commercial food preparers of farm-raised salmon? It is not clear, but based on the class definition in the Wood Mountain Fish complaint – the answer is to all of the foregoing is yes.  It is to reconcile these issues that the Court must modify its Rule 23(g) Order appointing Wolf Haldenstein and Lockridge Grindal to represent all indirect purchasers.

The need for separate class counsel has been recognized in many currently pending antitrust actions involving the food supply chain. For example, in *In re Packaged Seafood*, the district court appointed three sets of class counsel: one for the direct purchaser plaintiffs; one for the commercial food preparer indirect purchasers, such as restaurants; and one for end-payer

customers who purchased the price-fixed product at the grocery store (also an indirect action). *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD, ECF No. 119. This structure was likewise used in the massive *Broilers* litigation, currently pending in the Northern District of Illinois, where separate groups of class counsel have been appointed to represent direct purchaser, indirect commercial food preparers, and indirect end consumers who purchased poultry at the grocery store. *In re Broiler Chicken Antitrust Litigation,* Case No. 1:16-cv-08637, ECF No. 144. The same is also true in the *Pork* litigation. *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB, ECF Nos. 149, 150, 151. Critically, in none of these antitrust litigations (all involving distribution chains nearly identical, or substantially similar to, that of the salmon industry) are all indirect purchasers purportedly represented by the same class counsel.

### 2.       Plaintiff Wood Mountain Fish's Class Definition Leads to Irreconcilable Intraclass Tensions

In the context of class certification, intraclass conflicts can prevent the representative plaintiffs from adequately representing the entire class and thus defeat class certification. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999). In such instances, the named representatives are inadequate because "their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members." *Id.* Should this occur, courts are instructed to devise systems that provide "structural assurances of fairness" – usually by appointing separate counsel. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 627 (1997).

Moreover, "[c]laims of 'disparate groups cannot be mixed together under Rule 23(a) where the economic reality of the situation leads some class members to have economic interests that are significantly different from-and potentially antagonistic to—the named representatives purporting to represent them.'" *In re Photochromic Lens Antitrust Litig.*, No. 8:10-CV-00984-T-27EA, 2014

WL 1338605, at *10 (M.D. Fla. Apr. 3, 2014) (*quoting Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1195 (11th Cir.2003)).

Given that intraclass conflicts can serve as a bar to class certification, it is prudent to address these tensions at an early juncture, where, as here, it is feasible. While Plaintiffs Wood Mountain Fish, Prime Steakhouse, and Portland Hunt-Alpine Club are each indirect purchasers of Norwegian farm-raised salmon and salmon products, they operate at different levels and stages of the distribution chain. In fact, Plaintiff Wood Mountain Fish is "distributes fish and seafood" and "specializes in . . . selling exclusively to high-end restaurants and grocers in the state of Vermont."[5]

In contrast, Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club are restaurants—the very entities to which Plaintiff Wood Mountain Fish purports to distribute its product. Therefore, Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club operate downstream from distributors such Plaintiff Wood Mountain Fish. This distinction necessarily entails an inquiry into whether any of the overcharge that stems from Defendants' alleged price-fixing was passed on by distributors like Plaintiff Wood Mountain Fish to commercial and institutional indirect purchasers like Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club.

As currently pled, Plaintiff Wood Mountain Fish purports to represent *both* indirect purchasing distributors *and* restaurants like Prime Steakhouse, since both purchase indirectly. Moreover, as highly respected and ethical attorneys, Wood Mountain Fish Counsel will undoubtedly satisfy their duty to the class by zealously advocating on behalf of the class. But this necessarily require advocating for contrary positions. Wood Mountain Fish will be incentivized to argue that the entire overcharge is passed on to it from direct purchasers, and that it absorbs, and

---

[5] Plaintiff Wood Mountain Fish's Class Action Complaint, ¶ 10, ECF No. 1 (1:19-cv-22128-RS); Buying From Us, woodmountainfish.com (April 21, 2020), https://woodmountainfish.com/buying-from-us.html.

does not pass-on, the overcharge to downstream indirect purchasers, such as restaurants. Restaurants, like Prime Steakhouse and Portland Hunt-Alpine Club, on the other hand will be incentivized to argue that distributors, including indirect purchasing distributors that sell to restaurants, pass along the overcharges to the restaurants themselves. Damages to Wood Mountain Fish and the restaurants are, therefore, mutually exclusive – that is, every single dollar that goes to an indirect purchasing distributor in damages, is a dollar that also cannot be awarded to restaurants downstream, and vice versa.  There is simply no way to represent both sets of purchasers.

In the foregoing sense, Prime Steakhouse and Portland Hunt-Alpine Club's interests (and all other restaurants that purchase indirectly) are antagonistic to those of Plaintiff Wood Mountain Fish. Ultimately, this requires not only separate indirect purchaser cases, but also separate counsel to ensure that these tensions do not evolve into a full-on conflict that proves fatal to the successful prosecution of this action. See *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223 (2d Cir. 2016) (vacating class certification and reversing approval of a $7.25 billion settlement due to a conflict in class counsel's representation of classes with competing interests).

### B.     The Moving Firms Should be Appointed as Class Counsel to the Commercial and Institutional Indirect Purchaser Plaintiffs

#### 1.     The Moving Firms Thoroughly Investigated the Misconduct Alleged in this Action (Fed. R. Civ. P. 23(g)(1)(A)(i))

The Moving Firms were the first firms to file an indirect purchaser action regarding price-fixing in the Salmon industry. In doing so, the Moving Firms comprehensively researched the alleged misconduct giving rise to the Commercial and Institutional Indirect Purchaser Plaintiffs' claims, the farm-raised salmon industry, and studied the potential injury and damages Defendants' alleged conduct caused. Cuneo Decl. ¶ 7. As further explained herein, the Moving Firms have

devoted substantial resources—both in time and money—to investigate the allegations in the complaints and will devote all necessary resources to achieve a successful outcome.

> **2.     The Moving Firms Have Substantial Knowledge and Experience in Prosecuting Complex Litigation and in Antitrust Law (Fed. R. Civ. P. 23(g)(1)(A)(ii))-(iii)**

In selecting lead counsel:

> [T]he "guiding principle" is who will best serve the interest of the plaintiffs. The criteria for selecting counsel include factors such as experience and prior success record, the number, size, and extent of involvement of represented litigants, the advanced stage of the proceedings in a particular suit, and the nature of the causes of action alleged.

*Millman v. Brinkley*, No. 1:03-cv-3831-WSD, 2004 U.S. Dist. LEXIS 20113, at *9 (N.D. Ga. Oct. 1, 2004) (quoting Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 9.35 at 388 (4th ed. 2002)). Each of these factors weighs in favor of approving the Moving Firms' motion to serve as Interim Lead Class Counsel, as each firm has substantial experience litigating complex antitrust class actions and serving in leadership positions therein.

Mr. Cuneo and his firm possess substantial experience prosecuting price-fixing involving indirect purchasers, including in the seafood and auto parts industries. Mr. Cuneo is the sole court-appointed lead counsel for a class of commercial food preparer plaintiffs in *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.) ("*Packaged Seafood*"). Cuneo Decl. ¶ 6. In *Packaged Seafood*, the commercial food preparer plaintiffs allege the existence of a price-fixing conspiracy among leading packaged tuna manufacturers. Cuneo Decl. ¶ 6. The Court in *Packaged Seafood* recently issued an order granting certification of a class of commercial food preparer indirect purchasers, which is currently on appeal. *See* Order Granting Motions for Class Certification, *In re Packaged Seafood Prods. Antitrust Litig.*, Case No. 3:15-md-2670-JLS-MDD, ECF No. 1931. Furthermore, as co-lead counsel in *Auto Parts*, Mr. Cuneo helped

14

automobile dealership indirect plaintiffs and class members recover over $400 million in settlements. Cuneo Decl. ¶ 4. Mr. Cuneo and his firm have subsequently led other indirect purchaser actions on behalf of commercial, intermediate-level purchasers.[6]  Cuneo Decl. ¶ 5. Mr. Cuneo's experience affords him substantial insight into antitrust law. He previously worked as an attorney in the Office of the General Counsel of the Federal Trade Commission and as counsel to the Subcommittee on Monopolies and Commercial law of the U.S. House of Representative's Committee on the Judiciary. Cuneo Decl. ¶¶ 14-15. Mr. Cuneo has also served as General Counsel and Legislative Representative of the Committee to Support the Antitrust Laws. He is also the co-editor of a textbook, THE INTERNATIONAL HANDBOOK OF PRIVATE ENFORCEMENT OF COMPETITION LAW (Edward Elgar Publishing Inc., 2010). Cuneo Decl. ¶ 18. Recently, Mr. Cuneo was honored by AAI with the Alfred E. Kahn Award for Antitrust Achievement, an award recognizing individuals who have contributed greatly in the field of antitrust.  Cuneo Decl. ¶ 17.

CPM's extensive experience with complex antitrust class actions makes it well-qualified to serve as interim lead counsel. As one of the foremost firms engaged in indirect purchaser actions in the United States, CPM has served in a variety of leadership positions in a vast number of such cases.[7]  Zapala Decl. ¶¶ 6-11, 22, 26. Of particular relevance is CPM's work in *In re Broiler*

---

[6] *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) (representing a putative class of indirect purchaser pharmacy resellers bringing indirect purchaser actions against drug manufacturers); *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB (D. Minn.) (co-lead counsel for a putative class of commercial and institutional indirect purchasers).

[7] *In re Automotive Parts Antitrust Litigation,* 2:12-md-02311 (E.D. Mich.) ("*Auto Parts*") (appointed co-lead counsel)*; In re Capacitors Antitrust Litigation,* Case No. 3:14-cv-03264-JST (N.D. Cal.) ("*Capacitors*") (appointed sole lead counsel); *In re Resistors Antitrust Litigation,* Case No. 5:15-cv-03820-RMW (N.D. Cal.) ("*Resistors*") (appointed sole lead counsel); *In re Lithium Ion Batteries Antitrust Litigation,* Case No. 4:13-md-02424 (N.D. Cal.) ("*Lithium Ion Batteries*") (appointed co-lead counsel); *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* MDL

*Chicken Antitrust Litigation,* Case No. 1:16-cv-08637 (N.D. Ill.) ("*Broilers*")—a large price-fixing action involving multiple levels of the distribution chain—where it serves as co-lead counsel with Gustafson Gluek and represents commercial and institutional indirect purchasers who allege a conspiracy among suppliers of broiler chickens. Zapala Decl. ¶ 6. The class of to which CPM was appointed co-lead class counsel in the *Broilers* litigation is the same class definition pled in the *Prime Steakhouse* and *Portland Hunt-Alpine Club* cases and for which CPM seeks appointment here. CPM is, thus, highly-qualified to represent the CIIPPs in this case.

Additionally, CPM has successfully obtained substantial recoveries on behalf of indirect purchasers in cases involving the myriad complex issues often involved in such cases. As co-lead counsel in *Auto Parts*, one of the largest price-fixing cases ever, CPM helped the end-payor class recover over $1.1 billion and was recently presented with the American Antitrust Institute's ("AAI") prestigious award for litigation of the year for its work in the case. Zapala Decl. ¶ 7. In *Capacitors*, *Resistors*, and *Lithium Ion Batteries*, CPM secured settlements totaling approximately $226 million collectively. Zapala Decl. ¶¶ 8-10. CPM has also regularly litigated the novel issues that arise between U.S. law and the laws of foreign countries. In 2008, CPM finalized a settlement of over $200 million in *In re International Air Transportation Surcharge Antitrust Litigation*, an MDL class action challenging the price-fixing of air passenger ticket between the U.S. and the U.K. where CPM served as co-lead counsel. Zapala Decl. ¶ 16. This case involved the intersection of U.S. and U.K. antitrust law and CPM is one of the few firms with experience in addressing and

---

No. 2724 (E.D. Pa.) (appointed to the steering committee); *In re Broiler Chicken Antitrust Litigation,* Case No. 1:16-cv-08637 (N.D. Ill.) (appointed co-lead class counsel, along with Gustafson Gluek); *In re Parking Heaters Antitrust Litigation,* Case No. 1:15-mc-00940-JG-JO (E.D.N.Y.) (appointed liaison counsel); *In re Methionine Antitrust Litigation*, Case No. 00-1311 CRB (N.D. Cal.) (appointed co-lead counsel).

resolving these complex issues. In addition to indirect purchaser cases, CPM has successfully represented direct purchasers in complex antitrust actions.[8]  Zapala Decl. ¶¶ 13-16, 20, 24, 25.

Gustafson Gluek PLLC is a Minneapolis-based law firm with a national practice, and an emphasis on antitrust, consumer protection, and class action litigation. Since its founding, Gustafson Gluek has worked with and opposed some of the nation's largest companies and law firms obtaining multi-million-dollar victories and critical injunctive relief for millions of class members.[9]  Hedlund Decl. ¶ 8. Gustafson Gluek and senior partner Dan Hedlund have played a significant role in these matters, including serving as lead counsel or on executive committees in numerous high-profile complex actions, including as co-lead counsel of the proposed CIIPP class in the *Broilers* action and of an indirect purchaser class in the *Pork* Action.[10]  Hedlund Decl. ¶ 10.

---

[8] *In re Domestic Airline Travel Antitrust Litigation*, Case No. 15-1404 (CCK) (MDL No. 2656 (D. D.C.) (thus far recovering $60 million); *In re Transpacific Passenger Air Transportation Antitrust Litigation*, 3:07-cv-05634 (N.D. Cal.) (recovering over $140 million); *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 4:07-cv-05944-JST (N.D. Cal.); *In re Optical Disk Drive Antitrust Litigation*, 3:10-md-02143-RS (N.D. Cal.) (achieving $74,750,000 in settlements); *In re Dynamic Random Access Memory* (*DRAM II*) *Antitrust Litigation*, Case No. 4:18-cv-03805 (N.D. Cal.); *Precision Associates v. Panalpina*, No. 08-0042 JG (E.D.N.Y.) ("*Freight Forwarders*") (serving as lead counsel with Gustafson Gluek and securing more than $400 million for the class).

[9] *In re Syngenta Litig.*, No: 27-CV-15-3785 (Minn. Dist. Ct.) (MN) (MDL 2591) (co-lead counsel in state court action representing a class of Minnesota corn farmers and one of four counsel selected as settlement counsel, resulting in a proposed settlement of $1.51 billion); *Precision Associates v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 JG VVP (E.D.N.Y.) (Co-Lead counsel in international antitrust class action with CPM and recovering over $400 million for the class); *In Re Medtronic, Inc. Implantable Defibrillators Products Liability Litig.*, MDL No. 1726 (D. Minn.) (co-lead counsel recovering nearly $100 million on behalf of plaintiffs); *In Re: Medtronic, Inc., Sprint Fidelis Leads Products Liability Litig.*, MDL No. 1905 (D. Minn.) (as sole Lead counsel, negotiated $268 million settlement on behalf of over 14,000 individual plaintiffs).

[10] *In re Broiler Chicken Antitrust Litig.*, 16-cv-8637 (N.D. Ill.) (appointed co-lead counsel); *In re Pork Antitrust Litigation*, 18-cv-01776 (D. Minn.) (appointed co-lead counsel); *In re Interior Molded Doors Indirect Purchaser Antitrust Litig.,* 3:18-cv-00850 (E.D. Va.) (appointed co-lead counsel); *In re Automotive Parts Antitrust Litigation*, 2:12-md-02311 (E.D. Mich) (firm worked closely with Lead Counsel CPM and Mr. Zapala); *In re: Dealer Management Systems Antitrust Litig.,* MDL No. 2817 (N.D. Ill.) (personally appointed to Plaintiffs' Steering Committee); *Bhatia*

Over the last twenty-plus years, Gustafson Gluek's Dan Hedlund has worked on numerous complex antitrust class actions seeking relief for small businesses and consumers. He is an advisory board member to AAI, a past president of the Committee to Support Antitrust Laws, and a past Chair of the Minnesota Bar Association's Antitrust Council.  He has been named a "Super Lawyer" by Minnesota Law & Politics from 2013-2019 and a top 100 lawyer in 2015 and 2017-2019. In 2011, he received a Distinguished Pro Bono Service Award from the Minnesota District Court for his work with the *Pro Se* Project.  Hedlund Decl. ¶ 11. In addition to presenting at CLEs, Mr. Hedlund has testified multiple times before the Minnesota legislature on competition law, and before the Federal Rules Committee.  He is a co-author of the "Plaintiff Overview" in Private Antitrust Litigation 2015 – Getting the Deal Through, and a contributor to Concurrent Antitrust Criminal and Civil Procedure 2013 – American Bar Association.  Hedlund Decl. ¶ 12.

This vast array of experience has afforded the Moving Firms with invaluable knowledge and expertise. Consequently, the Moving Firms can efficiently and effectively manage this complex action and are thus well-situated to serve as Interim Lead Class Counsel.

---

*v. 3M Co.*, 16-cv-1304 (D. Minn.) (personally appointed co-lead counsel); *In re: CenturyLink Residential Customer Billing Disputes Litig.*, MDL No. 17-2795 (D. Minn.) (appointed Executive Committee Chair); *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 2626 (M.D. Fla.) (Defendant discovery team leader); *Kleen Products vs. Int'l. Paper*, 10-cv-5711 (N.D. Ill.) (Defendant discovery team leader); *The Shane Group, Inc., et al., v. Blue Cross Blue Shield of Michigan*, 10-cv-14360 (E.D. Mich.) (appointed co-lead counsel); *In re Vitamin C Antitrust Litig.*, MDL No. 1738 (E.D.N.Y.) (appointed co-lead counsel); *In re DRAM Antitrust Litig.*, MDL No. 1486 (appointed co-lead counsel), *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL No. 07-1827 (N.D. Cal.) (representing indirect purchasers in recovering $1.2 billion for plaintiffs), *In re Capacitors Antitrust Litigation*, MDL No. 2801 (N.D. Cal.) (worked closely with Lead Counsel CPM in recovering over $80 million in settlements); *In re Resistors Antitrust Litigation*, 3:15-cv-03820 (N.D. Cal.) (worked closely with Lead Counsel CPM in recovering $33.4 million in settlements). Hedlund Decl. ¶ 10.

**3.      The Moving Firms are Willing and Able to Commit Resources to Represent the Proposed Commercial and Institutional Indirect Purchaser Plaintiff Class (Fed. R. Civ. P. 23(g)(1)(A)(iv))**

The Moving Firms have the resources and experience to litigate complex cases of this magnitude and, as history has demonstrated, are committed to expending the time, energy and financial resources necessary to lead this litigation in the best interests of the proposed class. The Moving Firms have a sufficient number of attorneys and other professionals to staff this case, and have successfully managed complex, resource-intensive cases in the past. The Moving Firms' attorney and paralegal resources will ensure that the case will be staffed appropriately and efficiently so that senior attorneys are not performing junior attorney work, junior attorneys will work at their level and will not spend too much time on a task, and no attorneys will perform paralegal work. In successfully prosecuting class actions, the Moving Firms routinely advance the costs of litigation and have demonstrated an ability and willingness to dedicate their substantial financial resources to vigorously prosecute the claims of proposed class members. The Moving Firms are prepared to continue to commit the resources necessary to effectively and vigorously prosecute this case.  Cuneo Decl. ¶ 22; Zapala Decl. ¶ 34; Hedlund Decl. ¶ 14.

**C.      Ability to Work Cooperatively With Others**

The Moving Firms have the ability and willingness to work cooperatively with other law firms, including other plaintiffs' lawyers already in this action, the Direct Purchaser Plaintiffs' action, and defense counsel in this case. In particular, the Moving Firms are willing to work closely and collaboratively with the lawyers this Court has previously appointed as interim class counsel for the Indirect Purchaser Class. Should those attorneys choose to further clarify their class, and which group of indirect purchasers they seek to represent, the Moving Firms would be happy to coordinate discovery and other case management matters with them.  The Moving Firms have

worked cooperatively with those firms in many other actions.[11] The Moving Firms understand that professional and courteous relations amongst counsel, as well as between opposing counsel, are essential to the conduct and management of complex litigation such as this one. This is reflected by the fact that all firms named on the complaints filed by Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club support the Moving Firms' appointment.  Cuneo Decl. ¶ 2.

> **D.    A Class Dedicated to the Interests of Commercial and Institutional Purchasers is Particularly Important in Light of the Issues Presented by COVID-19**

In addition to the aforementioned reasons supporting separate representation for commercial and institutional indirect purchasers, members of this class are also uniquely impacted by the ongoing COVID-19 pandemic. As restaurants, hotels, schools, and similar institutions face unprecedented uncertainty and disruption, the need to consider their particularized needs only becomes magnified. Moreover, the inescapable truth of this pandemic is that it is unpredictable, raising previously unrealized issues to the forefront of consideration each and every day. Thus, by appointing separate counsel on this group's behalf, the Court can ensure that it is afforded the comprehensive and individualized representation that it so crucially needs.

## V.    CONCLUSION

For the foregoing reasons, this Court should modify its previous leadership order pursuant to Fed. R. Civ. P. 23(g) and appoint Cuneo Gilbert & LaDuca, LLP, Cotchett, Pitre & McCarthy, LLP, and Gustafson Gluek PLLC to lead the class of Commercial & Institutional Indirect Purchaser Plaintiffs because they easily satisfy the criteria set forth in Rule 23(g).

---

[11] For example, in *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD; *In re Broiler Chicken Antitrust Litigation,* Case No. 1:16-cv-08637; *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB; *Precision Associates v. Panalpina*, No. 08-0042-JG; *In re Capacitors Antitrust Litigation,* Case No. 3:14-cv-03264-JST; *In re Resistors Antitrust Litigation,* Case No. 5:15-cv-03820-RMW.

## CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), the Moving Firms conferred with Interim Class Counsel for the Indirect Purchaser Class, i.e. the parties affected by the relief sought, prior to the filing of this motion and were unable to resolve the issues raised herein.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b), the Moving Firms request oral argument on the issues raised in this motion. Oral argument is desired on this matter because the issues raised herein address foundational concerns regarding the current leadership structure of the Indirect Purchaser Class. In particular, adequacy of representation is a fundamental consideration in a class action and can ultimately prove fatal to the successful prosecution of such a case if left unresolved. As a result, Plaintiffs Prime Steakhouse and Portland Hunt-Alpine Club request oral argument to more fully explain their position, particularly in light of the fact that lead counsel has already been appointed. Oral argument will also give the Court an opportunity to present any questions or concerns directly to the Moving Firms and Wood Mountain Fish Counsel regarding in issue that has only recently become apparent to the parties involved. Furthermore, in light of the ongoing Covid-19 pandemic, the Moving Firms note that they are amenable to a remote hearing on this matter, were that the Court's preference. The Moving Firms estimate that thirty (30 minutes) will be required for oral argument, allotting fifteen (15) minutes to each side.

DATED: May 21, 2020                          Respectfully Submitted,

/s/ *Samuel J. Dubbin, P.A.*
Samuel J. Dubbin, P.A (Florida Bar No. 328189)
**Dubbin & Kravetz, LLP**
1200 Anastasia Avenue Suite 300
Coral Gables, Florida 33134
Telephone: (305) 357-9004
sdubbin@dubbinkravetz.com

21

/s/ *Adam J. Zapala*

Adam J. Zapala (*pro hac vice*)

**COTCHETT, PITRE & McCARTHY, LLP**

San Francisco Airport Office Center

840 Malcolm Road, Suite 200

Burlingame, CA 94010

Telephone: (650) 697-6000

Facsimile: (650) 697-0577

azapala@cpmlegal.com

/s/ *Jonathan W. Cuneo*

Jonathan Cuneo (*pro hac vice*)

Blaine Finley (*pro hac vice*)

**CUNEO GILBERT & LADUCA, LLP**

4725 Wisconsin Ave., NW

Suite 200

Washington, DC 20016

Telephone: (202) 789-3960

Facsimile: (202) 789-1813

jonc@cuneolaw.com

bfinley@cuneolaw.com

/s/ *Daniel C. Hedlund*

Daniel C. Hedlund (*pro hac vice*)

Michelle J. Looby (*pro hac vice*)

**GUSTAFSON GLUEK PLLC**

Canadian Pacific Plaza, Suite 2600

120 South Sixth Street

Minneapolis, MN 55402

Telephone: (612) 333-8844

dhedlund@gustafsongluek.com

mlooby@gustafsongluek.com

*Counsel for Plaintiffs Portland Hunt-Alpine Club, LLC and Prime Steakhouse*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21th day of May 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Samuel J. Dubbin, P.A.*
Samuel J. Dubbin, P.A (Florida Bar No. 328189)
**Dubbin & Kravetz, LLP**
1200 Anastasia Avenue Suite 300
Coral Gables, Florida 33134
Telephone: (305) 357-9004
sdubbin@dubbinkravetz.com