# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Wood Mountain Fish, LLC, on behalf of itself and all others similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>Mowi ASA (f/k/a Marine Harvest ASA), Marine Harvest USA, LLC, Marine Harvest Canada, Inc., Ducktrap River of Maine LLC, Grieg Seafood ASA, Grieg Seafood BC Ltd., Ocean Quality AS, Ocean Quality North America Inc., Ocean Quality USA Inc., Ocean Quality Premium Brands, Inc., SalMar ASA, Leroy Seafood Group ASA, Leroy Seafood USA Inc., and Scottish Sea Farms Ltd.,<br><br>                      Defendants. | Case No. 19-22128-CIV-SMITH |

**DECLARATION OF JONATHAN W. CUNEO IN SUPPORT OF COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' MOTION TO APPOINT COTCHETT, PITRE & MCCARTHY, LLP; CUNEO GILBERT & LADUCA, LLP; AND GUSTAFSON GLUEK PLLC INTERIM LEAD COUNSEL**

I, Jonathan W. Cuneo, declare:

1.	I am the founding and senior partner of Cuneo Gilbert & LaDuca, LLP ("CGL"), a law firm headquartered in Washington, D.C.

2.	CGL has spent time investigating the nature of the conspiracy at issue and its effect on Commercial and Institutional Indirect Purchaser Plaintiffs ("Commercial Indirects"). CGL has taken other steps to advance its clients' interests in this case, including coordinating closely with counsel listed on the Prime Steakhouse and Portland Hunt-Alpine Club complaints, all of whom support the instant motion to appoint CGL, Cotchett, Pitre & McCarthy, LLP, and Gustafson Gluek PLLC as Interim Lead Class Counsel.

3.	In 2012, Judge Marianne Battani of the Eastern District of Michigan appointed me interim co-lead counsel for indirect purchaser automobile dealerships in MDL 2311: *In re Automotive Parts Antitrust Litigation*, 2:12-md-02311 (E.D. Mich.). I was appointed to represent putative classes of thousands of automobile dealers bringing dozens of actions stemming from the largest antitrust investigation in the history of the U.S. Department of Justice's Antitrust Division.

4.	The *Auto Parts* litigation involves more than 45 different conspiracies (each their own case) and more than 160 different defendants, most of which are foreign companies. It has been described as the largest, most complex, antitrust litigation in U.S. history. The *Auto Parts* litigation continues today and has resulted in well over $1 billion in indirect purchaser settlements. Under the leadership of myself, along with that of my co-lead counsel Shawn Raiter and Don Barrett, the intermediate indirect purchaser automobile dealership plaintiffs have recovered over $400 million in settlements.

5. Before *Auto Parts*, there had been few, if any, successful antitrust actions brought for commercial, intermediate-level indirect purchasers, like the Commercial Indirects. I have subsequently led other commercial indirect purchaser actions like: *In re Vehicle Carrier Services Antitrust Litig.*, MDL No. 2471 (co-lead counsel representing a putative class of thousands of automobile dealers bringing indirect purchaser actions against various vehicle shipping companies); *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724 (E.D. Pa.) (representing a putative class of indirect purchaser pharmacy resellers bringing indirect purchaser actions against drug manufacturers); *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.) (lead counsel for a class of commercial food preparer indirect purchasers); and *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB (D. Minn.) (co-lead counsel for a putative class of commercial and institutional indirect purchasers).

6. I am the sole court-appointed lead counsel for the Commercial Food Preparer Plaintiff Class in *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.). In that MDL, the plaintiffs allege a price-fixing conspiracy between the leading packaged tuna manufacturers—Chicken of the Sea, StarKist, and Bumble Bee, and their parent companies. *Id.* Like the present cases, the *Packaged Seafood* litigation involves claims and defenses unique to a class of commercial indirect purchasers.

7. Before filing the first Commercial Indirect case in this litigation, my firm invested significant time and resources into this litigation, including investigating the nature of the alleged conspiracy and its effect on the Commercial Indirects, investigating the farm-raised salmon supply chain, and coordinating strategy with co-counsel.

8. As part of my experience leading litigation involving commercial, intermediate-level indirect purchaser antitrust actions, I and others at my firm have identified and worked with

2

economists who specialize in analyzing and quantifying the damages that commercial indirect purchasers sustain as a result of antitrust conspiracies.

9. I have worked with co-counsel to implement billing and expense guidelines for the law firms working on the Commercial Indirect cases in this litigation and have worked to coordinate the activities of those firms. I have carefully monitored work to avoid unnecessary duplication of effort, and a litigation fund has been established to pay the costs incurred in advancing the Commercial Indirects' claims.

10. I have expressed my desire to work cooperatively with counsel for any later-filed Commercial Indirect cases.

### CGL's Qualifications

11. Our firm has over 20 attorneys and devotes the majority of its practice to the representation of clients involved in complex liability and class action litigation involving antitrust, securities, corporate governance, consumer protection, and products liability. My firm's résumé is attached hereto as Exhibit A.

12. I am admitted to the state bars of the District of Columbia and New York.

13. I enjoy Martindale Hubbell's "AV" rating, am listed in Who's Who in American Law.

14. After a federal appellate clerkship, I began my career as an attorney in the Office of the General Counsel of the Federal Trade Commission. During my three years at the Federal Trade Commission, I worked on a number of very prominent antitrust cases.

15. I next worked as Counsel to the Subcommittee on Monopolies and Commercial Law of the U.S. House of Representatives' Committee on the Judiciary for four and a half years. This Subcommittee has jurisdiction over the antitrust laws.

16. I was one of the three founding directors of the American Antitrust Institute. I served as a director from 1998 until 2009.

17. I was recognized for my contributions to the field of antitrust law by the American Antitrust Institute with the *Alfred E. Kahn Award for Antitrust Achievement*, which is awarded to individuals who have contributed greatly in the antitrust field. The AAI lauded my efforts to defend the antitrust laws even when there existed immense external pressure to weaken them in the 1980s, stating, "Mr. Cuneo was the only person outside of the government to be a spokesperson, clearinghouse, and advocate for strong antitrust enforcement."

18. I have published numerous articles that have appeared in the *Georgetown Law Review*; the *George Washington Law Review*, the *Yale Human Rights and Development Law Journal*, *The Nation* magazine and *The New York Times*. I am also the co-editor of a textbook: THE INTERNATIONAL HANDBOOK OF PRIVATE ENFORCEMENT OF COMPETITION LAW (Edward Elgar Publishing Inc., 2010).

19. I have served as counsel in a number of significant cases including:

- *Mangini v. RJ Reynolds Tobacco Company*, 7th Cal. 4th 1057
  (The first case to challenge the "Joe Camel" advertising campaign, resulting in the public release of documents showing the targeting of children. Congressman Henry Waxman referred to the attorneys as American heroes for their role in release of these documents).

- *Dennis v. Metromail*, Texas Dist. Ct., No-9604451
  (One of the most significant privacy cases in United States history, involving an information company contracting with Texas inmates to process private information).

- *In re Enron Corp. Sec. Litig.*, S.D. Tex., No. H-01-3624
  (Washington Counsel in litigation resulting in over $7 billion recovery, the largest recovery in securities fraud in history).

- *Rosner, et al. v. United States*, S.D. Fla., No. 01-cv-1859
  (The so-called "Gold Train" case, which involved the looting of the personal assets of Hungarian Holocaust victims and survivors by the United

4

    States Army after World War II, resulting in a statement of acknowledgement by the government and a $25.5 million settlement).

- *Galanti, et al. v. The Goodyear Tire & Rubber Company*, D.N.J., No. 03-cv-209 ($340+ million recovery on behalf of homeowners who purchased allegedly defective radiant heating systems. Significantly, in my firm's role as lead counsel, we brought together over 20 law firms in three factions over a year and a half to forge a bi-national global settlement that was approved from the bench).

- *In re Automotive Parts Automobile Litigation*, E.D. Mich., MDL No. 2311 (interim co-lead counsel representing a putative class of thousands of automobile dealers alleging widespread price fixing and bid rigging by automotive parts manufacturers).

- *In re Vehicle Carrier Services Antitrust Litigation*, D.N.J., MDL No. 2471 (interim co-lead counsel representing a putative class of thousands of automobile dealers alleging price fixing and bid rigging by vehicle shipping companies).

- *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.) (lead counsel representing a class of commercial food preparer indirect purchasers).

- *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB (D. Minn.) (interim co-lead counsel for a putative class of commercial and institutional indirect purchasers).

- *Los Gatos Mercantile, Inc., et al., v. E.I. Dupont De Nemours and Company, et al.*, N.D. Cal., No. 3:13-cv-01180-WHO (interim co-lead counsel representing indirect purchasers of titanium dioxide).

20. Working side-by-side with me on this salmon antitrust litigation will be Blaine Finley. Mr. Finley has taken on significant responsibility at CGL for prosecuting claims on behalf of commercial indirect purchaser classes in *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.) and *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB (D. Minn.).

21. Over the past 30 years, I have productively worked with, and for, many—if not most—of the counsel for the other Plaintiffs' groups, and CGL is committed to coordinating

effectively with the other Plaintiffs' groups in litigating the case, under whatever organization structure the Court should choose to create. Indeed, collegiality is a core virtue of our firm.

22. With five offices and over 20 attorneys, my firm has the resources necessary to serve as one of the lead firms in this litigation. We are ready and willing to invest the time and expenses needed to bring this action to a successful resolution.

I affirm under penalty of perjury on this 3rd day of May, 2020 that the foregoing is true to the best of my knowledge.

                                          */s/ Jonathan W. Cuneo*
                                          Jonathan W. Cuneo