# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

WOOD MOUNTAIN FISH LLC,

                    Plaintiff

   v.

Mowi ASA (fka Marine Harvest ASA), Marine Harvest USA, LLC, Marine Harvest Canada, Inc., Ducktrap River of Maine LLC, Grieg Seafood ASA, Grieg Seafood BC Ltd., Ocean Quality AS, Ocean Quality North America Inc., Ocean Quality USA Inc., Ocean Quality Premium Brands, Inc., SalMar ASA, Leroy Seafood AS, and Leroy Seafood USA Inc.,

                    Defendants.

**CASE NO. 19-cv-22128-RS**

**PLAINTIFF'S OPPOSITION TO THE RENEWED MOTION TO MODIFY RULE 23(g) ORDER AND APPOINT CUNEO GILBERT & LADUCA, LLP; COTCHETT, PITRE & MCCARTHY; AND GUSTAFSON GLUEK PLLC INTERIM LEAD COUNSEL**

549765.9

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................................................. 1

II.    PROCEDURAL BACKGROUND ......................................................................... 2

III.   ARGUMENT ........................................................................................................ 4

    A.  Standard of Review .................................................................................... 4

    B.  Court-Appointed Interim Class Counsel Have Continued To Vigorously And Efficiently Prosecute This Litigation. ........................................................... 5

    C.  Interim Class Counsel Can, And Will, Fairly And Adequately Represent The Interests Of A Single Class Of Intermediate Indirect Purchasers. ............................................ 6

       1.  Maine Counsel's Own Pleadings Demonstrate That Their Conflict Argument Is Pretextual. .............................................................................................. 7

       2.  Maine Counsel's Ambiguous Recharacterization Of The Class Definition In Their Complaint Does Not Avoid The Very Pass-Through Issues They Now Argue Preclude Unitary Representation. ...................................................................... 10

       3.  Any Potential Conflict Is Speculative And Does Not Warrant Duplicative Representation. ....................................................................................... 12

          a)  Any Potential Future Conflict Is A Speculative Event That Does Not Require Separate Representation Now. ........................................................ 12

          b)  Proceeding With Unitary Representation Is Most Efficient For All Indirect Purchasers And For The Court. .................................................. 14

          c)  A Variety Of Time-Tested Options Exist For Managing Any Conflict That Might Arise In The Future. ........................................................ 16

IV.   CONCLUSION ................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                              **Page(s)**

*Bagels & Baguettes v. Mowi ASA et al.*,
    Case No. 1:19-cv-21579 (S.D. Fla. Apr. 25, 2019) ............................................................2, 3

*In re Cmty. Bank of N. Virginia Mortgage Lending Practices Litig.*,
    795 F.3d 380 (3d Cir. 2015)....................................................................................................13

*In re Corrugated Container Antitrust Litig.*,
    643 F.2d 195 (5th Cir. 1981) .................................................................................................14

*Dickens v. GC Servs. Ltd. P'ship*,
    706 F. App'x 529 (11th Cir. 2017) .......................................................................................12

*Diner v. Bumble Bee Foods LLC et al.*,
    Case No. 15-cv-02068-L-JLB (S.D. Cal. Sept. 17, 2015) .......................................................9

*In re Freight Forwarders Antitrust Litigation (Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd., et al.)*,
    Case No. 1:08-cv-42-JG-VVP (E.D.N.Y.) ............................................................................17

*In re Generic Pharmaceuticals Pricing Antitrust Litig.*,
    Case No. 2:16-MD-02724 (E.D. Pa.).....................................................................................17

*Gunnells v. Healthplan Servs., Inc.*,
    348 F.3d 417 (4th Cir. 2003) .................................................................................................13

*In re Ins. Brokerage Antitrust Litig.*,
    2007 WL 2589950 (D.N.J. Sept. 4, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009).....................13

*In re Parking Heaters Antitrust Litig.*,
    310 F.R.D. 54 (E.D.N.Y. 2015) ..................................................................................14, 15, 16

*Sullivan v. DB Investments, Inc.*,
    2008 WL 8747721 (D.N.J. May 22, 2008) ............................................................................16

*Valley Drug Co. v. Geneva Pharm., Inc.*,
    350 F.3d 1181 (11th Cir. 2003) .............................................................................................12

*Wilkey v. Mowi ASA et al.*,
    Case No. 1:19-cv-00268-JAW (D. Me. June 26, 2019)...........................................................4

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................................................3

**Other Authorities**

Alba Conte & Herbert B. Newberg, *Newberg On Class Actions* § 3:58 (5th ed. 2011) ...................................................................................................................13

Fed. R. Civ. P. 23(g) ............................................................................................. *passim*

1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.26 ..........................................12

*Manual for Complex Litigation* § 10.224 ..................................................................17

Rule 23(g) .....................................................................................................1, 4, 5, 6

## I.    INTRODUCTION

This Court previously appointed Interim Class Counsel to represent indirect purchasers of farm-raised salmon and salmon products.  [ECF Nos. 24, 92].  Counsel in two indirect purchaser cases ("Maine counsel" in the "Maine cases") that were recently transferred to this District have moved to modify those Orders.  [ECF No. 127].  The separate representation proposed by Maine counsel is redundant, top heavy, and unnecessary, and the Court should deny their motion.

Specifically, Maine counsel seek to have themselves appointed as interim lead counsel not for the proposed classes defined in their own complaints (which are themselves functionally identical to the proposed classes the Court has already appointed Interim Class Counsel to represent), but rather for an undefined proposed class of "commercial and institutional indirect purchasers."  Even under the narrowest possible interpretation of their proposed class, though, class members buy from and sell to one another, and thus Maine counsel's proposal to recharacterize the appropriate class definition fails to solve any of the supposed "tensions" or "conflicts" they purport to identify in the broader, and already represented, proposed class of indirect plaintiffs.  Perhaps even more importantly, the alleged conflict that forms the basis for Maine counsel's motion is wholly speculative and premature, rendering alteration of the existing leadership structure unnecessary and inefficient.  Mechanisms exist to manage any theoretical conflict that might develop in the future.  As has already been demonstrated, the interests of the plaintiffs in the Maine cases are already represented with skill and vigor by the Court-appointed Interim Class Counsel.

Maine counsel's motion should be seen for what it is: a pretextual effort to establish a wasteful leadership structure that would multiply attorney hours but provide no benefit to class members.  Accordingly, the motion to modify the Court's Rule 23(g) Order appointing interim class counsel should be denied.

## II.    PROCEDURAL BACKGROUND

On April 25, 2019, one of the Maine counsel now seeking a leadership appointment in this action filed an indirect purchaser complaint in this District, *see* Compl., *Bagels & Baguettes v. Mowi ASA et al.*, Case No. 1:19-cv-21579 (S.D. Fla. Apr. 25, 2019), following an earlier-filed case brought by direct purchasers and assigned to Judge Altonaga, *see Euclid Fish Co. v. Mowi ASA et al.*, Case No. 1:19-cv-21551 (S.D. Fla. Apr. 23, 2019).   The indirect complaint, on behalf of Washington, D.C., restaurant Bagels & Baguettes, alleged classes of "[a]ll commercial and institutional purchasers"—in the United States, for the injunctive class, and in specified U.S. states and territories for the damages class—"that purchased farm-raised salmon and/or products derived therefrom, once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of farm-raised salmon or products derived therefrom, from July 1, 2015 to the present."  *See Bagels & Baguettes* Compl. ¶¶ 77-78.  Although the nature of the plaintiff's business in that case is not clear, *see id.* ¶ 12 (identifying plaintiff only as "a business" that purchased farm-raised salmon), the plaintiff's name suggests a shop that serves processed salmon incorporated into another product, such as a sandwich.  *Bagels & Baguettes* was assigned to Judge Altonaga on May 1, 2019, *see Bagels & Baguettes* [ECF No. 5], and Bagels & Baguettes voluntarily dismissed its complaint two days later.  [ECF No. 7].  That same firm filed a complaint less than a week later in the District of Maine on behalf of New York restaurant Prime Steakhouse, seeking identical damages and injunctive classes to those at issue in the dismissed *Bagels & Baguettes* action.  *See* Compl., *Prime Steakhouse v. Mowi ASA et al.*, Case No. 2:19-cv-00207-JAW (D. Me. May 9, 2019) [ECF No. 1].

On May 24, 2019, Massachusetts-based fish and seafood distributor Wood Mountain Fish LLC, represented by counsel this Court would later appoint Interim Class Counsel for the indirect purchasers, filed the Complaint in the instant action on behalf of "[a]ll persons and entities who

resided in" particular U.S. states and territories and "who indirectly purchased Farm-raised salmon and/or products derived therefrom produced by any Defendant" or related entity, during the Class Period beginning July 1, 2015 through the present.  [ECF No. 1 ¶ 75(a)-(ff)].  Interim Class Counsel made clear from the outset that the proposed class did not include end consumers.  The Court appointed Wolf Haldenstein Adler Freeman & Herz LLP as Interim Class Counsel for the Indirect Purchaser Class on June 21, 2019, and amended its order to add Lockridge Grindal Nauen PLLP as Interim Class Counsel on February 24, 2020.  [ECF Nos. 24, 92].  Interim Class Counsel recently filed a motion to substitute the firm of Zwerling, Schacter & Zwerling, LLP for the Wolf Haldenstein firm, to ensure consistency of representation after personnel changes at those two firms.  [ECF No. 137].

Several defendants in the *Prime Steakhouse* case moved to transfer that action, pursuant to 28 U.S.C. § 1404(a), to the Southern District of Florida, arguing that the Maine action was simply an "offshoot" of the Florida litigation that had only made its way to Maine as a result of a "tactical decision" by Prime Steakhouse's counsel to engage in "forum shopping."  *Prime Steakhouse* [ECF No. 29 at 1-2].  Counsel in *Prime Steakhouse* opposed that transfer motion.  *Prime Steakhouse* [ECF No. 39].  On October 1, 2019, the same day it filed its opposition brief, one of Prime Steakhouse's counsel and two other firms—collectively, the same Maine counsel now moving for a separate leadership appointment—filed another related class action complaint in the District of Maine, on behalf of Portland Hunt-Alpine Club, LLC, a Maine restaurant, as proposed class representative for classes functionally identical to those identified in *Prime Steakhouse*, and to the classes proposed in *Wood Fish Mountain* and the dismissed *Bagels & Baguettes* action.  *See* Compl., *Portland Hunt-Alpine Club, LLC v. Mowi ASA et al.*, Case No. 2:19-cv-00446-JAW (D. Me. Oct. 1, 2019).

While the motion to transfer was pending, on December 5, 2019, Maine counsel jointly moved to be appointed interim class counsel on behalf of the classes alleged in their complaints. *Portland Hunt-Alpine Club* [ECF No. 21].  The Court did not rule on that motion prior to the magistrate judge's January 23, 2020 recommendation that *Prime Steakhouse* be transferred to this judicial district.  *Prime Steakhouse* [ECF No. 55].  The Maine plaintiffs objected to that report and recommendation.  *Prime Steakhouse* [ECF No. 56].  On March 25, 2020, the district court judge in Maine accepted the report and recommendation and granted the transfer motion, *see Prime Steakhouse* [ECF Nos. 56, 68], and the *Portland Hunt-Alpine Club* parties' April 8, 2020 joint motion to likewise transfer that case to the Southern District of Florida, *see Portland Hunt-Alpine Club* [ECF No. 52].  The court in Maine did not grant Maine counsel's leadership motion.  It is through this series of events that Maine counsel have returned to this Court and filed their motion seeking a leadership position for a carve-out from their own class, as alleged in their complaints, whose interests are already represented.

Interim Class Counsel are aware of no case currently pending that alleges related claims on behalf of end purchasers—that is, consumers—of salmon and salmon products.  One such case was filed in Maine, but it was voluntarily dismissed and has not been refiled.  *See* Notice of Voluntary Dismissal, *Wilkey v. Mowi ASA et al.*, Case No. 1:19-cv-00268-JAW (D. Me. June 26, 2019) [ECF No. 4].  Accordingly, every pending case alleging antitrust violations within the farmed-salmon market on behalf of indirect purchasers has been brought by buyers in an intermediate position within the market chain.

## III.   ARGUMENT

### A.   <u>Standard of Review</u>

Fed. R. Civ. P. 23(g)(4) provides that the duty of appointed class counsel is to "fairly and adequately represent the interests of the class."  Under Rule 23(g)(1)(A), the Court must consider

the following factors in appointing class counsel: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class.  In addition, the Court may "consider *any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."* Fed. R. Civ. P. 23(g)(1)(B) (emphasis added).

      **B.**      <u>Court-Appointed Interim Class Counsel Have Continued To Vigorously And Efficiently Prosecute This Litigation.</u>

This Court has already considered the thorough submissions made by Interim Class Counsel regarding the Rule 23(g)(1)(A) factors.  *See* [ECF No. 9] (Motion for an Order Appointing Wolf Haldenstein Adler Freeman & Herz LLP As Interim Class Counsel, with supporting papers), [ECF No. 24] (Order granting motion), [ECF No. 91] (Motion for an Order Modifying Leadership to Add Lockridge Grindal Nauen P.L.L.P. as Interim Co-Lead Counsel, with supporting papers), [ECF No. 92] (Order granting motion).  It is not necessary to rehash much of that discussion here. But a brief summary of the work Interim Class Counsel have continued to do on behalf of the indirect class since the Court's appointment demonstrates that Maine counsel are not similarly situated.

First, Interim Class Counsel have negotiated a discovery coordination agreement with counsel in the direct-purchaser action pending before Judge Altonaga, ensuring that no paper discovery or depositions will be duplicated between the two cases.  Second, Interim Class Counsel have negotiated and obtained an order from this Court effectuating a stand-down agreement in this indirect case, which will avoid duplicate briefing and arguments on antitrust liability issues and potentially inconsistent rulings in this case by allowing Judge Altonaga to first rule on the pending motion to dismiss in the direct action.  [ECF Nos. 74, 75, 124].  Third, Interim Class Counsel have

reached an agreement with Defendants, and obtained an order from the Court, that the deadline for a consolidated amended complaint will be calculated based on the date on which Judge Altonaga rules on the pending motion to dismiss. *Id.* Fourth, Interim Class Counsel continue to work closely with counsel in the direct action and with Defendants regarding production of any documents previously produced to government investigators and expect to receive the first such production within days. Fifth, as part of the coordination agreement, Interim Class Counsel have obtained and reviewed documents produced in the direct case dealing with jurisdiction.[1] Sixth, as a result of that review, and pursuant to their Court-appointed leadership role, Interim Class Counsel entered into a stipulation with defendant Scottish Sea Farms to toll the claims against it and dismiss those claims from the lawsuit. [ECF Nos. 133, 134]. Seventh, Interim Class Counsel traveled to Europe to conduct additional factual investigation of the claims in this lawsuit, including an in-person interview with a member of the industry. Eighth, Interim Class Counsel conducted additional investigations and conferences with defense counsel regarding the identity of certain relevant parties, ultimately seeking and obtaining substitution of Defendant Lerøy Seafood AS for prior-named defendant Lerøy ASA. [ECF Nos. 135, 136]. Ninth, as illustrated above, Interim Class Counsel have demonstrated their ability to work cooperatively with opposing counsel on noncontroversial matters, will conserve judicial resources going forward, and ultimately will maximize recovery to the class.

### C.     Interim Class Counsel Can, And Will, Fairly And Adequately Represent The Interests Of A Single Class Of Intermediate Indirect Purchasers.

Though the Maine counsel do not contest that Interim Class Counsel amply satisfy the Rule 23(g)(1)(A) factors, they argue pursuant to Rule 23(g)(1)(B) that other matters—specifically,

---

[1]     As a professional courtesy, Interim Class Counsel made these documents available to Maine counsel to review. They provided no feedback.

a purported conflict between various types of intermediate (i.e., non-end user) indirect purchasers—will prevent Interim Class Counsel from fairly and adequately representing the interests of a unitary indirect class.  Fed. R. Civ. P. 23(g)(1)(B).  For a variety of reasons discussed in depth below, this purported conflict is illusory, and appointing separate counsel at this stage of litigation is needlessly inefficient.

        1.      Maine Counsel's Own Pleadings Demonstrate That Their Conflict Argument Is Pretextual.

Both Maine plaintiffs filed complaints seeking to represent alleged classes that are largely indistinguishable from the class alleged in the *Wood Mountain Fish* complaint, and which Interim Class Counsel have been appointed to represent.  Contrary to their recent leadership filing, neither the Maine plaintiffs nor their counsel have filed a complaint specifically seeking to represent commercial food preparers, nor have they sought to amend their existing complaints to sidestep the accusation of intra-class conflict they have levied at the class represented by Interim Class Counsel.

Specifically, Maine counsel filed complaints in which they seek to represent "all commercial and institutional purchasers in the United States and its territories that purchased farm-raised salmon[2] and/or products derived therefrom . . . once or more, other than directly from Defendants, entities owned or controlled by Defendants, or other producers of farm-raised salmon or products derived therefrom, from July 1, 2015 to the present."  *Compare* Compl., ¶¶ 5, 77-78, *Prime Steakhouse*; *with* Compl. ¶¶ 6, 159-60 *Portland Hunt-Alpine*.  Neither Maine complaint

---

[2]      Here, only Portland Hunt-Alpine Club specifies "farm-raised *Atlantic* salmon," *see* Compl. ¶ 6, *Portland Hunt-Alpine* (emphasis added), though Maine counsel appear to understand this as a distinction without a difference.  Both Maine complaints refer to Atlantic salmon and farm-raised salmon as more or less interchangeable, given that "most commercial fish farms raise Atlantic salmon."  *See, e.g.*, Compl. ¶ 62, *Prime Steakhouse*; Compl. ¶ 144, *Portland Hunt-Alpine*.

defines the term "commercial and institutional purchasers"—a term that, on its face, would also include Wood Mountain Fish, which purchases salmon for purposes of engaging commerce. Neither the word "restaurant" nor any similar term ever appears in either Maine complaint in connection with delimiting the contours of the relevant class.  In short, no functional difference exists between the types of indirect purchasers the plaintiffs in the Maine cases seek to represent and those Wood Mountain Fish represent.[3]

Presumably the fact that the classes in both Maine complaints are defined in this way reflects a deliberate choice by sophisticated counsel to define the class they originally sought to represent to include a range of market participants that is already encompassed within with the damages claims in *Wood Mountain Fish*.  Maine counsel undoubtedly know that a complaint's definition of the relevant class carries significance and must be thoughtfully assessed in each case. In other antitrust cases, when Maine counsel have sought to represent a narrower set of plaintiffs in the chain of commerce, they have specifically so indicated in the class definitions in the pre-consolidation complaints they have filed.  *See, e.g.*, Order Granting Unopposed Mot. For Co-Lead Counsel, *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB (D. Minn. Oct. 15, 2018) [ECF No. 150 at 2], attached at Decl. of Heidi M. Silton (hereinafter "Silton Decl.") Ex. 1 (appointing Jon Cuneo, of Cuneo, Gilbert, & LaDuca, LLP, as one of two co-lead counsel for a class of commercial food preparers[4]); Order Appointing Interim Lead Counsel, *In re Packaged Seafood*

---

[3]      Plaintiff Wood Mountain Fish seeks to represent "[a]ll persons and entities who resided in" particular U.S. states and territories and "who indirectly purchased Farm-raised salmon and/or products derived therefrom produced by any Defendant" or related entity, during the Class Period beginning July 1, 2015 through the present.  [ECF No. 1 ¶ 75(a)-(ff)].  To the extent the plaintiffs in the Maine cases might attempt to argue that the class alleged in *Wood Mountain Fish* also includes end-purchasers, Interim Class Counsel have clarified that exclusion for defendants throughout the litigation and also for Maine counsel during the meet-and-confer process.

[4]      In *Pork*, Cuneo originally filed a complaint on behalf of one plaintiff restaurant that sought to represent a class that was explicitly limited to commercial food preparers.  *See* Compl. ¶ 1,

*Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal. Mar. 24, 2016) [ECF No. 119 at 5], attached at Silton Decl. Ex. 3 (appointing Cuneo Gilbert & LaDuca LLP interim lead counsel for Commercial Food Preparer Plaintiffs[5]).  By contrast, in other antitrust cases where Maine counsel have sought to represent a broad array of different types of indirect purchasers, they have defined their class accordingly, without carving out specific types of indirect purchasers.  *See, e.g.*, Compl. ¶¶ 52-53, *Now Micro, Inc. v. Headway Techs., Inc.*, 3:19-cv-07049-MMC (N.D. Cal. Aug. 9, 2019) [ECF No. 1] (defining class, in complaint filed by Cuneo Gilbert & LaDuca, as "[a]ll persons or entities who . . . purchased a product for resale which included as a component part one or more HDD suspension assemblies . . . or indirectly purchased an HDD suspension assembly, for resale" during the class period), attached at Silton Decl. Ex. 8; Compl.

---

*Sandee's Bakery v. Agri Stats, Inc., et al.*, Case No. 18-cv-01891 (D. Minn. July 18, 2018) (seeking to represent a class of "all entities that purchased pork . . . indirectly from a Defendant or co-conspirator in the United States during the Class Period for their own business use in commercial food preparation"), attached at Silton Decl. Ex. 2; *see also id.* ¶¶ 94-95 (same).

[5]      In *Packaged Seafood*, Cuneo Gilbert & LaDuca brought four actions on behalf of plaintiff restaurants, each of which sought to represent a class that was explicitly limited to commercial food preparers.  *See* Compl. ¶ 2, *Capitol Hill Supermarket v. Bumble Bee Foods LLC et al.*, Case No. 3:15-cv-1867-AJB-WVG (S.D. Cal. Aug. 24, 2015) (seeking to represent a class of "all legal entities that indirectly purchased packaged seafood products for their own use in food preparation, rather than for resale"), attached at Silton Decl. Ex. 4; *see also id.* ¶¶ 30-31 (same); Compl. ¶ 2, *Dutch Village Restaurant v. Bumble Bee Foods LLC et al.*, Case No. 3:15-cv—02020-LAB-BLM (S.D. Cal. Sept. 11, 2015) (seeking to represent a class of "all legal entities that indirectly purchased packaged seafood products for their own use in food preparation, rather than for resale as such"), attached at Silton Decl. Ex. 5; *see also id.* ¶¶ 35-36 (same); Compl. ¶ 2, *A-1 Diner v. Bumble Bee Foods LLC et al.*, Case No. 15-cv-02068-L-JLB (S.D. Cal. Sept. 17, 2015) (seeking to represent a class of "all incorporated and non-incorporated food preparation establishments that indirectly purchased packaged seafood products for their own use in food preparation, rather than for resale as such"), attached at Silton Decl. Ex. 6; *see also id.* ¶¶ 35-36 (same); Compl. ¶ 2, *Thyme Café & Mkt., Inc. v. Bumble Bee Foods LLC et al.*, Case No. 3:15-cv-02411-GPC-DHB (S.D. Cal. Oct. 26, 2015) (seeking to represent a class of "all incorporated and non-incorporated food preparation establishments that indirectly purchased packaged seafood products for their own use in food preparation, rather than for resale as such"), attached at Silton Decl. Ex.7; *see also id.* ¶¶ 35-36 (same).

¶ 315, *Fargo Stopping Center LLC, et al. v. Koch Foods, Inc., et al.*, Case No. 1:16-cv-08851 (N.D. Ill. Sept. 12, 2016) [ECF No. 1] (defining class, in complaint filed by Gustafson Gluek and Cotchett, Pitre & McCarthy, as "[a]ll persons and entities who indirectly purchased Broilers from Defendants or co-conspirators, via a distributor, during the Class Period"), attached as Silton Decl. Ex. 9.

Here, Maine counsel opted for the latter approach in each and every indirect-purchaser salmon case they have filed, defining the class to include indirect purchasers generally, excluding only end-consumers, and not limiting the class to include only commercial food preparers. Put another way, when other indirect complaints were not yet on file and leadership had not yet been awarded to a different group of firms, Maine counsel apparently did not think the conflict argument they now invoke necessitated pleading anything but the one they did choose: the class of all commercial indirect purchasers. Instead, they—like Court-appointed Interim Class Counsel— sought to pursue claims on behalf of all indirect commercial purchasers within the chain of commerce. Only now, after Maine counsel have seen their cases transferred, over their own objections, into a venue they previously fled and where the Court has already made leadership decisions they do not like, do they assert that the very same class definition they themselves pleaded contains an intractable conflict, and the class of indirect commercial purchasers should be further carved up in a manner that allows them to be named to an unnecessary layer of leadership.

> 2. <u>Maine Counsel's Ambiguous Recharacterization Of The Class Definition In Their Complaint Does Not Avoid The Very Pass-Through Issues They Now Argue Preclude Unitary Representation.</u>

Because Maine counsel now seek to be appointed to represent a class they have never explicitly defined, it is difficult to know from reading their brief who is in the segment they wish to carve out. In their brief, Maine counsel variously characterize the class they seek to represent as comprising, for example, "primarily . . . restaurants (and other commercial food preparers) that

purchase salmon indirectly," Br. at 1, "restaurant/food service entities," *id.* at 1-2, "indirect commercial food preparers that purchase from distributors," *id.* at 5, and "restaurants, hotels, schools, and hospitals" that "generally" purchase from distributors (with the implication that they may purchase from other sources, including from other commercial food preparers), *id.* at 6.  As far as can be readily discerned, however, this subset, as Maine counsel's brief seems to characterize it, also engages in the same buying and selling among class members that Maine counsel argue— incorrectly—requires separate representation because of potential issues relating to cost accounting, profit margins, and pass-through of the overcharge caused by Defendants' antitrust conspiracy.

Maine counsel have left ambiguous the question of whether their would-be class includes producers of prepared food that sell to both retailers and to end consumers, such as warehouse stores, grocery stores, convenience stores, delis, or specialty markets that might sell items like smoked salmon, salmon salad in bulk or in sandwiches, or grab-and-go salmon sushi.  Such retailers are not "restaurants, hotels, schools, and hospitals" that purchase salmon from distributors, Br. at 6, but would seem to be "indirect commercial food preparers that purchase from distributors," *id.* 5.  In addition to selling directly to end consumers, such retailers also frequently sell to the restaurants and caterers that plainly are within the class Maine counsel characterize in their brief.  Of course, caterers—that is, food preparers—sell to others who themselves resell the food.  Thus, even if the Court were to grant Maine counsel's motion and appoint them as interim lead counsel for exactly the subset they may be describing or that this court may create from their ambiguities, the same pass-through from seller to buyer and other issues specific to those subset members that buy and resell among themselves would not be resolved through the mechanism of

the carve out.  Maine counsel hypothesize that such issues exist and might preclude adequate representation; Interim Class Counsel do not agree.

Accordingly, one of two things is true: either Maine counsel's proposal requires separate representation for every identifiable type of purchaser or seller within the chain of commerce; or their proposal to the Court  should cause the Court to doubt the adequacy of the representation they could provide under Rule 23(g)(4).  Plainly, Maine counsel are savvy, experienced antitrust counsel who are undoubtedly familiar with the numerous authorities concluding that separate representation is not required, and have even made that very argument themselves when it suits them.  Their choice to advance a self-serving conflict argument is not a persuasive basis for modifying this Court's prior order in any way, let alone for awarding them a leadership role.

3.   Any Potential Conflict Is Speculative And Does Not Warrant Duplicative Representation.

The bare possibility of a future conflict does not warrant the additional burdens that appointing separate representation for the Maine plaintiffs would necessarily entail.

a)   *Any Potential Future Conflict Is A Speculative Event That Does Not Require Separate Representation Now.*

The Eleventh Circuit has held that, "[s]ignificantly, the existence of minor conflicts alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy."  *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)  (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Proc.* § 1768, at 326-27 (2d ed. 1986); 1 Herbert Newberg & Alba Conte, *Newberg on Class Actions* § 3.26 at 3-143 to 144 (3d ed. 1992).  The "remote possibility" that a conflict might exist, particularly when the record contains no evidence of such a conflict, is not a "fundamental conflict" such that separate representation is required.  *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 536 (11th Cir. 2017).  Similarly, speculative conflicts—that is, the possibility

that a conflict might emerge in the future—is not a "fundamental conflict." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430 (4th Cir. 2003) ("To defeat the adequacy requirement . . . a conflict must be more than merely speculative or hypothetical.") (internal quotation marks omitted); *In re Ins. Brokerage Antitrust Litig.*, MDL No. 1663, 2007 WL 2589950, at *11 (D.N.J. Sept. 4, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009) ("[A] conflict will not be sufficient to defeat class action unless that conflict is apparent, imminent, and on an issue at the very heart of the suit.") (internal quotation marks and brackets omitted); Alba Conte & Herbert B. Newberg, *Newberg On Class Actions* § 3:58 (5th ed. 2011) ("A conflict must be manifest at the time of certification rather than dependent on some future event or turn in the litigation that might never occur."); *id.* § 9:48 (4th ed. 2002).

Consequently, "the requirement to put separate counsel in place arises when a conflict ceases to be theoretical and becomes real and fundamental."[6] *In re Cmty. Bank of N. Virginia Mortgage Lending Practices Litig.*, 795 F.3d 380, 393 (3d Cir. 2015). As at least some Maine counsel have recognized in leadership filings before other courts, so long as all class members are focused on proving liability and maximizing the aggregate damages pot, no fundamental conflict exists. *See* Mot. For Appointment of Gustafson Gluek PLLC And Cotchett, Pitre & McCarthy

---

[6] Notably, the cases Maine counsel cite as appointing separate counsel for different types of indirect purchasers early in the litigation are easily distinguishable here. All such cases Maine counsel relies on involved separately appointing counsel for some or all intermediate indirect purchasers, who typically all encounter pass-through defenses, and for end-purchasers, who are at the end of the purchasing chain and pass nothing onward. *See* Br. at 10-11 (describing the structure of court leadership appointments in *Packaged Seafood*, *Broilers*, and *Pork*); *see also* Order, *In re Hard Drive Disk Suspension Assemblies Antitrust Litig.*, Case No. 19-md-02918-MCC (N.D. Cal. Dec. 23, 2019) [ECF No. 127], attached as Silton Decl. Ex. 10 (appointing separate counsel for end-purchasers and for all other indirect purchasers). That dynamic frequently leads courts to appoint separate representation, but it simply does not exist here, where all claims in all pending complaints have been alleged on behalf of some or all indirect purchasers who occupy an intermediate—rather than an end-consumer—position in the market for salmon and salmon products.

LLP As Interim Class Counsel, *Maplevale Farms, Inc. v. Koch Foods, et al.*, Case No. 1:16-cv-08637 (D. Minn. Oct. 7, 2016) [ECF No. 116 at *12] (hereinafter "Gustafson/CPM *Broilers* Mot."), attached at Silton Decl. Ex. 11.  Until then—if "then" ever arrives—"it may well be preferable, and entirely proper, for a putative class of indirect purchasers to try to maximize its collective recovery and then divvy up the spoils among themselves pursuant to judicially supervised procedures." *In re Parking Heaters Antitrust Litig.*, 310 F.R.D. 54, 58 (E.D.N.Y. 2015) (internal citation omitted).  The court in *Parking Heaters* relied in part on the *Manual for Complex Litigation*, noting that, "in articulating the factors to consider in appointing interim lead class counsel, the *Manual* notes the inevitability that some class members will have interests that may ultimately diverge in some ways from those of other members, and cites as a positive attribute a lawyer's ability to fairly represent such diverse interests." *Id.* at 58-59 (citing *Manual for Complex Litigation* § 10.224 (4th ed. 2004)).

No matter what role indirect purchasers play in the salmon market—whether they are wholesalers, distributors, retail outlets, or food preparers—all share the common goals of proving Defendants' liability, obtaining meaningful injunctive relief, and maximizing the recovery to the class.  And "so long as all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class, the class interests are not antagonistic for representation purposes."  *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 208 (5th Cir. 1981) (internal quotation omitted).

<div style="margin-left: 2em;">

b)    *Proceeding With Unitary Representation Is Most Efficient For All Indirect Purchasers And For The Court.*

</div>

Not only is appointing separate counsel to guard against the specter of a future conflict that may never manifest not *required*, it is inefficient and adverse to the interests of all class members as well to considerations of judicial economy.  Again, as Maine counsel have acknowledged in

other cases where they advocated for leadership to be appointed for a single indirect-purchaser

class, separate leadership structures necessarily multiply the number, duration, and complexity of

virtually every piece of litigation:

> Instead of one voice for indirect purchasers, every meet and confer, deposition, stipulation, and hearing will require a decision-maker from each subclass. Depositions will need to be longer as each subclass will require a certain number of hours. Multiple subclasses of indirect purchasers will result in duplicative efforts and increased billed hours, which will benefit only the attorneys appointed to lead the subclass.

Gustafson/CPM *Broilers* Mot. at 13.

Other courts have recognized these efficiencies, ultimately rejecting the same arguments

Maine counsel make here and declining to appoint separate counsel for different types of indirect

purchasers. *See, e.g.*, Order Appointing Interim Lead Class Counsel, *In re Capacitors Antitrust*

*Litig.*, No. 3:14-cv-032640-JD (N.D. Cal. Oct. 31, 2014) [ECF No. 319 at 2], attached at Silton

Decl. Ex. 12 ("[T]he Court declines to separate out the first-level indirect purchaser plaintiffs from

the rest of the indirect purchaser plaintiffs at this stage of the litigation. The Court will appoint

interim lead class counsel for a single putative indirect purchaser plaintiff class, and again finds

that it would be most efficient to appoint a single firm to serve in that role."); *see also Parking*

*Heaters*, 310 F.R.D. at 57 ("[T]he court's task . . . is to protect the interests of the plaintiffs, not

their lawyers.") (internal quotation omitted). As Maine counsel attested in the *Broilers* case,

"[a]lthough courts have appointed separate counsel at the outset for multiple levels of indirect

purchasers, including cases [Gustafson Gluek and Cotchett Pitre & McCarthy] currently are

counsel in, we can attest from experience to the inherent inefficiencies of such a structure."

Gustafson/CPM *Broilers* Mot. at 15. These very inefficiencies more than outweigh the shadow of

hypothetical future conflict that may never come to pass.

c)      *A Variety Of Time-Tested Options Exist For Managing Any Conflict That Might Arise In The Future.*

Although no fundamental conflicts exist among the indirect purchasers at this time, in the event that such a conflict does materialize in the future, courts and class counsel have successfully deployed numerous options for ensuring that all class members receive adequate—even excellent—representation.

Courts may rely on ethical counsel to swiftly seek appropriate court intervention when "hard evidence" of a conflict emerges, but otherwise allow litigation to proceed under a unitary leadership structure.  *See, e.g., Capacitors* [ECF No. 319 at 2] (appointing Cotchett, Pitre & McCarthy as interim class counsel for all levels of indirect purchasers and requiring "hard evidence" of a conflict before considering appointment of separate counsel).  Courts may appoint counsel for a unitary class of purchasers until settlement, and then appoint allocation counsel or otherwise closely scrutinize the process through which damages are divided among different types of class members.  *See, e.g.*, *Parking Heaters*, 310 F.R.D. at 58 (explaining that "it may well be preferable, and entirely proper, for a putative class of indirect purchasers to try to maximize its collective recovery and then divvy up the spoils among themselves pursuant to judicially supervised procedures"); *Sullivan v. DB Investments, Inc.*, 04-2819 SRC, 2008 WL 8747721, at *12-13 (D.N.J. May 22, 2008) (concluding that representation by separate counsel during settlement and allocation proceedings allowed for adequate structural protections); Report and Recommendations of Special Master, *In re Dynamic Random Access Memory (DRAM)*, MDL No. 1486, (N.D. Cal. Jan. 7, 2013) [ECF No. 2132], attached as Silton Decl. Ex. 13 (in which separate allocation counsel was appointed only after settlement amount was negotiated, and subsequently reviewed by special master who concluded that allocation counsel had adequately represented divergent interests and that subclasses were unnecessary).

Courts may, and sometime do, appoint counsel with different types of purchasers on a steering committee, or some other assignment, to ensure that all voices are heard and any nascent conflicts are identified. *Manual for Complex Litigation* § 10.224 (explaining that in appointing leadership, "whether designated counsel fairly represent the various interests in the litigation— where diverse interests exist among the parties, the court may designate a committee of counsel representing different interests."). Interim Class Counsel have made efforts with Maine counsel to bring them within a structure so their voices may be heard. After all, Interim Class Counsel have worked productively with Maine counsel in many other highly successful antitrust actions, and have the highest respect for them both personally and professionally. *See, e.g.*, *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, Case No. 2:16-MD-02724 (E.D. Pa.); *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD (S.D. Cal.); *In re Freight Forwarders Antitrust Litigation (Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd., et al.)*, Case No. 1:08-cv-42-JG-VVP (E.D.N.Y.); *In re Dynamic Random Access Memory (DRAM)*, Case No. M:02-cv-1486 (N.D. Cal.). Thus far, however, Maine counsel have declined.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff Wood Mountain Fish respectfully requests that the Court deny the motion by Maine counsel to modify the existing appointment of counsel.

Dated: June 18, 2020

**SHEPHERD, FINKLEMAN, MILLER & SHAH, LLP**

*/s/Jayne A. Goldstein*
Jayne A. Goldstein
1625 North Commerce Parkway, Suite 320
Fort Lauderdale, FL 33326
Tel:      954-515-0123
Fax:      866-300-7367
Email:    jgoldstein@sfmslaw.com

**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**
Heidi M. Silton (*pro hac vice*)
Kristen G. Marttila (*pro hac vice*)
Maureen Kane Berg (*pro hac vice*)
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel:      612-339-6900
Fax:      612-339-0981
Email:    hmsilton@locklaw.com
          kgmarttila@locklaw.com
          mkberg@locklaw.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Thomas H. Burt (*pro hac vice*)
270 Madison Avenue
New York, NY 10016
Tel:      212-545-4600
Fax:      212-545-4653
Email:    burt@whafh.com
          bosco@whafh.com

**ZWERLING, SCHACHTER & ZWERLING, LLP**
Fred Taylor Isquith (*pro hac vice*)
41 Madison Avenue, 32nd Floor
New York, NY 10010
Tel: (212) 223-3900
Email:  ftisquith@zsz.com

**PRITZKER LEVINE LLP**
Elizabeth C. Pritzker (*pro hac vice*)
1900 Powell Street, Suite 450
Emeryville, CA 94608
Tel:      415-692-0772
Fax:     415-366-6110
Email:   ecp@pritzkerlevine.com

**VITA LAW OFFICES P.C.**
Richard J. Vita
100 State Street, Suite 900
Boston, MA 02109
Tel:      617-426-6566
Email:   rjv@vitalaw.com

*Counsel for Indirect Purchaser Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of June 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.


_/s/Jayne A. Goldstein_
Jayne A. Goldstein