# EXHIBIT

# 5

Michael J. Flannery (Cal. Bar No. 196266)
CUNEO GILBERT & LADUCA, LLP
7733 Forsyth Boulevard, Suite 1675
St. Louis, MO 63105
Telephone: 314.226.1015
Facsimile: 202.789.1819
mflannery@cuneolaw.com

*Counsel for Plaintiff and Class*
[Additional Counsel listed on signature page]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUTCH VILLAGE RESTAURANT, on behalf of itself and all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> BUMBLE BEE FOODS LLC, TRI-UNION SEAFOODS LLC, and STARKIST COMPANY, <br><br> Defendants. | Case No. <br> __'15 CV 2020 LAB BLM__ <br><br> **CLASS ACTION COMPLAINT** <br> JURY TRIAL DEMANDED |

Plaintiff Dutch Village Restaurant ("Plaintiff"), by and through its undersigned attorneys, alleges as follows. Other than those relating directly to Plaintiff, all allegations herein are upon information and belief.

## **NATURE OF THE ACTION**

1.     Bumble Bee Foods LLC, Tri-Union Seafoods LLC, and StarKist Company (collectively, "Defendants") are the largest producers of packaged seafood products ("PSPs") in the United States, its territories, and the District of Columbia. This action concerns their conspiracy—which began no later than July

1

24, 2011 and continues to the present (the "Class Period")—to fix, raise, maintain, and/or stabilize prices for PSPs within the United States. As used in this Complaint, the term "PSPs" refers to shelf-stable seafood products (predominantly tuna) that are sold in cans, pouches, or ready-to-eat serving packages.

2. Plaintiff, an indirect purchaser of PSPs, brings this lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of residents of jurisdictions which proscribe the Defendants' unlawful conduct, as described in this Class Action Complaint. These jurisdictions include Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. Plaintiff brings this lawsuit individually and on behalf of all legal entities that indirectly purchased packaged seafood products for their own use in food preparation, rather than for resale as such, from one or more Defendant or any predecessor, subsidiary, or affiliate thereof, at any time between July 24, 2011 and the present.

## JURISDICTION AND VENUE

3. Plaintiff brings this state law class action to recover actual and/or compensatory damages, double and treble damages as permitted, pre- and post-judgment interest, costs, and attorneys' fees. Plaintiff also seeks nationwide injunctive relief. Plaintiff seeks damages in excess of $5,000,000. Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure equitable and injunctive relief against Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiff also asserts claims for actual and exemplary damages under state antitrust, unfair competition, and consumer protection laws, and seeks to obtain restitution, recover damages, and secure other relief against Defendants for

CLASS ACTION COMPLAINT

violation of those state laws. Plaintiff and the Classes also seek attorneys' fees, costs, and other expenses under federal and state law. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d).

4.       Venue and personal jurisdiction are proper in this judicial district pursuant to Section 12 of the Clayton Act (15 U.S.C. § 22). Personal jurisdiction is proper in this district as each Defendant resides, is found, transacts business, or has an agent in the United States, including in this district. Venue is also proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c), and, because at least one of the Defendants resides is licensed in or is conducting business in this judicial district, and because a substantial portion of the unlawful and anticompetitive conduct affecting interstate trade and commerce was engaged in and carried out by Defendants in this judicial district.

## **PARTIES**

5.       Plaintiff Dutch Village Restaurant is a restaurant located at 8729 East Main Street, Clymer, NY 14724. During the relevant period, Plaintiff has purchased StarKist's PSPs—specifically, its shelf-stable tuna—from the food service distributor Maple Vale Farm, Inc. Plaintiff purchased groceries, including StarKist's PSPs, on a weekly basis. Plaintiff uses the PSPs it indirectly purchases from Defendants to make the following items for its customers: grilled tuna melts, tuna salad sandwiches, tuna salad stuffed tomato picnic platters, macaroni tuna salads, and tuna noodle casseroles. Plaintiff never resells PSPs.

6.       Defendant Tri-Union Seafoods LLC is a domestic corporation with its principal place of business at 9330 Scranton Road, Suite 500, San Diego, CA 92121. Tri-Union Seafoods LLC produces and sells PSPs throughout the United States, its territories, and the District of Columbia. It markets these products under the brand name Chicken of the Sea. Unless otherwise indicated, Tri-Union Foods LLC will be referred to herein as "CoS". CoS is owned by Thai Union Frozen

CLASS ACTION COMPLAINT

Products ("Thai Union"), a company based in Thailand.

7.     Defendant Bumble Bee Foods LLC ("Bumble Bee") is a domestic corporation with its principal place of business at 280 10th Avenue, San Diego CA 92101. Bumble Bee produces and sells PSPs throughout the United States, its territories, and the District of Columbia. Bumble Bee is privately owned by Lion Capital ("Lion"), which is based in the United Kingdom.

8.     Defendant StarKist Company ("StarKist") is a domestic corporation with its headquarters at 225 North Shore Drive, Suite 400, Pittsburgh PA 15212. StarKist produces and sells PSPs throughout the United States, its territories, and the District of Columbia. StarKist is privately owned by Dongwon Enterprise ("Dongwon"), which is based in South Korea.

9.     Upon information and belief, at all relevant times, other producers of PSPs willingly conspired with Defendants in their unlawful restraint of trade. All averments herein against Defendants are also averred against these unnamed co-conspirators.

10.    The acts alleged to have been done by Defendants were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

## **INTERSTATE TRADE AND COMMERCE**

11.    Throughout the Class Period, there was a continuous and uninterrupted flow of invoices for payment, payments, and other documents essential to the sale of packaged seafood products in interstate commerce between and among offices of Defendants and their customers located throughout the United States, its territories, and the District of Columbia.

12.    Throughout the Class Period, Defendants transported substantial amounts of PSPs in a continuous and uninterrupted flow of interstate commerce throughout the United States, its territories, and the District of Columbia.

13.    Throughout the Class Period, Defendants' unlawful activities took place within and substantially affected the flow of interstate commerce and had a direct, substantial, and reasonably foreseeable effect upon commerce in the United States, its territories, and the District of Columbia.

## FACTUAL ALLEGATIONS

### A.    PSPs and the Packaged Seafood Industry

14.    PSPs are composed of seafood that has undergone a detailed processing procedure to preserve and enhance flavor and to ensure product safety. They are sold in cans, pouches, and ready-to-eat serving packages. While the majority of the PSPs produced and sold by Defendants are tuna, Defendants also sell packaged clams, salmon, and sardines.  Additionally, CoS and Bumble Bee sell packaged crabs, mackerels, oysters, and shrimp.

15.    Defendants sell PSPs directly to, among other entities, restaurant wholesale suppliers, retail groceries, grocery cooperatives, and mass merchandisers. These direct purchasers then sell PSPs to various customers, including restaurants. Upon information and belief, PSPs sold for food preparation are generally sold by Defendants in larger containers than those sold at supermarkets to the generally public, and are generally sold through a different chain of distribution.

16.    As of 2010, the United States PSP industry generated annual sales of approximately $2.37 billion.  Shelf-stable tuna accounts for approximately $1.75 billion, or 74%, of those sales.

17.    Defendants are the three largest domestic manufacturers of PSPs. The industry is highly concentrated, with Defendants controlling approximately 75% of the market. In December of 2014, the *Wall Street Journal* reported that the Defendants' respective shares of the domestic market for canned tuna were 13% for CoS, 25% for Bumble Bee, and 36% for StarKist.

Bualuang Securities reported the shares for the domestic canned tuna market slightly differently, with StarKist at 30%, Bumble Bee at 28%, and CoS at 20%.

18.     The PSP industry's oligopolistic structure within the industry is the result of recent mergers and acquisitions. For example, in 1997, the investment group Tri-Union Seafoods LLC—of which Thai Union was a member—acquired Van Camp Seafood Company ("Van Camp"). Thereafter, Thai Union bought out the other investors to acquire Van Camp completely, which it renamed Chicken of the Sea International, an entity that was later merged into Tri-Union Seafoods LLC. In 2008, Dongwon acquired StarKist from Del Monte Foods for $363 million. Similarly, in 2014, Thai Union bought King Oscar, a Norwegian sardine canner that sold 37% of its products in the United States.

19.     Then, in December of 2014, Thai Union announced the acquisition from Lion (subject to regulatory approval) of Bumble Bee for $1.51 billion. The combination of CoS and Bumble Bee would have created a virtual duopoly, with the combined entity substantially exceeding the market share of StarKist. Thai Union had planned to finance the acquisition partly through a preferential public offering to existing shareholders that would have raised approximately $380 million.

**B.      The DOJ Investigation into the Packaged Seafood Industry**

20.     On July 23, 2015, Thai Union suspended the preferential public offering in light of a grand jury investigation commenced by the Antitrust Division of the United States Department of Justice ("DOJ"). Thai Union disclosed on that day that both Bumble Bee and CoS had received grand jury subpoenas relating to an antitrust investigation of PSPs. The publication *Undercurrent News* further reported in an article dated that same day that "Thai Union held a conference with analysts on the suspension of the share offer, in which the company's management said other US seafood producers have also received a subpoena requiring the production of relevant information to the DOJ."

The publication *Global Competition Review* similarly reported as follows:

> In a letter to the Bangkok stock exchange on Wednesday, Thai Union chairman Kraisorn Chansiri confirmed that the US Department of Justice is investigating his company's sector, causing Thai Union to suspend a stock issuance that had been intended to finance the $1.5 billion acquisition of Bumble Bee.
>
> He said the Thai Union subsidiary Tri-Union Seafoods, which operates in the US under the Chicken of the Sea brand, had received a subpoena "requiring Tri-Union to provide relevant information to the DoJ in relation to an antitrust investigation of the packaged seafood industry in the United States."

21.     The article goes on to state:

> An Industry expert said the subpoena does not appear to be limited to the merger review, and early information indicates the demand for information came from a separate section of the antitrust division, not one tasked with analyzing deals.
>
> It is highly likely that something produced in the merger investigation sparked this investigation touching the industry as a whole rather than just the parties to the deal, he said.
>
> ****
>
> The source said others in the industry are now anticipating that they too will be subpoenaed . . . .

22.     Based on these statements, it appears that StarKist received a subpoena as well, and that the DOJ's investigation extends to the entire domestic PSP sector.

23.     The fact that these companies received subpoenas from a federal grand jury is significant, as is reflected in Chapter 3 of the 2014 edition of the DOJ's *Antitrust Division Manual,* available at

http://www.justice.gov/atr/public/divisionmanual/chapter3.pdf. Section F.1 of that chapter notes that "staff should consider carefully the likelihood that a grand jury investigation developed evidence confirming the alleged anticompetitive conduct, the Division would proceed with a criminal prosecution." *Id.* at lll-82. The staff request needs to be approved by the relevant field chief and is then sent to the Antitrust Criminal Enforcement Division. *Id.* "The DAAG [Deputy Assistant Attorney General] for Operations, the Criminal DAAG, and the Director of Criminal Enforcement will make a recommendation to the Assistant Attorney General. If approved by the Assistant Attorney General, letters of authority are issued for all attorneys who will participate in the grand jury investigation." *Id.* at 111-83. "The investigation should be conducted by a grand jury in a judicial district where venue lies for the offense, such as a district from or to which price-fixed sales were made or where conspiratorial communications occurred." *Id.*

### C. Economic Indicators of Collusion

24. There are economic indications that support the conclusion that there was collusive pricing within the domestic PSP industry.

25. From about 1950 until 2000, packaged tuna was the most popular seafood product in the United States. Since then, however, national demand for PSPs, particularly canned tuna, has declined. The annual per person consumption of canned tuna was 3.1 lbs. in 2005, but had fallen to 2.3 lbs. in 2013. An article in the *Washington Post* graphically represented this decline by measuring United States annual *per capita* consumption from 1930 to 2010:



The same article presented this graph, showing that, while Americans are buying less canned seafood, they are paying more for what they do buy:



26.     Given this decline in consumption of the signature PSP, one would expect rational businesses to reduce the prices for PSPs. But that did not happen. The following chart, taken from data available at the Bureau of Labor Statistics, depicts seasonally adjusted U.S. city average prices for shelf-stable fish and seafood from January 2005 through the first part of 2015, with the period 1982-84



CLASS ACTION COMPLAINT

used as a baseline.

27.    A recent report by Globefish.org likewise  notes that PSP prices have increased as demand has decreased:

> The US canned market continues declining as a result of weakening household demand. . . . For the 52 weeks ending March 2014, consumption was reported at 65.9% compared with 68.1% recording during the same period of 2010. Sale volumes of shelf stable tuna during the reporting period also declined from USD 30.8 million (equivalent to 27.3 million cases), excluding sales in the catering sector. However, in value terms sales were stable at around USD 1.68 billion, reflecting the increase in canned tuna prices.

28.    Raw material costs do not adequately explain these price increases. While the cost per metric ton of skipjack tuna rose in 2012 and early 2013, it then declined precipitously.

29.    Specifically, while the cost per metric ton of skipjack tuna rose in 2012 and early 2013, it declined precipitously thereafter. According to the April 19, 2015 issue of *Tuna Market Intelligence,* "[a]s recently as June last year, skipjack was selling at US$1,800 in Bangkok. But the price has since plummeted to US$1,000 since the beginning of the year, with industry officials anticipating further reductions in price this year." Tuna exporters in Ecuador noted in January of 2015 that the price per metric ton had declined from $1400 to $800. And the United Nations Food & Agriculture Organization stated in its May 2015 "Food Outlook" biannual report noted that tuna prices had dropped considerably in 2014: "tuna prices declined significantly due to excess supply, with frozen skipjack prices hitting a 6-year low." Despite these drastically declining raw material costs, Defendants neither decreased prices nor tried to obtain more market share.

30.    Thai Union's Annual Reports discuss this situation. In its 2013 Annual Report, Thai Union stated that "our branded tuna business showed resilient growth from 2012 thanks to the price adjustments in Europe and more rational market

competition in the US." It said in the same report that its future profit margins would depend upon "[r]easonable US canned tuna competition without unnecessary price."

31.     Likewise, in its 2014 Annual Report, Thai Union explicitly noted that this goal had been achieved:

> Thanks to reduced price competition (absence of cut throat pricing) and generally lower fish cost, our own tuna brands marked a great year of increased profitability. Despite minimal sales growth in the US, competitive inventory cost and reasonable market conditions helped lift the margin of our US brand.

The same report went on to note that "sensible market competition, supported by raw material costs, made it possible for our own tuna brands to expand their margins through the year despite limited volume growth." It indicated that future revenue growth would again be dependent upon "[r]easonable US canned tuna market competition that focuses more on consumption creation than market share alone." The "reasonable market conditions", "more rational market competition", "sensible market competition", avoidance of battles for market share and "absence of cut throat pricing" that the reports note could only have come about through collusion. It would have been against the individual self-interest of each Defendant to eschew increasing market share during this period by lowering prices.

**D.      Defendants' Opportunities to Collude**

32.     There were numerous business opportunities for Defendants to meet and engage in such collusion. The Tuna Council provides one such opportunity. As explained on that organization's website:

> The National Fisheries Institute's Tuna Council represents the largest processors and household names for canned and pouch tuna in the U.S. including *BumbleBee®, Chicken of the Sea®* and *StarKist®*. The Tuna Council speaks for the tuna industry on numerous issues including food safety, labeling, sustainability,

11

nutrition education and product marketing.

33.     "Tuna the Wonderfish" advertising campaign in 2011-12 exemplifies such joint conduct. This campaign was bankrolled by the Defendants and carried out under the auspices of the Tuna Council with the support of Thai processors. In it, the Defendants teamed up for marketing purposes. Joe Tuza, Senior Vice-President of Marketing for StarKist, reportedly said that "[w]e worked together surprisingly well." He said further that the campaign, intended to increase consumption of tuna, was based on the hope that "as the water level rises . . . all boats rise with the tide," referring to the three Defendant companies. The same philosophy appears to undergird the alleged price-fixing conspiracy.

34.     Defendants also work together through co-packing agreements, which provide them another opportunity to collude. Specifically, Bumble Bee copacks for CoS at the former's plant located in Santa Fe Springs, California with respect to West Coast sales. CoS does the same for Bumble Bee at the former's plant in Georgia with respect to East Coast sales. Thus, even before the proposed merger, these two companies were cooperating closely. These interlocking relationships provided an excellent opportunity to collude on pricing.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action on behalf of itself individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2), seeking equitable and injunctive relief on behalf of the following defined class (the "Nationwide Class"):

> All incorporated and non-incorporated food preparation establishments that indirectly purchased packaged seafood products for their own use in commercial food preparation, and not for resale as such, within the United States, its territories, and the District of Columbia, from one or more Defendant or any predecessor, subsidiary, or affiliate thereof, at any time between July 24, 2011 and

the present. Excluded from the Nationwide Class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

36.    Plaintiff brings this action on behalf of itself individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), on behalf of the following defined class (the "Damages Class"):

All incorporated and non-incorporated food preparation establishments that indirectly purchased packaged seafood products for their own use in commercial food preparation, and not for resale as such, in Arizona, Arkansas, California, the District of Columbia, Florida, Illinois, Iowa, Kansas, Maine, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, or Wisconsin, from one or more Defendant or any predecessor, subsidiary, or affiliate thereof, at any time between July 24, 2011 and the present. Excluded from the Damages Class are Defendants, parent companies, predecessors, subsidiaries and affiliates, and all governmental entities.

37.    Plaintiff reserves the right to amend the definitions of the Classes, including temporally.

38.    Due to the nature of the trade and commerce involved, Plaintiff believes that Class members number at least in the thousands and are sufficiently numerous and geographically dispersed throughout the United States, its territories, and the District of Columbia so that joinder of all Class members is impracticable.

39.    There are questions of law and fact which are common to the claims of Plaintiff and the Class, including, but not limited to:

(a)    Whether Defendants engaged in a combination or conspiracy to fix, raise, maintain, and/or stabilize the prices for PSPs;

(b)    Whether the purpose or effect of the acts and omissions alleged herein

13

1  was to restrain trade, or to affect, fix, control, maintain, and/or stabilize the prices
2  for PSPs;

3      (c)    Whether   Defendants   engaged   in   unfair,   false,   deceptive,   or
4  unconscionable behavior;

5      (d)    Whether   Defendants'   conduct   resulted   in   PSPs   being   sold   at   an
6  artificially high and noncompetitive level;

7      (e)    Whether   Defendants   were   unjustly   enriched   by   the   sale   of   PSPs   at
8  artificially high and non-competitive levels

9      (f)    Whether,   and   to   what   extent,   Defendants'   conduct   caused   injury   to
10  Plaintiff   and   members   of   the   Classes,   and,   if   so,   the   appropriate   measure   of
11  damages; and

12      (g)    Whether Plaintiff and the Nationwide Class are entitled to injunctive
13  relief.

14      40.    Plaintiff's claims are typical of the claims of the members of the
15  Classes.

16      41.    Plaintiff will fairly and adequately assert and protect the interests of
17  the Classes. Plaintiff's interests are coincident with, and not antagonistic to, those
18  of the other members of the Classes.

19      42.    Plaintiff is represented by counsel competent and experience in the
20  prosecution of antitrust and class action litigation.

21      43.    The questions of law and fact common to the members of the Classes
22  predominate over any questions affecting only individual members.

23      44.    A class action is superior to other available methods for the fair and
24  efficient adjudication of this controversy because:

25      (a)    The prosecution of separate actions by individual members of the
26  Classes would create a risk of inconsistent or varying adjudications, establishing
27  incompatible standards of conduct for Defendants.

28      (b)    The Classes are readily ascertainable.

14

CLASS ACTION COMPLAINT

(c) Prosecution as a class action will eliminate the possibility of repetitious litigation.

(d) Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

(e) Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

45. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## COUNT I
### Violation of Sections 1 the Sherman Act
### (on behalf of Plaintiff and the Nationwide Class)

46. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

47. Defendants and unnamed conspirators entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

48. The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination, or conspiracy were authorized, ordered, or done by their officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

49. At least as early as July 24, 2011, and continuing through at least the present, the exact dates being unknown to Plaintiff, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to fix,

raise, maintain, and/or stabilize at artificial and non-competitive levels the prices of PSPs.

50. The anti-competitive acts were intentionally directed at the United States market for PSPs and had a substantial and foreseeable effect on interstate commerce by raising and fixing prices for PSPs throughout the United States.

51. The conspiratorial acts and combinations have caused unreasonable restraints in the market for PSPs.

52. As a result of Defendants' unlawful conduct, Plaintiff and other similarly situated members of the Nationwide Class who purchased PSPs manufactured by Defendants have been harmed by being forced to pay inflated, supra-competitive prices for such products.

53. In formulating and effectuating their contract, combination, or conspiracy, Defendants engaged in anticompetitive activities, the purpose and effect of which were to artificially fix, raise, maintain, and/or stabilize the price of PSPs.

54. The illegal combination and conspiracy alleged herein had the following effects, among others:

(a) The prices charged by Defendants for PSPs were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

(b) Plaintiff and other similarly situated members of the Nationwide Class have been deprived of free and open competition in the purchase of PSPs;

(c) Plaintiff and other similarly situated members of the Nationwide Class have been required to pay more for PSPs than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy;

(d) Competition in the sale of PSPs has been restrained, suppressed, or eliminated.

55. Plaintiff and members of the Nationwide Class have been injured and will continue to be injured in their business and property by paying more for PSPs

than they would have paid and will pay in the absence of the conspiracy.

56.     The alleged contract, combination, or conspiracy is *a per se* violation of the federal antitrust laws.

57.     Plaintiff and members of the Nationwide Class will be at the mercy of Defendants' unlawful conduct until the Court orders an injunction.

58.     Under 15 U.S.C. § 26, Plaintiff and members of the Nationwide Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## COUNT II

### Violation of State Antitrust Statutes

### (on behalf of Plaintiff and the Damages Class)

59.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

60.     At least as early as July 24, 2011, and continuing through at least the present, the exact dates being unknown to Plaintiff, Defendants entered into a continuing agreement, understanding, and conspiracy in restraint of trade to fix, raise, maintain, and/or stabilize at artificial and non-competitive levels the prices of such PSPs.

61.     The contract, combination, or conspiracy consisted of an agreement among the Defendants to fix, raise, inflate, stabilize, and/or maintain artificially supra-competitive prices for PSPs.

62.     In formulating and effectuating this conspiracy, Defendants performed acts in furtherance of the combination and conspiracy, including participating in meetings and conversations among themselves during which they agreed to price PSPs at certain levels and otherwise to fix, increase, inflate, maintain, and/or stabilize effective prices paid by Plaintiff and members of the Damages Class with respect to PSPs sold in the United States.

63.     Defendants engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, raise, maintain, and/or stabilize prices of PSPs.

64.     Defendants' anticompetitive, unfair acts described above were knowing and willful, and constituted violations or flagrant violations of the below-listed state antitrust statutes.

65.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Arizona; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Arizona; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants entered into agreements in restraint of trade in violation of Ariz. Rev. Stat. §§ 44-1401, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

66.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

(a)     During the Class Period, Defendants entered into and engaged in a

18

continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720 of the California Business and Professions Code. Defendants, each of them, have acted in violation of Section 16720 to fix, raise, stabilize, and/or maintain PSP prices at supracompetitive levels.

(b)     The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among the Defendants, the substantial terms of which were to fix, raise, maintain, and/or stabilize the prices of PSPs.

(c)     For the purpose of forming and effectuating the unlawful trust, the Defendants have done those things which they combined and conspired to do, including but in no way limited to the acts, practices, and course of conduct set forth above.

(d)     The combination and conspiracy alleged herein has had, *inter alia*, the following effects upon the commerce of California: (1) Price competition in the sale of PSPs has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for PSPs sold by Defendants have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) Those who purchased PSPs from entities who purchased PSPs directly from Defendants have been deprived of the benefit of free and open competition.

(e)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

67.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class who resided in the District of Columbia and/or purchased PSPs in the District of Columbia were deprived of free and open competition in the District of Columbia; and (4) Plaintiff and members of the Damages Class who resided in the District of Columbia and/or purchased PSPs in the District of Columbia paid supracompetitive, artificially inflated prices for PSPs in the District of Columbia.

(b)     During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-45601, *et seq.*

68.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes, 10/1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Illinois; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Illinois; (3) Plaintiff and members of the

Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1 *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq.*

69.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Iowa Code §§ 553.1, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Iowa; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Iowa; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)    During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

(c)    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)    By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa

Code §§ 553.1, *et seq.*

70. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Kansas; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Kansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b) During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

71. Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Maine; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Maine; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices

1    for PSPs.

2       (b)    During the Class Period, Defendants' illegal conduct substantially

3    affected Maine commerce.

4       (c)    As a direct and proximate result of Defendants' unlawful conduct,

5    Plaintiff and members of the Damages Class have been injured in their business

6    and property and are threatened with further injury.

7       (d)    By reason of the foregoing, Defendants have entered into agreements in

8    restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

9    Accordingly, Plaintiff and members of the Damages Class seek all relief available

10    under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

11       72.    Defendants have entered into an unlawful agreement in restraint of

12    trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

13       (a)    Defendants' combinations or conspiracies had the following effects:

14    (1) PSP price competition was restrained, suppressed, and eliminated throughout

15    Michigan; (2) PSP prices were raised, fixed, maintained, and/or stabilized at

16    artificially high levels throughout Michigan; (3) Plaintiff and members of the

17    Damages Class were deprived of free and open competition; and (4) Plaintiff and

18    members of the Damages Class paid supracompetitive, artificially inflated prices

19    for PSPs.

20       (b)    During the Class Period, Defendants' illegal conduct substantially

21    affected Michigan commerce.

22       (c)    As a direct and proximate result of Defendants' unlawful conduct,

23    Plaintiff and members of the Damages Class have been injured in their business

24    and property and are threatened with further injury.

25       (d)    By reason of the foregoing, Defendants have entered into agreements in

26    restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

27    Accordingly, Plaintiff and members of the Damages Class seek all relief available

28    under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

73.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Minnesota; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minnesota Stat. §§ 325D.49, *et seq.*

74.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Mississippi; (3) Plaintiff and members of the Damages Class who resided in Mississippi and/or purchased PSPs in Mississippi were deprived of free and open competition in Mississippi; and (4) Plaintiff and members of the Damages Class who resided in Mississippi and/or purchased PSPs in Mississippi paid supracompetitive, artificially inflated prices in Mississippi for

CLASS ACTION COMPLAINT

1 PSPs.

2 (b) During the Class Period, Defendants' illegal conduct substantially
3 affected Mississippi commerce.

4 (c) As a direct and proximate result of Defendants' unlawful conduct,
5 Plaintiff and members of the Damages Class have been injured in their business
6 and property and are threatened with further injury.

7 (d) By reason of the foregoing, Defendants have entered into agreements in
8 restraint of trade in violation of Mississippi Code Ann. § 75-21-1, *et seq.*
9 Accordingly, Plaintiff and members of the Damages Class seek all relief available
10 under Mississippi Code Ann. § 75-21-1, *et seq.*

11 75. Defendants have entered into an unlawful agreement in restraint of
12 trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

13 (a) Defendants' combinations or conspiracies had the following effects: (1)
14 PSP price competition was restrained, suppressed, and eliminated throughout
15 Nebraska; (2) PSP prices were raised, fixed, maintained, and/or stabilized at
16 artificially high levels throughout Nebraska; (3) Plaintiff and members of the
17 Damages Class were deprived of free and open competition; and (4) Plaintiff and
18 members of the Damages Class paid supracompetitive, artificially inflated prices
19 for PSPs.

20 (b) During the Class Period, Defendants' illegal conduct substantially
21 affected Nebraska commerce.

22 (c) As a direct and proximate result of Defendants' unlawful conduct,
23 Plaintiff and members of the Damages Class have been injured in their business
24 and property and are threatened with further injury.

25 (d) By reason of the foregoing, Defendants have entered into agreements in
26 restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.*
27 Accordingly, Plaintiff and members of the Damages Class seek all relief available
28 under Nebraska Revised Statutes §§ 59-801, *et seq.*

76.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Nevada; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Nevada; (3) Plaintiff and members of the Damages Class who resided in Nevada and/or purchased PSPs in Nevada were deprived of free and open competition in Nevada; and (4) Plaintiff and members of the Damages Class who resided in Nevada and/or purchased PSPs in Nevada paid supracompetitive, artificially inflated prices in Nevada for PSPs.

(b)     During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

77.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

78.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices PSPs.

(b)     During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 57-1-1, *et seq.*

79.     Defendants have entered into an unlawful agreement in restraint of

trade in violation of the New York General Business Laws §§ 340, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout New York; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout New York; (3) Plaintiff and members of the Damages Class who resided in New York and/or purchased PSPs in New York were deprived of free and open competition in New York; and (4) Plaintiff and members of the Damages Class who resided in New York paid supracompetitive, artificially inflated prices for PSPs when they purchased PSPs in New York, or purchased in New York PSPs that were otherwise of lower quality than would have been absent the conspirators' illegal acts, or were unable to purchase PSPs that they would have otherwise purchased absent the illegal conduct.

(b) During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a per se violation of the Act. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

80. Defendants have entered into an unlawful agreement in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

(a) Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the

1    Damages Class who resided in North Carolina and/or purchased PSPs in North

2    Carolina were deprived of free and open competition in North Carolina; and (4)

3    Plaintiff and members of the Damages Class who resided in North Carolina and/or

4    purchased PSPs in North Carolina paid supracompetitive, artificially inflated prices

5    in North Carolina for PSPs.

6        (b)    During the Class Period, Defendants' illegal conduct substantially

7    affected North Carolina commerce. As a direct and proximate result of

8    Defendants' unlawful conduct, Plaintiff and members of the Damages Class have

9    been injured in their business and property and are threatened with further injury.

10       (c)    By reason of the foregoing, Defendants have entered into agreements

11   in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.*

12   Accordingly, Plaintiff and members of the Damages Class seek all relief available

13   under North Carolina Gen. Stat. §§ 75-1, *et seq.*

14       81.    Defendants have entered into an unlawful agreement in restraint of

15   trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

16       (a)    Defendants' combinations or conspiracies had the following effects:

17   (1) PSP price competition was restrained, suppressed, and eliminated throughout

18   North Dakota; (2) PSP prices were raised, fixed, maintained, and/or stabilized at

19   artificially high levels throughout North Dakota; (3) Plaintiff and members of the

20   Damages Class were deprived of free and open competition; and (4) Plaintiff and

21   members of the Damages Class paid supracompetitive, artificially inflated prices

22   for PSPs.

23       (b)    During the Class Period, Defendants' illegal conduct had a substantial

24   effect on North Dakota commerce.

25       (c)    As a direct and proximate result of Defendants' unlawful conduct,

26   Plaintiff and members of the Damages Class have been injured in their business

27   and property and are threatened with further injury.

28       (d)    By reason of the foregoing, Defendants have entered into agreements in

29

restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

82.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Oregon; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Oregon; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

83.     Defendants have entered into an unlawful agreement in restraint of trade in violation of the Rhode Island General Laws §§ 6-36-4, *et seq.*

(a)     Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and

1    members of the Damages Class paid supracompetitive, artificially inflated prices
2    for PSPs.

3         (b)    During the Class Period, Defendants' illegal conduct had a substantial
4    effect on Rhode Island commerce.

5         (c)    As a direct and proximate result of Defendants' unlawful conduct,
6    Plaintiff and members of the Damages Class have been injured in their business
7    and property and are threatened with further injury.

8         84.    By reason of the foregoing, Defendants have entered into agreements in
9    restraint of trade in violation of Rhode Island General Laws §§ 6-36-4, *et seq.*
10   Accordingly, Plaintiff and members of the Damages Class seek all relief available
11   under Rhode Island General Laws §§ 6-36-4, *et seq.*

12        85.    Defendants have entered into an unlawful agreement in restraint of
13   trade in violation of the South Dakota Codified Laws §§ 37-1-3.1., *et seq.*

14        (a)    Defendants' combinations or conspiracies had the following effects:
15   (1) PSP price competition was restrained, suppressed, and eliminated throughout
16   South Dakota; (2) PPSP prices were raised, fixed, maintained, and/or stabilized at
17   artificially high levels throughout South Dakota; (3) Plaintiff and members of the
18   Damages Class who resided in South Dakota and/or purchased PSPs in South
19   Dakota were deprived of free and open competition in South Dakota; and (4)
20   Plaintiff and members of the Damages Class who resided in South Dakota and/or
21   purchased PSPs in South Dakota paid supracompetitive, artificially inflated prices
22   in South Dakota for PSPs.

23        (b)    During the Class Period, Defendants' illegal conduct has a substantial
24   effect on South Dakota commerce.

25        (c)    As a direct and proximate result of Defendants' unlawful conduct,
26   Plaintiff and members of the Damages Class have been injured in their business
27   and property and are threatened with further injury.

28        (d)    By reason of the foregoing, Defendants have entered into agreements in

CLASS ACTION COMPLAINT

1  restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.*
2  Accordingly, Plaintiff and members of the Damages Class seek all relief available
3  under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

4  86.  Defendants have entered into an unlawful agreement in restraint of
5  trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

6  (a)  Defendants' combinations or conspiracies had the following effects:
7  (1) PSP price competition was restrained, suppressed, and eliminated throughout
8  Tennessee; (2) PSP prices were raised, fixed, maintained, and/or stabilized at
9  artificially high levels throughout Tennessee; (3) Plaintiff and members of the
10 Damages Class who resided in Tennessee and/or purchased PSPs in Tennessee
11 were deprived of free and open competition in Tennessee; and (4) Plaintiff and
12 members of the Damages Class who resided in Tennessee and/or purchased PSPs
13 in Tennessee paid supracompetitive, artificially inflated prices in Tennessee for
14 PSPs.

15 (b)  During the Class Period, Defendants' illegal conduct had a substantial
16 effect on Tennessee commerce. As a direct and proximate result of Defendants'
17 unlawful conduct, Plaintiff and members of the Damages Class have been injured
18 in their business and property and are threatened with further injury.

19 (c)  By reason of the foregoing, Defendants have entered into agreements
20 in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.*
21 Accordingly, Plaintiff and members of the Damages Class seek all relief available
22 under Tennessee Code Ann. §§ 47-25-101, *et seq.*

23 87.  Defendants have entered into an unlawful agreement in restraint of
24 trade in violation of the Utah Code Annotated §§ 76-10-911, *et seq.*

25 (a)  Defendants' combinations or conspiracies had the following effects:
26 (1) PSP price competition was restrained, suppressed, and eliminated throughout
27 Utah; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially
28 high levels throughout Utah; (3) Plaintiff and members of the Damages Class were

32

deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Utah Code Annotated §§ 76-10-911, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-911, *et seq.*

88.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Vermont Stat. Ann. 9 §§ 2451, *et seq.*

(a)      Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Vermont; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Vermont; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce.

(c)      As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Vermont Stat. Ann. 9 §§ 2451, *et seq.* Plaintiff is entitled to relief pursuant to Vermont Stat. Ann. 9 § 2465 and any other applicable

1    authority. Accordingly, Plaintiff and members of the Damages Class seek relief

2    available under Vermont Stat. Ann. 9 §§ 2451, *et seq.*

3        89.    Defendants have entered into an unlawful agreement in restraint of

4    trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

5        (a)    Defendants' combinations or conspiracies had the following effects:

6    (1) PSP price competition was restrained, suppressed, and eliminated throughout

7    West Virginia; (2) PSP prices were raised, fixed, maintained, and/or stabilized at

8    artificially high levels throughout West Virginia; (3) Plaintiff and members of the

9    Damages Class who resided in West Virginia and/or purchased PSPs in West

10   Virginia were deprived of free and open competition in West Virginia; and (4)

11   Plaintiff and members of the Damages Class who resided in West Virginia and/or

12   purchased PSPs in West Virginia paid supracompetitive, artificially inflated prices

13   in West Virginia for PSPs.

14       (b)    During the Class Period, Defendants' illegal conduct had a substantial

15   effect on West Virginia commerce.

16       (c)    As a direct and proximate result of Defendants' unlawful conduct,

17   Plaintiff and members of the Damages Class have been injured in their business

18   and property and are threatened with further injury.

19       (d)    By reason of the foregoing, Defendants have entered into agreements in

20   restraint of trade in violation of West Virginia Code §§ 47-18-1, *et seq.*

21   Accordingly, Plaintiff and members of the Damages Class seek all relief available

22   under West Virginia Code §§ 47-18-1, *et seq.*

23       90.    Defendants have entered into an unlawful agreement in restraint of

24   trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

25       (a)    Defendants' combinations or conspiracies had the following effects:

26   (1) PSP price competition was restrained, suppressed, and eliminated throughout

27   Wisconsin; (2) PSP prices were raised, fixed, maintained, and/or stabilized at

28   artificially high levels throughout Wisconsin; (3) Plaintiff and members of the

CLASS ACTION COMPLAINT

Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

91.     Plaintiff and members of the Damages Class have been injured in their business and property by reason of Defendants' unlawful combination, contract, conspiracy, and agreement. Plaintiff and members of the Damages Class have paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct. This injury is of the type the antitrust laws of the above states were designed to prevent and flows from Defendants' unlawful conduct.

92.     In addition, Defendants have profited significantly from the aforesaid conspiracy. Defendants' profits derived from their anticompetitive conduct come at the expense and detriment of Plaintiff and members of the Damages Class.

93.     Accordingly, Plaintiff and the members of the Damages Class seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the above state laws.

## COUNT III

### Violation of State Consumer Protection Statutes

**(on behalf of Plaintiff and the Damages Class)**

94.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

95.     Defendants knowingly engaged in unlawful, unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

96.     Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of the Arkansas Code Annotated, § 4-88-101.

(a)     Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels the prices at which PSPs were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Arkansas Code Annotated § 4-88-107(a)(10).

(c)     Defendants' unlawful conduct had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Arkansas; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive

CLASS ACTION COMPLAINT

acts or practices in violation of Arkansas Code Annotated § 4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

97. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*

(a) During the Class Period, Defendants committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

(b) During the Class Period, Defendants illegal conduct substantially affected California commerce and consumers.

(c) This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged in this Class Action Complaint, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

(d) The Defendants' conduct as alleged in this Class Action Complaint violated Section 17200. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the violations of Section 16720, *et seq.*, of the California Business and Professions Code, as set forth above;

(e) Defendants' acts, omissions, misrepresentations, practices, and nondisclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not

concerted or independent acts, are otherwise unfair, unconscionable, unlawful, or fraudulent;

(f)     Defendants' acts or practices are unfair to purchasers of PSPs in the State of California within the meaning of Section 17200, California Business and Professions Code; and

(g)     Defendants' unlawful conduct had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout California; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout California; (3) Plaintiff and members of the classes who resided in California and/or purchased PSPs in California were deprived of free and open competition in California; and (4) Plaintiff and members of the classes who resided in California and/or purchased PSPs in California paid supracompetitive, artificially inflated prices in California for PSPs.

(h)     Defendants' acts and practices are unlawful, fraudulent, or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

(i)     Plaintiff and members of the classes are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

(j)     The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

(k)     The unlawful, fraudulent, deceptive, and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiff and the members of the classes to pay supracompetitive and artificially inflated prices for PSPs. Plaintiff and the members of the classes suffered injury in fact and lost money or property as a result of such unfair competition.

1     (l)    The conduct of Defendants as alleged in this Class Action Complaint

2    violates Section 17200 of the California Business and Professions Code.

3     (m)    As alleged in this Class Action Complaint, Defendants have been

4    unjustly enriched as a result of their wrongful conduct and by Defendants' unfair

5    competition. Plaintiff and the members of the Damages Class are accordingly

6    entitled to equitable relief including restitution and/or disgorgement of all

7    revenues, earnings, profits, compensation, and benefits that may have been

8    obtained by Defendants as a result of such business practices, pursuant to the

9    California Business and Professions Code, Sections 17203 and 17204.

10    98.    Defendants have engaged in unfair competition or unlawful, unfair,

11    unconscionable, or deceptive acts or practices in violation of District of Columbia

12    Code § 28-3901, *et seq.*

13     (a)    Defendants agreed to, and did in fact, act in restraint of trade or

14    commerce by affecting, fixing, controlling, and/or maintaining, at artificial and/or

15    non-competitive levels, the prices at which PSPs were sold, distributed, or obtained

16    in the District of Columbia.

17     (b)    The foregoing conduct constituted "unlawful trade practices" within the

18    meaning of D.C. Code § 28-3904.

19     (c)    During the Class Period, Defendants' illegal conduct substantially

20    affected District of Columbia commerce and consumers.

21     (d)    Defendants' unlawful conduct had the following effects: (1) PSP price

22    competition was restrained, suppressed, and eliminated throughout the District of

23    Columbia; (2) PSP prices were raised, fixed, maintained, and/or stabilized at

24    artificially high levels throughout the District of Columbia; (3) Plaintiff and the

25    members of the Damages Class were deprived of free and open competition; and

26    (4) Plaintiff and the members of the Damages Class paid supracompetitive,

27    artificially inflated prices for PSPs.

28     (e)    As a direct and proximate result of Defendants' conduct, Plaintiff and

CLASS ACTION COMPLAINT

the members of the Damages Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

99. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

(a) Defendants' unlawful conduct had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Florida; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Florida; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b) During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

(c) As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d) Defendants have engaged in unfair competition or unlawful, unfair, or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

100. Defendants have engaged in unfair competition or unlawful, unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

(a) Defendants engaged in the conduct described in this Class Action Complaint in connection with the sale of PSPs in a market that includes Missouri.

(b)     During the Class Period, Defendatns' illegal conduct substantially affected Missouri commerce and consumers.

(c)     Defendants agreed to, and in fact did, fix, control, and maintain at artificial and non-competitive levels, the price at which PSPs were sold, distributed, or obtained in Missouri, which conduct constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive, and unscrupulous, and caused substantial injury to Plaintiff and the members of the Damages Class

(d)     Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiff and the members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for PSPs. The concealed, suppressed, and omitted facts would have been important to Plaintiff and the members of the Damages Class as they related to the cost of PSPs.

(e)     Defendants' unlawful conduct had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Missouri; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Missouri; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(f)     The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

(g)     As a direct and proximate result of the above-described unlawful practices, Plaintiff and the members of the Damages Class suffered ascertainable loss of money or property.

(h)     Accordingly, Plaintiff and the members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair

practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce," as further interpreted by the Missouri Code of State Regulations, which provides for the relief sought in this Count.

101. Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at a non-competitive and artificially inflated levels, the price at which PSPs were sold, distributed, or obtained in New Mexico and took efforts to conceal their agreements from Plaintiff and the members of the Damages Class.

(b)     The aforementioned conduct on the part of the Defendants constituted "unconscionable trade practices" in violation of N.M.S.A. § 57-12-3, in that such conduct, *inter alia*, and as set forth in N.M.S.A. § 57-12-2E, resulted in a gross disparity between the value received by Plaintiff and the members of the Damages Class and the prices paid by them for PSPs.

(c)     Defendants' unlawful conduct had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(d)     During the Class Period, Defendants' illegal conduct substantially affected Now Mexico commerce and consumers.

(e)     As a direct and proximate result of the unlawful conduct of the Defendants, Plaintiff and the members of the Damages Class have been injured in

their business and property and are threatened with further injury.

(f)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

102.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the price at which PSPs were sold, distributed, or obtained in New York and took efforts to conceal their agreements from Plaintiff and the members of the Damages Class.

(b)     Defendants deceptively led purchasers, such as Plaintiff and the members of the Damages Class, to believe that the PSPs they had purchased had been sold at legal, competitive prices, when they had in fact been sold at a collusively obtained and inflated prices.

(c)     The conduct of the Defendants described in this Class Action Complaint constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

(d)     Defendants' unlawful conduct had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout New York; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout New York; (3) Plaintiff and the members of the Damages Class who reside in and/or made purchases of PSPs in New York were deprived of free

43

and open competition and subject to Defendants' deceptive practices in New York; and (4) Plaintiff and the members of the Damages Class who reside in and/or made purchases of PSPs in New York paid supracompetitive, artificially inflated prices in New York for PSPs, and were subjected to Defendants' deceptive practice in New York.

(e)     During the Class Period, Defendants' illegal conduct substantially affected New York commerce and consumers.

(f)     During the Class Period, each of the Defendants named in this Class Action Complaint directly, or indirectly and through affiliates, dominated and controlled, manufactured, sold, and/or distributed PSPs in New York.

(g)     Plaintiff and the members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

103.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the price at which PSPs were sold, distributed, or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and the members of the Damages Class.

(b)     The conduct of the Defendants described in this Class Action Complaint constituted consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

(c)     Defendants' unlawful conduct had the following effects upon purchasers in North Carolina: (1) PSP price competition was restrained,

suppressed, and eliminated throughout North Carolina; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and the members of the Damages Class who reside in North Carolina and/or purchased PSPs in North Carolina were deprived of free and open competition in North Carolina; and (4) Plaintiff and the members of the Damages Class who resided in North Carolina and/or purchased PSPs in North Carolina paid supracompetitive, artificially inflated prices in North Carolina for PSPs.

(d)    During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

(e)    During the Class Period, each of the Defendants named in this Class Action Complaint, directly, or indirectly and through affiliated they dominated and controlled, manufactured, sold, and/or distributed PSPs in North Carolina.

(f)    Plaintiff and the members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

104.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq.*

(a)    Defendants' combinations or conspiracies had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout South Carolina; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout South Carolina; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supracompetitive, artificially inflated prices for PSPs.

(b)     During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce.

(c)     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the members of the Damages Class have been injured in their business and property and are threatened with further injury.

(d)     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §§ 29-5-10, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

104.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

(a)     Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which PSPs were sold, distributed, or obtained in Vermont.

(b)     Defendants deliberately failed to disclose material facts to Plaintiff and the members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for PSPs. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' PSP prices were competitive and fair.

(c)     Defendants' unlawful conduct had the following effects: (1) PSP price competition was restrained, suppressed, and eliminated throughout Vermont; (2) PSP prices were raised, fixed, maintained, and/or stabilized at artificially high levels throughout Vermont; (3) Plaintiff and the members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and the members of the Damages Class paid supra-competitive, artificially inflated prices for PSPs.

CLASS ACTION COMPLAINT

(d)     As a direct and proximate result of the Defendants' violations of law, Plaintiff and the members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

(e)     Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of PSPs, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing PSPs at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

## COUNT IV

## UNJUST ENRICHMENT

### (on behalf of Plaintiff and the Damages Class)

105.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

106.   As a result of their unlawful conduct described above, Defendants have and will continued to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, as a minimum, unlawfully inflated prices and unlawful profits of PSPs.

107    Defendants have benefitted from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting from the overpayment made by Plaintiff and the members of the Damages Class for PSPs.

108.   Plaintiff and the members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and

inequitable conduct. Plaintiff and the members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the members of the Damages Class may make claims on a pro rata basis.

109. Pursuit of any remedies against the entities from which Plaintiff and the members of the Damages Class purchased PSPs subject to Defendants' conspiracy would have been futile, given that those entities did not take part in Defendants' conspiracy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays:

A. That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

B. That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

C. That the unlawful conduct, contract, conspiracy, or combination alleged herein be adjudged and decreed:

    1. An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

    2. A *per se* violation of Section 1 of the Sherman Act;

    3. An unlawful combination, trust, agreement, understanding, and/or concert of action in violation of the state antitrust and unfair competition, unjust enrichment, and consumer protection laws as set forth herein;

D.      That Plaintiff and the members of the Damages Class recover damages to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

E.      That Plaintiff and the members of the Damages Class recover damages to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully gained from them;

F.      That Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy or combination alleged herein, or from entering into any other contract, conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect;

G.      That Plaintiff and the members of the Damages Class be awarded pre- and post- judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

H.      That Plaintiff and the members of the Damages Class recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.      That Plaintiff and the members of the Damages Class have such other and further relief as the case may require and the Court may deem just and proper.

## **Demand For Jury Trial**

Plaintiff requests a jury trial on all matters triable.

CLASS ACTION COMPLAINT

1    Dated: September 11, 2015    Respectfully submitted,

2

3    By *s/ Michael J. Flannery*

Michael J. Flannery (Cal. Bar No. 196266)
CUNEO GILBERT & LADUCA, LLP

4    7733 Forsyth Boulevard, Suite 1675

5    St. Louis, MO 63105

Telephone: 314.226.1015

6    Facsimile: 202.789.1819

7    mflannery@cuneolaw.com

8

Jonathan W. Cuneo

9    Joel Davidow

Daniel M. Cohen

10    CUNEO GILBERT & LADUCA, LLP

11    507 C Street, NW

Washington, DC 20002

12    Telephone: 202.789.3960

13    Facsimile: 202.589.1813

jonc@cuneolaw.com

14    joel@cuneolaw.com

15    danielc@cuneolaw.com

16

Taylor Asen

17    CUNEO GILBERT & LADUCA, LLP

18    16 Court Street, Suite 1012

Brooklyn, NY 11241

19    Telephone: 202.789.3960

20    Facsimile: 202.589.1813

tasen@cuneolaw.com

21

22    Philip A. Cala

111 W 2nd Street, 1st Floor

23    Jamestown, NY 14701

artlaw@windstream.net

24

*Counsel for Plaintiff and Class*

25

26

27

28

CLASS ACTION COMPLAINT