# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Wood Mountain Fish, LLC, on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>Mowi ASA (f/k/a Marine Harvest ASA), Marine Harvest USA, LLC, Marine Harvest Canada, Inc., Ducktrap River of Maine LLC, Grieg Seafood ASA, Grieg Seafood BC Ltd., Ocean Quality AS, Ocean Quality North America Inc., Ocean Quality USA Inc., Ocean Quality Premium Brands, Inc., SalMar ASA, Leroy Seafood Group ASA, Leroy Seafood USA Inc., and Scottish Sea Farms Ltd.,<br><br>      Defendants. | Case No. 1:19-cv-22128-RS<br><br>**COMMERCIAL AND INSTITUTIONAL INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY RULE 23(g) ORDER AND APPOINT CUNEO GILBERT & LADUCA, LLP; COTCHETT, PITRE & MCCARTHY; AND GUSTAFSON GLUEK PLLC INTERIM LEAD COUNSEL** |
| This Filing Relates to Consolidated Case:<br><br>*Prime Steakhouse v. MOWI ASA*, *et al*, 1:20-cv-21463-RS | |
| This Filing Relates to Consolidated Case:<br><br>*Portland Hunt-Alpine Club v. MOWI ASA*, *et al*, 1:20-cv-21509-RS | |

1

**TABLE OF CONTENTS**

                                                                                           **Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT..........................................................................................................................2

       A.     The Commercial Food Preparer Plaintiffs' Class Definitions are Easily Distinguished from that Pled by Wood Mountain Fish .......................................... 2

       B.     The Commercial Food Preparer Plaintiffs Have Clearly Defined Their Class Which Avoids Intraclass Conflict.......................................................................... 4

       C.     The Wood Mountain Fish Intraclass Conflict is Neither Speculative Nor Easily Resolved and Thus Should be Addressed Now .......................................... 6

              1.     The Relationship Between Restaurant Distributors and Restaurants Themselves Presents an Immediate and Obvious Intraclass Conflict ........ 6

              2.     Wood Mountain's Proposed Alternatives Do Not Resolve the Conflict .... 8

       D.     Leadership Orders and Lessons Learned from Prior Food Industry Antitrust Actions Support Separate Representation for the CFPP Class ............................... 9

III. CONCLUSION....................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Broiler Chicken Antitrust Litig.*,
  Case No. 1:16-cv-08637, ECF Nos. 144, 248 (N.D. Ill.) ................................................. 6, 7, 10

*In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*,
  795 F.3d 380 (3d Cir. 2015) ........................................................................................................ 7

*Dickens v. GC Servs. Ltd. P'ship*,
  706 F. App'x 529 (11th Cir. 2017) ............................................................................................. 7

*Gunnells v. Healthplan Servs., Inc.*
  348 F.3d 417, 430 (4th Cir. 2003) ............................................................................................... 7

*In re Insurance Brokerage Antitrust Litigation,*
  2007 WL 2589950 (D.N.J. Sept. 4, 2007) .................................................................................. 8

*In re Packaged Seafood Products Antitrust Litig.*,
  Case No. 3:15-md-02670-JLS-MDD, ECF No. 119 (S.D. Cal.) .................................... 6, 7, 10

*In re Pork Antitrust Litig.*,
  Case No. 18-1776-JRT-HB, ECF No. 150 (D. Minn.) ................................................... 6, 7, 10

*Prime Steakhouse v. Mowi ASA et al.*,
  Case No. 2:19-cv-00207-JAW (D. Me. May, 2019) .................................................................. 2

*Valley Drug Co. v. Geneva Pharm., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) .................................................................................................. 6

**Other Authorities**

*Manual for Complex Litigation* § 10.224 (4th ed. 2004) .................................................................. 9

**Rules**

Federal Rules of Civil Procedure
  Rule 23(g) .................................................................................................................................... 1

I.     INTRODUCTION

Plaintiff Wood Mountain Fish LLC's ("Wood Mountain Fish") Opposition to the Renewed Motion to Modify Rule 23(g) Order and Appoint Cuneo Gilbert & LaDuca, LLP, Cotchett, Pitre & McCarthy, LLP, and Gustafson Gluek PLLC (together, "Moving Firms") Interim Lead Counsel ("Opposition") seeks to obfuscate the issues raised by the Moving Firms, but when read closely simply reaffirms that separate counsel for the commercial food preparer class is required.

Plaintiff Wood Mountain Fish posits that the Moving Firms and Plaintiffs Prime Steakhouse and Portland-Hunt Alpine Club (the "Commercial and Institutional Indirect Purchaser Plaintiffs" (CIIPPs) or "Commercial Food Preparer Plaintiffs" (CFPPs)), which are primarily restaurants, seek to represent a class that also includes redistributors, like Wood Mountain Fish. *See* Opp. at 10. Not so. For the elimination of doubt, the Moving Firms' clients are restaurants or other entities that purchase raw salmon indirectly and prepare salmon for consumption and not for resale in the same form in which it is purchased, and the Moving Firms and their Class Representatives do not intend to pursue claims at the redistributor level of the supply chain. Furthermore, the Moving Firms do not intend to pursue claims relating to sales/purchases between class members. The persons that CFPPs sell to (primarily customers of restaurants) are not seeking any recovery in this case and have not filed their own case. If the Court finds that clarification is appropriate, the CFPPs will amend their complaints to clarify the scope of the class definition.

The arguments advanced by redistributor Wood Mountain Fish provide examples of tensions either not actually found in the CFPP class or that are ***merely conjectural*** in nature. By contrast, Wood Mountain Fish seeks to represent a class that includes both upstream redistributors and the downstream restaurants and commercial food preparer entities that purchase from them. *See* Opp. at 14. Not only is this a dollar-for-dollar conflict, since the redistributors either paid the overcharge themselves or passed it on to their restaurant/commercial food preparer purchaser

1

customers, but this conflict is ***inevitable*** because Plaintiff Wood Mountain Fish has indicated a commitment to representing a class encompassing both. As a result, a redistributor leading a class covering both redistributor purchases and restaurants and other commercial food preparer purchases is a quintessential fox guarding the henhouse situation and necessitates separate counsel.

## II.     ARGUMENT

### A.     The Commercial Food Preparer Plaintiffs' Class Definitions are Easily Distinguished from that Pled by Wood Mountain Fish

Based on superficial similarities between class definitions, Wood Mountain Fish argues the Moving Firms' conflict argument is pretextual. However, Wood Mountain Fish conflates their class definition with that of the CFPPs. Contrary to the assertion that the classes are "largely indistinguishable," Opp. at 7, an objective reading reveals critical differences. The CFPPs seek to represent "*commercial and institutional purchasers*" in the United States, its territories, and the Indirect Purchaser States "that purchased farm-raised salmon and/or products derived therefrom . . . other than directly from Defendants" or a related entity from July 1, 2015 to the present. *See* Compl., *Prime Steakhouse v. Mowi ASA et al.*, Case No. 2:19-cv-00207-JAW (D. Me. May, 2019), ECF No. 1 ¶¶ 77-78; *Portland Hunt-Alpine Club, LLC v. Mowi ASA et al.*, Case No. 2:19-cv-00446-JAW (D. Me. Oct. 1, 2019), ECF No. 1 ¶¶ 159-60 (emphasis added). In contrast, Wood Mountain Fish purports to represent a much broader class of "***[a]ll persons and entities*** who resided in" particular U.S. states and territories and "who indirectly purchased Farm-raised salmon and/or products derived therefrom produced by any Defendant" or a related entity. *See* Compl., *Wood Mountain Fish, LLC v. Mowi ASA et al.*, Case No. 1:19-cv-222128-RS, ECF No. 1 ¶ 75(a)-(ff) (emphasis added).

As the plain language reveals, these definitions differ vastly in scope and consequence. While the class definitions pled by the CFPPs are narrowly focused on purchasers operating in a

2

commercial or institutional capacity that prepare meals, such as restaurants, the indirect purchaser class in Wood Mountain Fish's complaint is pled without qualification or limitation. Therefore, it not only encompasses a broader group of indirect purchasers than that pled by the CFPPs, but it is as broad as it could possibly be, including multiple levels of the indirect purchaser chains. Additionally, a common-sense interpretation of these definitions indicates the CIIPP class only includes one level of the indirect purchaser chain through entities that use salmon in a product sold to a consumer, while Wood Mountain Fish's includes every conceivable indirect purchaser.

Notwithstanding this obvious difference in scope, Wood Mountain Fish argues that the absence of a specific definition for the term "commercial and institutional purchasers" negates that phrase's explanatory value, such that there is "no functional difference . . . between the types of indirect purchasers the plaintiffs in the Maine cases seek to represent and those Wood Mountain Fish represent." Opp. at 8. This is false. Wood Mountain Fish's class definition, on its face, includes redistributors and end-purchasers, whereas that pled by the CFPPs do not, thus avoiding representing multiple levels of the distribution chain that purchase indirectly. In fact, Wood Mountain Fish itself recognizes this, stating they "have clarified [the exclusion of end-purchasers] for defendants throughout the litigation and also for Commercial Food Preparer Plaintiff counsel during the meet and confer process." Opp. at 8, n.3. In seeking to retroactively exclude end-purchasers (though they do not address the redistributor issue) from their class definition, Wood Mountain Fish is effectively admitting that end-purchasers are within in the definition as currently pled. Thus, read objectively, these definitions are not so easily conflated.

Moreover, Wood Mountain Fish asserts that the Moving Firms "have not filed a complaint specifically seeking to represent commercial food preparers." Opp. at 7. In so arguing, Wood Mountain Fish goes on to assert a narrower class definition of its own, while seeking to deny the

3

CFPPs from setting forth a natural reading of their class definitions. However, this is merely an attempt to create a false equivalency between Wood Mountain Fish's class definition and that of the CFPPs, as either both groups are free to further refine their class definitions, or neither are.

Ultimately, however, one need not look beyond the proposed class representatives themselves to determine the nature of the claims pled and the actual class each group seeks to represent. Wood Mountain Fish does not contest that their class representative redistributes salmon to restaurants. Nor do they contest that restaurants, such as the CFPPs, indirectly purchase salmon from distributors like Wood Mountain Fish who, in many circumstances, themselves purchase salmon indirectly. Given these two sets of purchasers, the intraclass conflict could not be clearer – one (Wood Mountain Fish) indirectly purchase salmon and simply resells it to other indirect purchasers, such as restaurants. The other, commercial food preparers like the CFPPs, purchase salmon indirectly through distributors, but do not simply turn around and sell that raw salmon in that exact same form, like Wood Mountain Fish. Given this, the same counsel cannot adequately represent both groups.

### B. The Commercial Food Preparer Plaintiffs Have Clearly Defined Their Class Which Avoids Intraclass Conflict

Wood Mountain Fish further asserts that the Moving Firms have ambiguously recharacterized the CFPPs' class definitions such that "it is difficult to know from reading their brief who is in the segment they wish to carve out." Opp. at 10. But to be clear: the CFPPs seek to represent a class of commercial food preparers, such as restaurants, hotels, and other food service establishments that indirectly purchase salmon and prepare meals for end-customers of those meals. Br. at 3. However, it is not Wood Mountain Fish's idiosyncratic interpretation of the CFPPs' complaint that is at issue here, but rather whether that class warrants separate counsel.

4

In any event, the arguments throughout Wood Mountain Fish's opposition belie the assertion that it is not clear who the CFPPs seek to represent. In fact, Wood Mountain Fish indicates in numerous places that it understands the Moving Firms' opening brief to seek representation of commercial food preparers. Opp. at 7, 10-11. While Wood Mountain Fish does identify a single sentence listing a variety of entities from a section in the Moving Firms' opening brief titled "Background on the Salmon Distribution Chain," Opp. at 11, this section is merely part of a general discussion of the distribution system, not a recitation of the class the Commercial Food Preparers seek to represent. As such, it is insufficient to suggest the CFPPs have ambiguously recharacterized their class definition.

Moreover, Wood Mountain Fish claims that CFPPs' class definition possesses the same conflict as that present in Wood Mountain Fish's own class definition, because there is the "same buying and selling among class members . . . ." Opp. at 11. However, Wood Mountain Fish confuses the issue. For a purchase to be within the CFPPs' class definition, the purchaser must take salmon and use it as a component in a finished meal. Accordingly, while a grocery store "might sell items like smoked salmon, salmon in salad in bulk or in sandwiches, or grab and go salmon sushi," Opp. at 11, the same grocery store might also sell a tray pack of salmon to a restaurant. While the former would be within the CFPPs' class definition, the later would not. This is because the class **does not** include purchases of salmon that are subsequently resold in the exact same form. Such compartmentalization is no different than what occurs when an entity has both direct and indirect purchases, as is often the case for some purchasers, and thus simultaneously have purchases that qualify for inclusion in both the direct and indirect purchaser class. Therefore,

this does not present a conflict within the CFPPs' class definition, as entities, like grocery stores, are simply members of different classes for different sales.[1]

### C. The Wood Mountain Fish Intraclass Conflict is Neither Speculative Nor Easily Resolved and Thus Should be Addressed Now

#### 1. The Relationship Between Restaurant Distributors and Restaurants Themselves Presents an Immediate and Obvious Intraclass Conflict

While Wood Mountain Fish characterizes its intraclass conflict as "minor," a "remote possibility," and "speculative," such that separate representation is not required, the authority cited for this proposition in fact argues against it, as does pure logic. Opp. at 12-13. Additionally, Wood Mountain Fish can only reach its flawed position by cherry-picking certain quotations from the cited cases. For example, while the Eleventh Circuit has said a conflict "must be a fundamental one going to the specific issues in controversy," Opp. at 12, it also explained that one "exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (quotation marks omitted). In the same opinion, it also described such a situation as one where "the named representatives cannot vigorously prosecute the interests of the class through qualified counsel *because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members*." *Id.* (emphasis added) (quotation marks omitted). Similarly, while "the *requirement* to put separate counsel in place arises when a conflict ceases to be theoretical and becomes real and fundamental," Opp. at 13, "it *may be wise* to appoint

---

[1] Furthermore, Wood Mountain Fish's grocery store hypothetical is clearly flawed, as courts confronted with this situation have in fact chosen to appoint separate counsel for such classes. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, Case No. 1:16-cv-08637, ECF Nos. 144, 248 (N.D. Ill.) ("*Broilers*"); *In re Packaged Seafood Products Antitrust Litig.*, Case No. 3:15-md-02670-JLS-MDD, ECF No. 119 (S.D. Cal.) ("*Packaged Seafood*"); *In re Pork Antitrust Litig.*, Case No. 18-1776-JRT-HB, ECF No. 150 (D. Minn.) ("*Pork*").

separate counsel even before a serious conflict fully emerges." *In re Cmty. Bank of N. Virginia Mortg. Lending Practices Litig.*, 795 F.3d 380, 393–94 (3d Cir. 2015) (emphasis added).

The only possible way that a conflict in this case will not arise is if Wood Mountain Fish does not recover a single penny in settlements or a judgment because every dollar Wood Mountain Fish (a restaurant distributor) recovers is the same dollar that the CFPPs will argue was passed on to them when they purchased salmon from Wood Mountain Fish and other similarly situated parties in the distribution chain.

Furthermore, much of the authority cited by Wood Mountain Fish involved conflicts much less serious and direct than that here. In *Dickens v. GC Servs. Ltd. P'ship*, 706 F. App'x 529, 536 (11th Cir. 2017), the Eleventh Circuit vacated the district court's denial of class certification in which it ruled the plaintiff was an inadequate class representative because he sought only statutory damages while there was a "remote possibility that some class members may have suffered actual damages . . . ." 706 F. App'x 529, 536 (11th Cir. 2017). It was this that contradicted the "admonition that minor conflicts alone are insufficient to deem a representative inadequate." *Id.*

Similarly, in *Gunnells v. Healthplan Servs., Inc.*, the Fourth Circuit rejected the argument that insurmountable class conflicts existed, because no case law supported the contention there were conflicting viable claims in that situation, no employee had in fact filed such a claim, and such claims were barred by the relevant statute of limitations. 348 F.3d 417, 430 (4th Cir. 2003). That is hardly the situation here, where a separate class of commercial food preparers *have* filed claims and courts have routinely held that such purchasers require separate representation. *See Broilers*, ECF Nos. 144, 248; *Packaged Seafood*, ECF No. 119; *Pork*, ECF No. 150.

And, in *In re Insurance Brokerage Antitrust Litigation*, the District Court for the District of New Jersey certified a class for settlement purposes and found the named plaintiffs' interests

7

were not antagonistic to those of absent class members because the defendants' "alleged conduct, and the impact of that conduct on both the named Plaintiffs and the absent class members, animates in an identical fashion the claims of both groups." No. CIV.A. 04-5184 (GEB), 2007 WL 2589950, at *11 (D.N.J. Sept. 4, 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009).

In contrast to those cases, the conflict here is immediately identifiable. The CFPPs are restaurants, while Wood Mountain Fish is a distributor *that sells to restaurants*. Wood Mountain Fish therefore belongs to a segment of the distribution chain that re-sells the exact same salmon it purchased to another segment, while CFPPs merely purchaser it and use it as a component in meals to consumers. This buyer-re-seller relationship will impact nearly every facet of the litigation.

This relationship also underscores the immediacy of this conflict and the extent to which the named representatives have antagonistic interests. This buyer-re-seller connection necessarily means that these two groups will diverge on the issue of whether, and how much of, the overcharge was passed on to commercial food preparers, like restaurants. In an antitrust suit, this goes to the key interests in controversy, as the purpose of the litigation is to determine whether the defendants allegedly illegal conduct caused economic harm, at whom it was targeted, how those targets were affected, and how and to what degree the overcharge was passed-through the distribution system. Such a conflict demands undivided advocacy in the form of separate counsel.

### 2. Wood Mountain's Proposed Alternatives Do Not Resolve the Conflict

As thoroughly explained, the conflict identified by the Moving Firms is not remote or speculative, but instead one supported by the kind of "hard evidence" Wood Mountain Fish suggests is required. Opp. at 16. Even if such hard evidence did not exist, however, the alternatives offered by Wood Mountain Fish are insufficient to resolve *this* conflict. *See* Opp. at 16-17.

First, appointing "counsel for a unitary class of purchasers until settlement, and then

appoint[ing] allocation counsel or otherwise closely scrutinize the process through which damages are divided among different types of class members," Opp. at 16, fails to resolve the conflict as described by the Moving Firms. The squarely divergent interests of restaurants and redistributors (especially ones that sell to restaurants) as it relates to pass-through will necessarily impact *all* aspects of the litigation prior to settlement or allocation of damages. Indeed, as pointed out in the Moving Firms' opening brief, in order to show pass-through to restaurants, Wood Mountain Fish would be forced *to subpoena purchase and sales data from their own class of restaurant redistributors*. Br. at 9, n.3. Similarly, the CFPPs would be incentivized to pursue this issue to the greatest extent possible during discovery, while Wood Mountain Fish would seek to actively avoid it. Moreover, any expert economist would be assigned the impossible task of formulating a regression analysis that demonstrates how both restaurants and redistributors were injured, without detracting from the recovery of either.

Second, a steering committee is insufficient to adequately resolve the conflict, as this not a situation where "diverse interests exist among the parties." *See* Opp. at 17; *Manual for Complex Litigation* § 10.224 (4th ed. 2004). A "steering committee" would pose the same conflict since it would presumably be under the control, direction, and authority of Wood Mountain Fish's counsel, whose client has damages claims that are antagonistic to restaurants. The interests of restaurants cannot ultimately be answerable to counsel for redistributors, which is precisely what Wood Mountain Fish proposes. If, however, it proposes a separate steering committee *not* answerable to the current class counsel, it is hard to see how that is substantively different than the Moving Firms' proposal.

   **D.**  **Leadership Orders and Lessons Learned from Prior Food Industry Antitrust Actions Support Separate Representation for the CIIPP Class**

Wood Mountain Fish attempts to make much of the fact that the Moving Firms have in prior matters argued that a single indirect purchaser class would be appropriate. *See* Opp. at 8-10, 13, 15. However, the leadership orders in those cases, and the Moving Firms' subsequent experience in those matters, demonstrate the better course of action is separate representation for CFPPs from the outset. *See Broilers*, ECF Nos. 144, 248; *Packaged Seafood*, ECF No. 119; *Pork*, ECF No. 150. In each of the aforementioned food industry antitrust actions, the court has appointed separate representation for the CIIPP class. In *Broilers*, whether separate representation was necessary was a contested issue, with the court determining separate representation was indeed required. *See Broilers*, ECF No. 248. Wood Mountain does not dispute this, but rather attempts to cloud the issue by arguing that because the Moving Firms have previously suggested a single indirect purchaser class was appropriate in other cases, they have untoward motivations for arguing for separate representation here. This is a red-herring. History (in the form of every modern food industry antitrust action) and the Moving Firms' experience (in litigating those food industry cases) have taught the Moving Firms that separate representation is not only advisable, but practically necessary from the outset. *See supra* at §II.C.2. Moreover, the Moving Firms did not concoct this position after being transferred to this Court in an attempt to "further carve[] up" the class in a manner that allows the Moving Firms "to be named to an unnecessary layer of leadership." Opp. at 10. As Wood Mountain Fish is well-aware, the Moving Firms filed an indirect purchaser action *before* Wood Mountain filed its complaint and, from this initial complaint to the present, have consistently defined their class as the much narrower CIIPP class.

### III.  CONCLUSION

For the foregoing reasons, the Court should modify its previous leadership order and appoint the Moving Firms interim class counsel for the CIIPPs.

DATED: July 2, 2020                                    Respectfully Submitted,

/s/ *Samuel J. Dubbin, P.A.*
Samuel J. Dubbin, P.A (Florida Bar No. 328189)
**Dubbin & Kravetz, LLP**
1200 Anastasia Avenue Suite 300
Coral Gables, Florida 33134
Telephone: (305) 357-9004
sdubbin@dubbinkravetz.com

/s/ *Adam J. Zapala*
Adam J. Zapala (*pro hac vice*)
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com

/s/ *Jonathan W. Cuneo*
Jonathan Cuneo (*pro hac vice*)
Blaine Finley (*pro hac vice*)
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20016
Telephone: (202) 789-3960
Facsimile: (202) 789-1813
jonc@cuneolaw.com
bfinley@cuneolaw.com

/s/ *Daniel C. Hedlund*
Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza, Suite 2600
120 South Sixth Street
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com

*Counsel for Plaintiffs Portland Hunt-Alpine Club, LLC and Prime Steakhouse*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of July 2020, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

/s/ *Samuel J. Dubbin, P.A.*
Samuel J. Dubbin, P.A (Florida Bar No. 328189)
**Dubbin & Kravetz, LLP**
1200 Anastasia Avenue Suite 300
Coral Gables, Florida 33134
Telephone: (305) 357-9004
sdubbin@dubbinkravetz.com