**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| Wood Mountain Fish LLC; Portland Hunt-Alpine Club, LLC; Prime Steakhouse; Mamme Inc.; Rocca Kurt's Brothers Inc.; Stephen T. Deangelis, Inc.; Amy Mehaffey; Nautical Okoboji LLC; People's Food Cooperative, Inc.; Classic City Catering, Inc.; and Bama Seafood, Inc., individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>Mowi ASA (f/k/a Marine Harvest ASA); Mowi USA, LLC; Mowi Canada West, Inc.; Mowi Ducktrap LLC; Grieg Seafood ASA; Grieg Seafood BC Ltd.; Sjór AS (f/k/a Ocean Quality AS); Grieg Seafood Sales North America, Inc. (f/k/a Ocean Quality North America, Inc.); Grieg Seafood Sales USA, Inc. (f/k/a Ocean Quality USA Inc.); Grieg Seafood Sales Premium Brands, Inc. (f/k/a Ocean Quality Premium Brands, Inc.); SalMar ASA; Lerøy Seafood AS; Lerøy Seafood USA Inc.; Cermaq Group AS; Cermaq US LLC; Cermaq Canada Ltd.; and Cermaq Norway AS,<br><br>        Defendants. | Civil No. 19-22128-CIV-SMITH/LOUIS |

**DEFENDANTS' JOINT MOTION TO DISMISS INDIRECT PURCHASER CLASS ACTION COMPLAINTS IN ALL CASES PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6) AND INCORPORATED MEMORANDUM OF LAW**

### TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................2

ARGUMENT ..........................................................................................................3

I.    THE IPPS' CLAIMS UNDER THE LAWS OF 23 STATES AND
TERRITORIES WITHOUT NAMED PLAINTIFFS MUST BE DISMISSED
FOR LACK OF ARTICLE III STANDING ................................................3

II.    THE IPPS' ALLEGED INJURIES AND DAMAGES ARE TOO INDIRECT
AND REMOTE ...........................................................................................4

    A.    The IPPs' State Claims Fail to Plausibly Allege the Necessary Elements of
Causation and Antitrust Standing ..........................................................4

        1.    The IPPs Do Not Plausibly Allege Proximate Causation ............................5

        2.    The IPPs Do Not Plausibly Allege That They Are Efficient
Enforcers of the Antitrust Laws Under the *AGC* Factors In Many
States ........................................................................................................6

    B.    All IPPs Lack Article III Standing Because They Have Not Plausibly
Alleged Injury-In-Fact, Causation, or Damages ...................................10

        1.    The IPPs Lack Article III Standing Because They Have Not
Alleged Any Injury-in-Fact That is Concrete, Particularized, and
Not Hypothetical ...................................................................................10

        2.    The IPPs Lack Article III Standing Because They Have Not
Alleged That Their Purported Injury Is "Fairly Traceable" to
Defendants' Conduct ............................................................................11

    C.    The IPPs' Claims Are Barred in Massachusetts, Montana, and Partially
Barred in Rhode Island Under the *Illinois Brick* Doctrine ...................12

III.    MANY OF THE IPPS' CLAIMS SHOULD BE DISMISSED FOR FAILURE
TO ALLEGE STATUTORY STANDING REQUIREMENTS OR FOR OTHER
STATE-SPECIFIC REASONS .....................................................................13

    A.    Resellers Are Barred From Asserting Consumer Protection Claims in Four
States .....................................................................................................14

    B.    Hawaii Only Permits Claims Brought by Consumers or Declined by the
Attorney General ...................................................................................15

C.    Only the Elderly and Disabled Have Standing Under Nevada's Deceptive
      Trade Practices Act .................................................................................................15

D.    The IPPs Cannot Pursue a Claim For Damages Under California's Unfair
      Competition Law .....................................................................................................16

E.    Alleged Price Fixing Does Not Give Rise to a Consumer Protection Claim
      Under Illinois Law ...................................................................................................16

F.    Only Courts In Guam Have Jurisdiction Over The Claims Based On Guam
      Law ..........................................................................................................................17

CONCLUSION .................................................................................................................17

EXHIBIT I .........................................................................................................................22

# **TABLE OF AUTHORITIES**

**Page(s)**

## **Cases**

*In re Actimmune Mktg. Litig.*,
No. C 08-02376 MHP, 2010 WL 3463491 (N.D. Cal. Sept. 1, 2010) .................................... 14

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
No. 09 MDL 2007–GW(PJWx), 2009 WL 9502003 (C.D. Cal. July 6, 2009) ................ 23, 24

*In re Aggrenox Antitrust Litig.*,
3:14-MD-2516 (SRU), 2016 WL 4204478 (D. Conn. Aug. 9, 2016) ................................... 13

*In re Aluminum Warehousing Antitrust Litig.*,
No. 13-MD-2481 KBF, 2014 WL 4277510 (S.D.N.Y. Aug. 29, 2014) ............................. 9, 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 10

*Associated General Contractors of California, Inc. v. California State
Council of Carpenters ("AGC")*,
459 U.S. 519 (1983) ..................................................................................................... passim

*Austin v. Blue Cross & Blue Shield of Alabama*,
903 F.2d 1385 (11th Cir. 1990) ......................................................................................... 12

*Barron v. Snyder's-Lance, Inc.*,
No. 13–62496–CIV–LENARD/GOODMAN,
2015 WL 11182066 (S.D. Fla. Mar. 20, 2015) .................................................................... 4

*Beckler v. Visa U.S.A., LLC*,
No. CIV. 09-04-C-00030, 2004 WL 2475100 (Dist. N.D. 2004) ........................................ 23

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................. 8

*Byre v. City of Chamberlain*,
362 N.W.2d 69 (S.D. 1985) ................................................................................................ 24

*California v. ARC America Corp.*,
490 U.S. 93 (1989) .............................................................................................................. 12

*Cal-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (Cal. 1999) ................................................................................................ 16

*Campos v. Ticketmaster Corp.*,
140 F.3d 1166 (8th Cir. 1998) ............................................................................................. 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C 07-5944 SC, 2014 WL 1088256 (N.D. Cal. Mar. 13, 2014) ...................................... 12

*In re Checking Account Overdraft Litig.*,
694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................................ 4

*In re Chocolate Confectionary Antitrust Litig.*,
  749 F. Supp. 2d 224 (M.D. Pa. 2010) .................................................................................... 16

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
  436 Mass. 53 (2002) ................................................................................................................ 12

*Ciardi v. F. Hoffmann-La Roche, Ltd.*,
  762 N.E.2d 303, 311 (Mass. 2002) ......................................................................................... 14

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ......................................................................................... 5, 10

*Crosby v. Hosp. Auth. of Valdosta & Lowndes Cty.*,
  93 F.3d 1515 (11th Cir. 1996) ................................................................................................. 11

*Crouch v. Crompton Corp.*,
  No. 02 CVS 4375, 2004 WL 2414027 (N.C. Super. Ct. Oct. 26, 2004) ................................. 23

*Daimler Chrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) ................................................................................................................. 11

*Dang v. San Francisco Forty Niners*,
  964 F. Supp. 2d 1097 (N.D. Cal. 2013) .................................................................................. 22

*Debernardis v. IQ Formulations, LLC*,
  942 F.3d 1076 (11th Cir. 2019) ............................................................................................... 11

*Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*,
  797 F.3d 1248 (11th Cir. 2015) ........................................................................................ 7, 8, 10

*Duvall v. Silvers, Asher, Sher & McLaren*, *M.D.'s*,
  998 S.W.2d 821 (Mo. Ct. App. 1999) ...................................................................................... 23

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
  516 F. Supp. 2d 1072 (N.D. Cal. 2007) ................................................................. 9, 22, 23, 24

*ERI Max Entm't v. Streisand*,
  690 A.2d 1351 (R.I. 1997) ....................................................................................................... 24

*Feldman v. BRP US, Inc.*,
  No. 17-CIV-61150, 2018 WL 8300534 (S.D. Fla. Mar. 28, 2018) ........................................... 3

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) .................................................................................. 15

*In re Florida Cement & Concrete Antitrust Litig.*,
  746 F. Supp. 2d 1291 (S.D. Fla. 2010) ................................................................................. 5, 6

*Ford v. Strange*,
  580 F. App'x 701 (11th Cir. 2014) .......................................................................................... 11

*Gaebler v. N.M. Potash Corp.*,
  676 N.E.2d 228 (Ill. App. Ct. 1996) ....................................................................................... 16

*Gatt Commc'ns Inc. v. PMC Assocs., LLC*,
  711 F.3d 68 (2d Cir. 2013) ...................................................................................................... 23

*Ginsburg v. InBev NV/SA*,
   623 F.3d 1229 (8th Cir. 2010) ........................................................................ 8

*Ho v. Visa U.S.A. Inc.*,
   2004 WL 1118534 (N.Y. Sup. Ct. Apr. 21, 2004),
   *aff'd*, 16 A.D.3d 256 (1st Dep't 2005) ............................................................ 23

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ............................................................................... 12, 13

*In re Interior Molded Doors Antitrust Litig.*,
   No. 3:18-CV-00718-JAG, 2019 WL 4478734 (E.D. Va. Sept. 18, 2019) .............................. 23

*Jones v. Micron Technology, Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019) ............................................................. 12

*Kanne v. Visa U.S.A. Inc.*,
   723 N.W.2d 293 (Neb. 2006) ........................................................................ 7

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   383 F. Supp. 3d 187 (S.D.N.Y. 2019) ........................................................ passim

*Knowles v. Visa U.S.A., Inc.*,
   No. CIV.A. CV-03-707, 2004 WL 2475284 (Me. Super. Ct. 2004) ................................... 22

*Laughlin v. Evanston Hosp.*,
   550 N.E.2d 986 (Ill. 1990) ........................................................................ 16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................. 5, 6

*In re Loestrin 24 FE Antitrust Litig.*,
   410 F. Supp. 3d 352 (D.R.I. 2019) ............................................................. 13, 14

*Lorix v. Crompton Corp.*,
   736 N.W.2d 619 (Minn. 2007) ....................................................................... 5

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................... 10

*Luscher v. Bayer A G*,
   No. CV 2004-014835, 2005 WL 6959406 (Ariz. Super. Ct. Sept. 14, 2006) ....................... 22

*McClure v. Oasis Outsourcing II, Inc.*,
   674 F. App'x 873 (11th Cir. 2016) ................................................................. 8

*Minuteman v. Microsoft Corp.*,
   147 N.H. 634, 795 A.2d 833 (2002) ............................................................... 23

*Muransky v. Godiva Chocolatier, Inc.*,
   979 F.3d 917 (11th Cir. 2020) .................................................................... 10

*Nass-Romero v. Visa U.S.A. Inc.*,
   279 P.3d 772 (N.M. Ct. App. 2012) ............................................................... 23

*New England Surfaces v. E.I. Du Pont De Nemours and Co.*,
    460 F. Supp. 2d 153 (D. Me. 2006),
    *aff'd*, 546 F.3d 1 (1st Cir. 2008), 546 F.3d 11 (1st Cir. 2008)................................................ 15

*In re Niaspan Antitrust Litig.*,
    42 F. Supp. 3d 735 (E.D. Pa. 2014) ...................................................................................... 13

*O'Regan v. Arbitration Forums, Inc.*,
    121 F.3d 1060 (7th Cir. 1997) ............................................................................................... 22

*Oliver v. Am. Express Co.*,
    No. 19CV566NGGSMG, 2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020).......................... 9, 23

*Oliver v. Am. Express Co.*,
    No. 19CV00566NGGSJB, 2021 WL 386749 (E.D.N.Y. Feb. 1, 2021) ........................... 23, 24

*Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*,
    17 F. Supp. 2d 1170 (D. Or. 1998), *aff'd*, 185 F.3d 957 (9th Cir. 1999)................................ 24

*Orr v. Beamon*,
    77 F. Supp. 2d 1208 (D. Kan. 1999) .................................................................................... 22

*Orr v. BHR, Inc.*,
    4 F. App'x 647 (10th Cir. 2001) ........................................................................................... 22

*Owens Corning v. R.J. Reynolds Tobacco Co.*,
    868 So. 2d 331 (Miss. 2004) ................................................................................................. 23

*Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp., Inc.*,
    No. 08-102, 2009 WL 10673436 (M.D. Ga. Mar. 31, 2009)..................................................... 8

*Prado-Steiman ex rel. Prado v. Bush*,
    221 F.3d 1266 (11th Cir. 2000) ............................................................................................... 3

*In re Refrigerant Compressors Antitrust Litig.*,
    No. 2:09-MD-02042, 2013 WL 1431756 (E.D. Mich. Apr. 9, 2013).................................... 22

*Sanchez-Knutson v. Ford Motor Co.*,
    No. 14-61344, 2015 WL 11197772 (S.D. Fla. July 22, 2015).................................................. 4

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*,
    No. 15 CIV. 6549 (CM), 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018)................................ 15

*Smith v. Video Lottery Consultants, Inc.*,
    858 P.2d 11 (Mont. 1993) ..................................................................................................... 13

*Snyder v. Green Roads of Fla. LLC*,
    430 F. Supp. 3d 1297 (S.D. Fla. 2020) ................................................................................ 11

*Southard v. Visa U.S.A. Inc.*,
    734 N.W.2d 192 (Iowa 2007) .................................................................................................. 7

*Stark v. Visa U.S.A. Inc.*,
    No. 03–055030–CZ, 2004 WL 1879003 (Mich. Cir. Ct. July 23, 2004)................................ 22

*Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.*,
    711 F.3d 1264 (11th Cir. 2013) ............................................................................................... 7

*Taggart v. Colonial Hotel, Inc.,*
    2007 WL 9702259 (S.D. Fla. Oct. 29, 2007) ................................................ 11

*In re Takata Airbag Prod. Liab. Litig.,*
    No. 14-24009-CV, 2016 WL 1266609 (S.D. Fla. Mar. 11, 2016) ..................... 3

*In re Takata Airbag Prods. Liab. Litig.,*
    464 F. Supp. 3d 1291 (S.D. Fla. 2020) .................................................... 14, 16

*In re Terazosin Hydrochloride Antitrust Litig.,*
    160 F. Supp. 2d 1365 (S.D. Fla. 2001) ........................................................ 4

*In re TFT-LCD (Flat Panel) Antitrust Litig.,*
    599 F. Supp. 2d 1179 (N.D. Cal. 2009) ...................................................... 13

*Trichell v. Midland Credit Mgmt., Inc.,*
    964 F.3d 990 (11th Cir. 2020) ............................................................ 10, 11

*Tsao v. Captiva MVP Restaurant Partners, LLC,*
    986 F.3d 1332 (11th Cir. 2021) ................................................................ 10

*Universal Brands, Inc. v. Phillip Morris, Inc.,*
    546 F.2d 30 (5th Cir. 1977) ...................................................................... 5

*Vinci v. Waste Mgmt., Inc.,*
    36 Cal. App. 4th 1811 (Cal. Ct. App. 1995) .............................................. 22

*In re Wellbutrin XL Antitrust Litig.,*
    260 F.R.D. 143 (E.D. Pa. 2009) ............................................................... 16

*X.L.O. Concrete Corp. v. Rivergate Corp.,*
    634 N.E.2d 158 (N.Y. 1994) .................................................................... 23

*In re Zantac (Ranitidine) Prod. Liab. Litig.,*
    No. 20-MD-2924, 2020 WL 7866674 (S.D. Fla. Dec. 31, 2020) ...................... 3

**Rules / Statutes**

Cal. Bus. & Prof. Code § 16729 ................................................................. 16

Cal. Bus. & Prof. Code § 16750 ................................................................. 16

Cal. Bus. & Prof. Code § 17200 ................................................................. 16

Fed. R. Civ. P. 12(b)(1) ............................................................................ 4

Fed. R. Civ. P. 12(b)(6) ............................................................................ 4

Guam Code § 69.10. ............................................................................... 17

Guam Code § 69.32 ................................................................................ 17

Hawaii Rev. Stat. § 480 ........................................................................... 15

Hawaii Rev. Stat. § 480-2(a) ..................................................................... 15

Hawaii Rev. Stat. § 480-2(d) ..................................................................... 15

Hawaii Rev. Stat. § 480-2(e) ..................................................................... 15

Hawaii Rev. Stat. § 480-13.3 ................................................................................................ 15

Mont. Code § 30-14-102 ....................................................................................................... 14

Mont. Code § 30-14-133 ....................................................................................................... 14

Nev. Rev. Stat. §§ 598.0903-598.0977 ............................................................................ 15, 16

Nev. Rev. Stat. Ann. § 598A.050 ......................................................................................... 23

R.I. Gen. Law § 6-36-2(b) .................................................................................................... 24

## PRELIMINARY STATEMENT

In this action, the Indirect Purchaser Plaintiffs ("IPPs") purport to bring federal injunctive and state-law damages claims on behalf of classes of indirect purchasers of salmon and salmon products from 32 different states, the District of Columbia, and Guam.  The IPPs' allegations are substantively identical to the allegations put forward by the Direct Purchaser Plaintiffs ("DPPs") in a parallel lawsuit, *In re Farm-Raised Salmon and Salmon Products Antitrust Litigation*, that is also pending in this District.  Although the *In re Farm-Raised Salmon* Court denied Defendants' motion to dismiss in that case, that ruling does not shield the IPPs' claims from dismissal because the IPPs' claims suffer from unique and dispositive flaws.[1]

Unlike the DPPs, the IPPs did *not* purchase salmon or salmon products from Defendants. Rather, the IPPs say they purchased salmon or salmon products from *non*-Defendants.  The IPPs allege that Defendants conspired to raise prices for salmon and that these alleged overcharges were "passed on" to them when they purchased salmon from non-Defendant wholesalers.  These claims fail for at least five reasons:

*First*, the IPPs lack Article III standing to assert many of their claims because they lack a named plaintiff to represent the proposed class in many states.  *Infra* § I.

*Second*, the IPPs have not plausibly alleged that Defendants' conduct proximately caused their alleged injuries and more specifically lack antitrust standing because they have failed to plead that they are efficient enforcers of the antitrust laws (they are not).  *Infra* § II.A.

*Third*, the IPPs lack Article III standing as to their federal claim for injunctive relief and as to damages claims in *all* states and territories because they fail to plausibly allege an injury-in-fact that is fairly traceable to Defendants' alleged conduct.  *Infra* § I.B.

*Fourth*, the IPPs' claims as to many states are barred by the *Illinois Brick* doctrine, which precludes indirect purchasers like the IPPs from recovering under the antitrust laws.  *Infra* § II.C.

*Finally*, the IPPs' claims under several state consumer protection laws fail because the IPPs' allegations fail to satisfy the requirements of those statutes, including statutes that preclude resellers from asserting claims.  *Infra* § III.

---

[1]  Defendants maintain that the allegations in both actions fail to plausibly allege a conspiracy, and otherwise fail to state a claim and are barred by the statutes of limitations.  Defendants do not focus on these defenses here but reserve the right to raise these and related defenses at class certification, summary judgment, before and at trial, and on appeal if so required.

## B<small>ACKGROUND</small>

The IPPs filed this lawsuit in 2019 following news reports that the European Commission (and later, the U.S. Department of Justice) were investigating the Norwegian salmon industry. (*See* Second Amended Complaint, or "SAC," ¶¶ 86, 95.) The IPPs allege that Defendants conspired to fix the price of farmed Atlantic Salmon. (SAC ¶ 8.) The IPPs allege that Defendants used the NASDAQ Salmon Index (the "NQSalmon index"), created in 2013, to manipulate prices. (*See id*. ¶ 104.) "Index Contributors," many of whom are not Defendants, report weekly prices to the NQSalmon index. (*Id*. ¶ 105.) The IPPs also allege that NQSalmon is monitored by an Advisory Panel of Index Contributors, and certain Defendants were purportedly members of the Panel. (*Id*. ¶¶ 106-107.) As the IPPs recognize, two Defendants— Lerøy and Grieg—were never members of the Advisory Panel. (*See id.* ¶ 107.)

The IPPs also theorize that Defendants sold salmon to their subsidiaries in order to manipulate the market through the NQSalmon index. (*Id*. ¶ 103.) For example, the IPPs allege that Mowi subsidiary Morpol purchased salmon from Mowi and other Defendants and reported the transactions to the NQSalmon index in order to drive up prices. (*Id.*)

The IPPs also allege that, in the wake of Russia's 2014 ban on Norwegian salmon imports, salmon prices should have fallen, but prices remained the same and later increased because Defendants "artificially stabilized" and increased prices "[t]hrough cooperation and coordination." (*See id*. ¶¶ 1, 9, 138-139.) However, these buzzword allegations conflict with the IPPs' own allegations, as the chart cited by the IPPs as evidence of alleged cooperation among the Defendants shows a downward price trend from 2013 through the time of the Russian ban and into 2015. (*Id*. ¶ 139.)

The IPPs further allege that Defendants' communications and meetings with each other are evidence of alleged cooperation. (*See id*. ¶¶ 121-137, 150-153.) In addition to assertions of informal communications between Defendants, the IPPs allege that Defendants' involvement in trade associations "added to their opportunities to communicate." (*Id*. ¶ 155.) For example, the IPPs allege that Defendants "had private opportunities to reach cooperative agreements" (*Id*. ¶ 156) through Defendants' participation in the Global Salmon Initiative, which was created to "break down barriers to environmental improvement in the salmon aquaculture sector," (*Id*. ¶ 157), and the Norwegian Seafood Council, though the IPPs do not allege that any specific agreements to coordinate on salmon prices were actually made at trade association meetings.

The IPPs make little effort, however, to allege how they were harmed by the alleged conspiracy.  The IPPs say they are businesses such as restaurants and grocers that bought salmon, or at least unspecified products derived from salmon, but they offer no facts about those purchases, how they can be traced to Defendants, or why they believe they were overcharged.  In lockstep, each Plaintiff offers the same generic allegation of injury: "[d]uring the Class Period, Plaintiff purchased farm-raised salmon indirectly from one or more of the Defendants and has suffered monetary loss as a result of the antitrust violations alleged herein."  (SAC ¶¶ 18-28.)  As explained below, these barebones allegations cannot support the IPPs' claims.

<u>ARGUMENT</u>

I. <u>THE IPPS' CLAIMS UNDER THE LAWS OF 23 STATES AND TERRITORIES WITHOUT NAMED PLAINTIFFS MUST BE DISMISSED FOR LACK OF ARTICLE III STANDING</u>

The IPPs' claims on behalf of Plaintiffs from the following states and territories fail for lack of Article III standing because the IPPs lack a named class representative for them: Arizona, Arkansas, Guam, Hawaii, Illinois, Kansas, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, and West Virginia.  (Counts III-IV, VIII-XI, XIII, XVI, XVIII-XXV, and XXVIII-XXXVI.)

The Eleventh Circuit has held that "each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."  *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000).[2]  Thus, at least one named plaintiff must allege claims arising under the law of each state for which the IPPs assert a claim.  *See In re Zantac (Ranitidine) Prod. Liab. Litig.*, No. 20-MD-2924, 2020 WL 7866674, at *17 (S.D. Fla. Dec. 31, 2020) ("Cases within this District are clear" that "a named plaintiff lacks standing to assert claims on behalf of putative class members whose claims arise under other states' laws.").[3]  Courts in this District routinely dismiss state-law antitrust claims where none of the named plaintiffs reside or sustained an injury in that state.

---

[2]  Internal citations and quotations omitted throughout, except where noted.

[3]  *See also Feldman v. BRP US, Inc.*, No. 17-CIV-61150, 2018 WL 8300534, at *6 (S.D. Fla. Mar. 28, 2018) ("[N]amed plaintiffs in class actions have, time and again, been prohibited from asserting claims under a state law other than that which the plaintiff's own claim arises."); *In re: Takata Airbag Prod. Liab. Litig.*, No. 14-24009-CV, 2016 WL 1266609, at *4 (S.D. Fla. Mar. 11, 2016) ("A named plaintiff lacks standing to assert legal claims on behalf of a putative class pursuant to state law under which the named plaintiff's own claims do not arise.").

*See, e.g.*, *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371 (S.D. Fla. 2001) (dismissing antitrust claims from ten states because "the named plaintiffs cannot rely on unidentified persons within those states to state a claim for relief").[4]

This case should be no exception.[5]  Although the Complaint does not adequately allege Article III standing for *any* of Plaintiffs' claims, *see* § II.B *infra*, under Rules 12(b)(1) and (6), the Court should, at a minimum, dismiss the IPPs' claims for the 23 states and territories for which the IPPs lack a proposed class representative.  This failure warrants dismissal now—the issue cannot be deferred until class certification.  *See Sanchez-Knutson v. Ford Motor Co.*, No. 14-61344, 2015 WL 11197772, at *3 (S.D. Fla. July 22, 2015) ("As standing is a threshold issue, addressing the issue of standing at the motion to dismiss phase of the litigation, rather than waiting for the class certification phase, is not premature."); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1324 ("The issue of Article III standing must be resolved for each named plaintiff before … class certification.").

## II.  THE IPPs' ALLEGED INJURIES AND DAMAGES ARE TOO INDIRECT AND REMOTE

### A.  The IPPs' State Claims Fail to Plausibly Allege the Necessary Elements of Causation and Antitrust Standing

The IPPs fail to plausibly allege causation and that they have antitrust standing across all state claims for two separate reasons.  *First*, their threadbare injury allegations fall far short of plausibly satisfying the causation and damages elements of their state antitrust and other statutory claims.  *Second*, they do not plausibly allege that they are efficient enforcers, as required in many states.

---

[4]  *See also Barron v. Snyder's-Lance, Inc.*, 13–62496–CIV–LENARD/GOODMAN, 2015 WL 11182066, at *2 (S.D. Fla. Mar. 20, 2015) (dismissing claims from six states because "none of the remaining party Plaintiffs purchased Defendant's Products in those states"); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (dismissing "all state statutory claims where no named plaintiff resides in the state from which the claim is asserted").

[5]  In their SAC, the IPPs added five new Plaintiffs, including from four states for which the First Amended Complaint ("FAC") had no named Plaintiff.  (*Compare* FAC at ¶¶ 18-24 *with* SAC at ¶¶ 18-28).  The IPPs were thus plainly aware of this defect and, indeed, Defendants alerted the IPPs to it and asked whether the IPPs needed additional time to identify more named Plaintiffs. The IPPs declined to do so.  In light of this, the IPPs' claims for the 23 states and territories for which they lack a class representative should be dismissed with prejudice, as the IPPs have had more than two years to identify named Plaintiffs for those jurisdictions and have failed to do so.

1.    The IPPs Do Not Plausibly Allege Proximate Causation

In all jurisdictions, actual damages and proximate causation are required elements of an indirect purchaser's claim for damages.  *E.g.*, *In re Florida Cement & Concrete Antitrust Litig.*, 746 F. Supp. 2d 1291, 1321 (S.D. Fla. 2010) (noting that claims under the Florida Uniform Deceptive Trade Practices Act ("FUDTPA") require "actual damages proximately caused by the unlawful conduct").[6]  Courts "generally presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014).

Proximate cause is likewise required for claims under the Clayton Act.  *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 533 (1983) ("antitrust damages litigation [is] subject to constraints comparable to well-accepted common-law rules" including the "doctrine … [of] proximate cause"); *see also Universal Brands, Inc. v. Phillip Morris, Inc.*, 546 F.2d 30, 34 (5th Cir. 1977) ("[T]he pivotal issue for standing [to seek injunctive relief] under [Clayton Act] § 16 is proximate cause[.]").  Importantly, this proximate cause requirement is more stringent than what Article III requires.  *See Cordoba v. DIRECTV LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019).  "If a plaintiff's allegations, taken as true, are insufficient to establish proximate causation, then the complaint must be dismissed[.]"  *Lexmark*, 572 U.S. at 134 n.6.

The IPPs' complaint fails to provide any facts showing proximate causation or actual injury for any of their causes of action.  Judge Altonaga dismissed similarly deficient indirect purchaser claims in *Florida Cement & Concrete*.  The indirect purchasers in *Florida Cement & Concrete* asserted statutory claims under FDUTPA and alleged as follows:

> During the Class Period, [Plaintiff] Sterling purchased Cement and/or Concrete indirectly from one or more wholly owned subsidiaries of the Defendants and was damaged as a result of Defendants' unlawful conduct. Sterling indirectly purchased Concrete for construction projects in Bay, Okaloosa, and Walton Counties in Florida during the Class Period. As a result, Plaintiff paid supra-competitive and artificially inflated prices for Cement and Concrete and has been injured by reason of the illegal conduct alleged herein.

---

[6]  *See also Lorix v. Crompton Corp.*, 736 N.W.2d 619, 631 (Minn. 2007) (holding that "[s]tanding under Minnesota antitrust law must be defined by some prudential limits informed by foreseeability, proximate cause, remoteness, and relation of the injury to the purposes of the antitrust law; otherwise, almost any antitrust violation would provide almost any citizen with a cause of action").

746 F. Supp. 2d at 1321-22.  Similarly, the IPPs here allege:

> Plaintiff Wood Mountain Fish LLC ("Wood Mountain Fish") is a Massachusetts company that distributes fish and seafood. Wood Mountain Fish is headquartered at 11 Bluff Head Road, Sharon, MA 02067. During the Class Period, Plaintiff purchased farm-raised salmon indirectly from one or more of the Defendants and has suffered monetary loss as a result of the antitrust violations alleged herein.

(SAC ¶ 18.)  Although the *Florida Cement & Concrete* plaintiffs pleaded *more* specific allegations than the IPPs do here, the court concluded that "[t]hese allegations amount to unadorned, the defendant-unlawfully-harmed-me allegation[s], which contain no factual content that allows the court to draw the reasonable inference the Defendants' conspiracy caused any injury to these Plaintiffs[.]"  746 F. Supp. 2d at 1322.  As the court explained, "[t]he [complaint] does not allege sufficient information about what particular products were purchased from which Defendants, or whether these particular indirect purchasers absorbed the alleged price increases or passed them on to their customers.  Even before *Twombly*, allegations like the ones in the [complaint] would not have been sufficient."  *Id.* at 1322.

Just as in *Florida Cement*, what is missing here—across all of the IPPs' claims—is any "factual content that allows the court to draw the reasonable inference the Defendants' conspiracy caused any injury to these Plaintiffs[.]"  *Id.*  Without such content, the IPPs fall far short of stating a claim under the Clayton Act or any of the state laws they are seeking to enforce, and Counts I-XXXVII should be dismissed.

### 2.   The IPPs Do Not Plausibly Allege That They Are Efficient Enforcers of the Antitrust Laws Under the *AGC* Factors In Many States

The IPPs further fail to satisfy many states' more stringent antitrust standing requirements because they do not plausibly allege that they are efficient enforcers of the antitrust laws.  Specifically, Counts III, V, X, XI-XIV, XVI, XVIII-XIX, XXI-XXII, XXIV-XXX, and XXXII should be dismissed.

In *Associated General Contractors of California, Inc. v. California State Council of Carpenters* ("*AGC*"), 459 U.S. 519 (1983), the Supreme Court limited who may sue for alleged federal antitrust violations to "efficient enforcers"—those who have been directly and concretely injured by an alleged antitrust violation.  "[L]ower federal courts have been virtually unanimous in concluding that Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation."  *Id*. at 534.

In the Eleventh Circuit, courts evaluate six factors to determine whether an antitrust

plaintiff is proper under *AGC*:  "(1) whether the plaintiff has suffered a direct injury; (2) whether its injury is remote; (3) whether other plaintiffs are better suited to bring the suit; (4) whether the plaintiff's injuries are speculative; (5) whether the calculation of damages would be complex and run the risk of duplicative recoveries; and (6) whether the plaintiff could enforce the court's judgment."  *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1273 n.5 (11th Cir. 2015) (citing *Sunbeam Television Corp. v. Nielsen Media Rsch., Inc.*, 711 F.3d 1264, 1271 (11th Cir. 2013)).  In practice, this means that jurisdictions applying *AGC* have barred indirect purchaser claims on the grounds that—compared to direct purchaser claims—they are too indirect and remote.  *See, e.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 260-64 (S.D.N.Y. 2019) (dismissing state antitrust claims for all states in which *AGC* was found to be applicable).  Nineteen of the states for which the IPPs seek to assert claims on behalf of Plaintiffs apply *AGC*'s requirements.

The highest courts in Iowa and Nebraska have expressly adopted *AGC*.  *Southard v. Visa U.S.A. Inc.*, 734 N.W.2d 192, 198 (Iowa 2007) ("[W]e apply the *AGC* factors to determine whether the plaintiffs may recover under Iowa law."); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 299 (Neb. 2006) ("[A]ppellants lack standing under *Associated General Contractors*[.]").  In numerous other states, intermediate state appellate courts and federal courts applying state antitrust laws have likewise applied *AGC* and determined that indirect purchasers are improper plaintiffs.  These states, as illustrated further in Exhibit I, are Arizona, California, Illinois, Kansas, Maine, Michigan, Mississippi, Missouri, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, and South Dakota.

The IPPs fail the *AGC* test for all jurisdictions in which it applies.  *First*, Plaintiffs cannot satisfy the first, second, and fourth *AGC* factors because their injuries are—by definition— indirect, remote, and speculative.  To start, their "conclusory allegations fail to describe with sufficient factual detail the chain of distribution between [Defendants] and the IPPs, leaving numerous questions unanswered."  *In re Keurig*, 387 F. Supp. 3d at 224.  The IPPs fail to allege anything about: (1) where they purchased salmon, (2) when they purchased salmon, (3) from whom they purchased salmon, (4) whether there are any other supply chain intermediaries between the IPPs' suppliers and Defendants, (5) whether any purported overcharge on the salmon was passed on to them, and (6) whether they absorbed the purported overcharge.  (*See* SAC ¶¶ 18-28.)  In fact, despite purporting to represent classes of indirect purchasers of salmon

at artificially elevated prices, the SAC does not contain *any* allegations about the prices (retail or otherwise) paid by *any* named plaintiff. And the IPPs provide only four conclusory paragraphs of allegations regarding how they were purportedly harmed by Defendants' alleged conspiracy. (*See id.* ¶¶ 273-76.)

Barebones allegations of injury cannot support antitrust standing for the IPPs that purchased unspecified salmon products from unspecified third parties, presumably through a variety of supply chains. *See Duty Free Ams.*, 797 F.3d at 1273 (affirming dismissal noting that "a plaintiff who has suffered only indirect injury, or who alleges speculative damages, may lack antitrust standing to seek [even] an injunction"); *Palmyra Park Hosp., Inc. v. Phoebe Putney Mem'l Hosp., Inc.*, No. 08-102, 2009 WL 10673436, at *11 (M.D. Ga. Mar. 31, 2009) (applying *AGC* and holding "that Plaintiff is not an efficient enforcer of the antitrust laws" given the indirect, remote, and highly speculative claims).

The court's reasoning under *Florida Cement* that threadbare allegations cannot support a plausible inference of injury and proximate harm applies forcefully here, especially given that the IPPs' own allegations underscore the speculative nature of their claims. For example, a chart cited in the SAC shows that salmon prices *decreased* at various points during the alleged conspiracy period, including after the creation of the NASDAQ Salmon index in 2013, which the IPPs allege coincides with the beginning of the price-fixing conspiracy. (SAC ¶ 139.) The SAC also cites multiple sources confirming that many factors affect the price of salmon—including environmental factors such as sea lice and algae, water temperatures, and demand.[7] The IPPs proffer no coherent theory as to how overcharges were allegedly passed onto them through the distribution chain over a seven-year period during which salmon prices admittedly fluctuated up and down based on many different factors. *See, e.g., Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1235 (8th Cir. 2010) (finding allegations of "higher retail beer prices" "speculative" where beer

---

[7]  *E.g.*, Trond Davidson, Int'l Salmon Farmers Ass'n, *Producing Healthy Sustainable Food for the World*, Speech at the Aquaculture & Cold Harvest Conference (Sept. 20, 2016), http://www.salmonfarming.org/producing-healthy-sustainable-food-for-the-world, at 4 (quoted at SAC ¶¶ 193-94); SalMar ASA Annual Report 2017, at 51, https://hugin.info/138695/R/2188425/ 846513.pdf (quoted at SAC ¶ 64). Defendants are entitled to rely on these and the other sources "referenced in the complaint, from which . . . truncated quotations [are] drawn." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007); *see also McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x 873, 875-76 (11th Cir. 2016) (court did not err in considering exhibits "incorporated into" the pleadings).

was sold through a complex distribution system).[8]  Moreover, the fluctuating prices alleged in the SAC are not even those that were paid by the IPPs but by those further up the supply chain.

Plaintiffs also flunk the third *AGC* factor—whether other plaintiffs are better suited to enforce the antitrust laws.  Here, DPPs can (and have) brought separate claims.  *See In re: Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, Case No. 19-21551-Civ-Altonaga/Louis.[9]  The specter of duplicative recovery looms large here, as the plaintiffs in *In re: Farm-Raised Salmon* have brought identical claims seeking the entirety of an alleged, anticompetitive overcharge under federal law.  *E.g.*, *Campos v. Ticketmaster Corp.*, 140 F.3d 1166, 1169-71 (8th Cir. 1998) (affirming dismissal of indirect purchaser claims in part due to the risk of duplicative recovery).

Finally, awarding damages to the IPPs would require complex apportionment of damages between the indirect and direct purchasers under state law, where Defendants have a right to assert a defense that any price increases were passed through to the IPPs' customers.  Based on these factors, numerous courts have held that indirect purchaser plaintiffs lack antitrust standing.  *See, e.g.*, *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d at 1094-95 (finding "that antitrust standing is lacking with respect to the thirteen remaining state law claims"); *see also In re Keurig*, 383 F. Supp. 3d at 260-64 (dismissing state antitrust claims for all states in which *AGC* was found to be applicable); *Oliver v. Am. Express Co.*, No. 19-CV-566 (NGG) (SMG), 2020 WL 2079510, at *13-14 (E.D.N.Y. Apr. 30, 2020) (same).  Accordingly, the IPPs' claims under the antitrust laws of those states, reflected in Counts III, V, X, XI-XIV, XVI, XVIII-XIX, XXI-XXII, XXIV-XXX, and XXXII, should be dismissed.

---

[8]   *See also In re Keurig*, 383 F. Supp. 3d at 224 (dismissing indirect purchaser claims "because the claimed damages are too indirect and may have been produced by factors independent from any alleged overcharge"); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1094-95 (N.D. Cal. 2007) (dismissing indirect purchaser claims where many factors "*collectively* determine the final price actually paid by plaintiffs for the final product") (emphasis in original).

[9]   *See also In re Keurig*, 383 F. Supp. 3d at 223 (dismissing indirect purchaser claims where "there are alternative enforcers that are better situated to bring suit, and have brought suit"); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-2481 KBF, 2014 WL 4277510, at *23 (S.D.N.Y. Aug. 29, 2014) (dismissing indirect purchaser claims where "upstream plaintiffs would be more closely positioned to industry dynamics and therefore arrive at relief that might better address any unlawful conduct, and in the process, prevent harm from flowing downstream").

**B.**     **All IPPs Lack Article III Standing Because They Have Not Plausibly Alleged Injury-In-Fact, Causation, or Damages**

The IPPs also fail to plausibly allege Article III standing for any of their claims (Counts I-XXXVII).  To establish Article III standing: (1) "a [P]laintiff must allege that he suffered an 'injury in fact' that is 'concrete and particularized' and 'actual or imminent'"; (2) the injury "must be 'fairly traceable to the challenged action of the defendant'"; and (3) "it must be 'likely … that the injury will be redressed by a favorable decision.'"  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1268 (11th Cir. 2019) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  When the claim involves injunctive relief, there is an additional requirement: standing exists "only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury."  *Duty Free Ams.*, 797 F.3d at 1271.  At the pleading stage, Plaintiffs "b[ear] the burden of alleging facts that plausibly establish their standing."  *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020).  In pleading injury-in-fact, "mere conclusory statements do not suffice."  *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The IPPs have failed to plausibly allege (1) an injury-in-fact that satisfies Article III requirements, (2) facts sufficient to show their purported injury-in-fact is fairly traceable to Defendants' alleged conduct, or (3) facts showing a concrete and imminent future injury.

1.     The IPPs Lack Article III Standing Because They Have Not Alleged Any Injury-in-Fact That is Concrete, Particularized, and Not Hypothetical

*First*, the IPPs have failed to allege that their purported injuries are concrete and particularized.  As noted, the IPPs allege only that each named plaintiff "purchased farm-raised salmon indirectly from one or more of the Defendants and has suffered monetary loss as a result of the antitrust violations alleged herein."  (SAC ¶¶ 18-28.)  The IPPs' only other "injury" allegations are four perfunctory paragraphs alleging generally that the alleged conspiracy raised prices.  (*Id*. ¶¶ 273-276.)  These allegations fall far short of the "concrete and particularized" requirement.  *Lujan*, 504 U.S. 555 at 560; *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924-25 (11th Cir. 2020) (litigants must "*clearly* and *specifically* set forth facts to satisfy the requirements of Article III," including injury-in-fact) (emphasis added).

*Second*, the IPPs fail to allege that their claimed injuries are anything more than hypothetical.  Even assuming prices were artificially raised for the DPPs, the IPPs have not

10

alleged that such increases *were* subsequently passed on to them, or *how*.  (*See generally*, SAC ¶¶ 18-28, 273-276.)  By failing to allege a pass-on mechanism, the IPPs ask the Court to assume that their purported injury has occurred, rather than including well-pled facts suggesting that it did occur.  At best, the IPPs' theory of harm is purely academic, which cannot establish standing.  *See, e.g.*, *Trichell*, 964 F.3d at 996 (holding that plaintiffs "b[ear] the burden of alleging facts that plausibly establish their standing"); *Taggart v. Colonial Hotel, Inc.*, No. 06-80018-CIV-WJZ, 2007 WL 9702259, at *2 (S.D. Fla. Oct. 29, 2007) ("Standing requires a factual showing of perceptible harm, and is not an ingenious academic exercise in the conceivable.").[10]

*Third*, nowhere do the IPPs provide facts showing that the alleged conspiracy presents a real and immediate threat of *future* injury, as necessary to demonstrate standing to bring their claim for injunctive relief under the Sherman Act (Count I).  *See Crosby v. Hosp. Auth. of Valdosta & Lowndes Cty.*, 93 F.3d 1515, 1533 (11th Cir. 1996) ("Because injunctive relief is prospective, a party seeking an injunction must show a threat of future injury."); *Snyder v. Green Roads of Fla. LLC*, 430 F. Supp. 3d 1297, 1304 (S.D. Fla. 2020) ("In addition to past injury, a plaintiff seeking injunctive relief must show a sufficient likelihood that [she] will be affected by the allegedly unlawful conduct in the future," *i.e.* "that the injury is certainly impending."). Instead, the IPPs merely recite that the inadequately alleged past injuries will continue if the alleged conspiracy is not enjoined.  (SAC ¶ 283.)

2.     The IPPs Lack Article III Standing Because They Have Not Alleged That Their Purported Injury Is "Fairly Traceable" to Defendants' Conduct

The IPPs also fail to allege facts plausibly suggesting that their purported injuries are fairly traceable to Defendants' alleged conduct.  To satisfy this requirement, "the line of causation" between the alleged conduct and the injury cannot be "too attenuated."  *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1088-89 (11th Cir. 2019).  The IPPs must thus trace the

---

[10]   The IPPs' discussion of general economic theory, *see* SAC ¶¶ 247-251, does not save their claims.  The standing inquiry's purpose is to determine whether these *plaintiffs* suffered injury, not whether injury may have been suffered by *someone*.  "The standing inquiry is both plaintiff-specific and claim-specific.  Thus, a reviewing court must determine whether *each particular plaintiff* is entitled to have a federal court adjudicate each particular claim that he asserts."  *Ford v. Strange*, 580 F. App'x 701, 708 (11th Cir. 2014) (emphasis added); *see also Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (each plaintiff "must demonstrate standing for each claim he seeks to press" and "must demonstrate standing separately for each form of relief sought").

flow of salmon from the Defendants to each named plaintiff.  *Cf. id.* (indirect purchasers satisfied Article III by, *inter alia*, tracing the flow of products from the manufacturer to each plaintiff).

The IPPs fail to plead facts on traceability—while alleging that most farm-raised salmon sold in North America originated from non-Defendant producers, the IPPs do not even explain which Defendants they indirectly purchased salmon from, which of Defendants' customers they purchased salmon from, or when they made those purchases.  (SAC ¶¶ 18-28.)  Moreover, the SAC implicates not only farm-raised salmon, but all of the myriad unspecified products that are "derived" from farm-raised salmon.  Yet the IPPs offer no clue as to what each Plaintiff bought or how alleged overcharges from Defendants' conduct can be traced through the supply chain to each of those products, especially given their allegations that wholesale prices fluctuate due to many factors and even trended *downward* for the first few years of the alleged conspiracy. *Supra* at 2, § II.A.2.  The IPPs' claims (Counts I-XXXVII) should thus be dismissed.  *See, e.g.*, *Jones v. Micron Tech., Inc.*, 400 F. Supp. 3d 897, 907-08 (N.D. Cal. 2019) ("[I]ndirect purchaser complaints must include allegations (i) defendants overcharged direct purchasers and (ii) some or all of that overcharge was passed on to indirect purchasers through each of the various intermediate levels of the distribution chain … This Plaintiffs have failed to do.").

### C.     The IPPs' Claims Are Barred in Massachusetts, Montana, and Partially Barred in Rhode Island Under the *Illinois Brick* Doctrine

Even assuming that the SAC satisfies antitrust and Article III standing requirements, Counts XV, XX, and XXX should be dismissed for failing to plausibly allege that the IPPs' claims survive *Illinois Brick* rules in three states.  *See Austin v. Blue Cross & Blue Shield of Ala.*, 903 F.2d 1385, 1389 (11th Cir. 1990) (dismissing antitrust claims on, *inter alia*, *Illinois Brick* grounds, where the causal connections were "indirect and collateral").

The IPPs bring their damages claims under state law because federal law precludes recoveries by indirect purchasers in antitrust suits.  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that only direct purchasers may recover damages under federal antitrust law.  Indirect purchasers—like Plaintiffs here—can only recover where permitted under state law.  *California v. ARC Am. Corp.*, 490 U.S. 93, 98 (1989).  However, many states have explicitly adopted *Illinois Brick*.  Therefore, Counts XV, XX, and XXX fail.

***Massachusetts***:  Massachusetts follows *Illinois Brick*.  *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C 07-5944 SC, 2014 WL 1088256, at *3 (N.D. Cal. Mar. 13, 2014) ("[A] corporation engaged in commerce whose suit is based on indirect purchases will not have

standing" under Massachusetts law.).  "The Massachusetts Antitrust Act is 'construed in harmony with judicial interpretations of comparable Federal antitrust statutes,' and thus 'the rule of law established in *Illinois Brick*' applies."  *In re Aggrenox Antitrust Litig.*, 3:14-MD-2516 (SRU), 2016 WL 4204478, at *8 (D. Conn. Aug. 9, 2016) (citing *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 436 Mass. 53, 57–58 (2002)).  Therefore, all claims under Count XV must be dismissed.[11]

> *Montana*:  Montana's antitrust laws are also modeled on and interpreted consistent with the Sherman Act, including adherence to *Illinois Brick*.  *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1186-87 (N.D. Cal. 2009) (finding that the Montana Supreme Court would not permit indirect purchaser claims based on *Illinois Brick*) (citing *Smith v. Video Lottery Consultants, Inc.*, 858 P.2d 11 (Mont. 1993)).  Therefore, all claims under Count XX must be dismissed.

> *Rhode Island*:  Finally, claims based on Rhode Island law are barred prior to July 15, 2013, the date Rhode Island's repeal of *Illinois Brick* became effective.  *See In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 374 (D.R.I. 2019) ("Recovery under the Rhode Island Antitrust Act is limited to damages incurred after July 15, 2013"); *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 759 (E.D. Pa. 2014) (concluding that indirect purchasers may not recover for overcharges incurred before Rhode Island's repealer statute took effect).  Therefore, all claims under Count XXX for damages prior to July 15, 2013 must be dismissed.

### III.   MANY OF THE IPPs' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO ALLEGE STATUTORY STANDING REQUIREMENTS OR FOR OTHER STATE-SPECIFIC REASONS

The IPPs also fail to show that they have standing under *state* law (as opposed to Article III) or otherwise fail to meet unique statutory requirements in at least nine jurisdictions.  This failure warrants dismissal of all claims asserted on behalf of Plaintiffs from the following states

---

[11]   The IPPs do not specify whether their claim arises under Section 9 or Section 11 of the Massachusetts Antitrust Act.  (SAC ¶¶ 394-403.)  As the *In re Aggrenox* court explained, Section 11 is applicable for entities engaged commerce, such as the IPPs.  *In re Aggrenox Antitrust Litig.*, 2016 WL 4204478, at *8.  Section 11 is construed in harmony with the Sherman Act, including the *Illinois Brick* doctrine.  *Id*. at *8-9.  Section 9 does not include an *Illinois Brick* rule, but requires that the plaintiff be a consumer, not a reseller.  *See infra* § III.A.  The two sections are binary.  *See In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 373 (D.R.I. Oct. 17, 2019).  The IPPs therefore cannot mix-and-match the sections to achieve a viable claim.  Under either, they fail.

and territories:  California, Guam, Hawaii, Illinois, Massachusetts, Missouri, Montana, Nevada, and Vermont.  (Counts V, VIII, IX, XI, XV, XIX, XX, XXIII, and XXXV.)

*First*, the IPPs' consumer protection claims under the laws of Massachusetts, Missouri, Montana, and Vermont must be dismissed because the IPPs and their putative class members are resellers, and resellers do not have statutory standing under these states' *consumer* protection laws.  *Second*, the IPPs' claims under Hawaii state law must be dismissed because Hawaii law requires the plaintiff to be a consumer, not a business, or else requires that the attorney general declined to pursue the relevant claims.  *Third*, the IPPs' claims under Nevada state law must be dismissed because Nevada state law requires the plaintiff to be elderly or disabled, and the IPPs have not alleged that they are elderly or disabled.  *Fourth*, the IPPs' claims under California's Unfair Competition Law must be dismissed because that statute does not permit the recovery of damages.  *Fifth*, the IPPs' claims under Illinois state law must be dismissed because Illinois does not permit plaintiffs to restyle their antitrust claims as consumer protections claims.

## A.   Resellers Are Barred From Asserting Consumer Protection Claims in Four States

The IPPs purport to represent resellers of salmon, not end user consumers.  (*See, e.g.*, SAC ¶ 259 (m) ("**Massachusetts class**:  All persons and entities who indirectly purchased, *for resale* . . .") (emphasis added), (q) (same for Missouri), (r) (same for Montana), (ff) (same for Vermont).)  Under the law of four states—Massachusetts, Missouri, Montana, and Vermont—the IPPs lack statutory standing to assert their claims.

Resellers do not have a cause of action under the consumer protection laws of Massachusetts, Missouri, Montana, or Vermont.  *See In re Loestrin*, 410 F. Supp. 3d at 373 (citing *Ciardi v. F. Hoffmann-La Roche, Ltd.*, 762 N.E.2d 303, 308, 311 (Mass. 2002)) (Section 9 of the Massachusetts Consumer Protection Law affords no relief to persons engaged in trade or commerce); *In re Actimmune Mktg. Litig.*, No. C 08-02376 MHP, 2010 WL 3463491, at *12 (N.D. Cal. Sept. 1, 2010) (dismissing Missouri Merchandising Practices claim where purchases were for a business purpose); *accord In re Takata Airbag Prods Liab Litig.*, 464 F. Supp. 3d 1291, 1311 (S.D. Fla. 2020); Mont. Code §§ 30-14-133, 30-14-102 (only Montana "consumers" who purchase goods "primarily for personal, family, or household purposes" may bring

claims);[12] *New England Surfaces v. E.I. Du Pont De Nemours and Co.*, 460 F. Supp. 2d 153, 162 (D. Me. 2006) ("Both the Act and the Supreme Court of Vermont have made clear that a person (or business) who purchases goods for resale is not a member of the class protected by the [Vermont CFA] statute.").  Because the IPPs profess to be resellers only, claims under these states' consumer protection laws must be dismissed.

> **B.      Hawaii Only Permits Claims Brought by Consumers or Declined by the Attorney General**

Plaintiffs also purport to bring claims under Hawaii Rev. Stat. §§ 480 *et seq*.  (Count IX.) That statute prohibits (1) "unfair methods of competition" and (2) "unfair or deceptive acts or practices."  Hawaii Rev. Stat. § 480–2(a), (d) and (e).  The IPPs cannot pursue a claim based on "unfair methods of competition" because they can only proceed with such a claim if the attorney general declines to pursue the action.  *See In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1158 (N.D. Cal. 2009) (noting unfair competition notification requirements).[13]  To the extent Plaintiffs are relying on the "unfair and deceptive acts" provision, those claims must also be dismissed because the IPPs are resellers.  Like the statutes of the four states discussed above, only *consumers* have a private right of action for unfair or deceptive practices, not resellers. Haw. Rev. Stat. § 480-2(d) ("No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section."); *see also* § 480-1 ("'Consumer' means a natural person who, primarily for personal, family, or household purposes, purchases, attempts to purchase, or is solicited to purchase goods or services or who commits money, property, or services in a personal investment.").  Therefore, Count IX must be dismissed.

> **C.      Only the Elderly and Disabled Have Standing Under Nevada's Deceptive Trade Practices Act**

The IPPs' claims under the Nevada Deceptive Trade Practices Act ("NDTPA") must also be dismissed.  (Count XXIII.)  By its express terms, private actions may be commenced under the NDTPA only by "an elderly person or a person with a disability."  Nev. Rev. Stat.

---

[12]   *Accord Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC*, No. 15 CIV. 6549 (CM), 2018 WL 7197233, at *46 (S.D.N.Y. Dec. 26, 2018) (dismissing Montana claims for resellers).

[13] Section 480-13.3 provides detailed requirements for notifying the Hawaii attorney general before a private class action can proceed, and the IPPs have not pled that they complied with any of those notice requirements.

§§ 598.0903, 598.0977; *see In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 234 (M.D. Pa. 2010) (dismissing NDTPA claim where Nevada class plaintiffs "[were] not alleged to be either elderly or disabled"); *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 163-64 (E.D. Pa. 2009) (dismissing NDTPA claims for lack of standing when named plaintiffs were neither "elderly" nor "disabled"). The IPPs do not claim to be elderly or disabled individuals within the scope of the NDTPA's authorization of private actions. Therefore, Count XXIII must be dismissed.

### D.    The IPPs Cannot Pursue a Claim For Damages Under California's Unfair Competition Law

The IPPs' California consumer protection and antitrust claims should be dismissed for lack of allegations demonstrating injury, proximate cause, antitrust standing, or even Article III standing. *Supra* § II.A-B. Moreover, while it is not clear whether Plaintiffs are seeking to bring a claim under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL"),[14] to the extent Plaintiffs are seeking to bring a claim under the UCL it should be dismissed as to damages sought thereunder. Plaintiffs are "limited to injunctive relief and restitution" under the UCL and "may not receive damages, much less *treble* damages, or attorney fees." *Cal-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (Cal. 1999) (emphasis in original); *see also In re Takata Airbag Prods. Liab. Litig.*, 464 F. Supp. 3d at 1311 (dismissing California consumer protection claim for damages). Given this lack of specificity in pleading and the IPPs' inability to seek damages under section 17200, their remaining California UCL claims under Count V. should be dismissed.

### E.    Alleged Price Fixing Does Not Give Rise to a Consumer Protection Claim Under Illinois Law

The IPPs' Illinois consumer protection claims (Count XI) should be dismissed because the Supreme Court of Illinois has held that the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") is not "designed to be an additional antitrust enforcement mechanism." *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 993 (Ill. 1990). "Classic" antitrust claims, such as price fixing, "must be brought under the [Illinois] Antitrust Act and not the [Illinois] Consumer Fraud Act." *Gaebler v. N.M. Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. Ct. 1996) (affirming

---

[14]    The IPPs nominally allege that Defendants' conduct violated Cal. Bus. & Prof. Code § 17200 (SAC ¶ 313) but seemingly only assert claims (and seek damages and attorneys' fees) under the separate antitrust sections 16729 and 16750. (SAC heading for Count V, *id.* at ¶¶ 315-20.)

dismissal of the indirect purchaser plaintiffs' ICFA claim based on the defendants' alleged conspiracy to fix, maintain or stabilize the price of potash).  Here, the IPPs' claim under the ICFA is based on an alleged conspiracy by Defendants to control, fix or maintain prices of farm-raised salmon.  (SAC ¶¶ 364-65.)  As such, the court should dismiss the IPPs' ICFA claim.

**F.**     **Only Courts In Guam Have Jurisdiction Over The Claims Based On Guam Law**

Finally, the IPPs purport to assert claims on behalf of resellers under Guam Code § 69.10, *et seq*.  (Count VIII.)  However, this Court lacks jurisdiction over such claims, which must be brought in Guam Superior Court or the U.S. District Court in Guam.  *See* Guam Code § 69.32 ("An action for violation of this chapter shall may [sic] be brought in the Superior Court of Guam by any person or by the Attorney General in the name of the people of Guam, or, if the District Court of Guam has jurisdiction, it may be brought in the District Court of Guam.") Plaintiffs do not allege any basis for their claims based on the laws of Guam to proceed.

### CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the IPPs' complaint should be dismissed:

1.  In full, for failure to plausibly allege Article III standing (*see* § II.B);

2.  In full, for failure to plausibly allege that their injuries were proximately caused by the alleged conspiracy (*see* II.A.1);

3.  As to Arizona, Arkansas, Guam, Hawaii, Illinois, Kansas, Michigan, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, and West Virginia (Counts III-IV, VIII-XI, XIII, XVI, XVIII-XXV, XXVIII-XXXV, and XXXVI), for failure to plausibly allege a named plaintiff from each state (*see* § I);

4.  As to Iowa, Nebraska, Arizona, California, Illinois, Kansas, Maine, Michigan, Mississippi, Missouri, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, and South Dakota (Counts III, V, X, XI-XIV, XVI, XVIII-XIX, XXI-XXII, XXIV-XXX, and XXXII), for failure to plausibly allege antitrust standing for claims under these states' laws (*see* § II.A.2);

5.  As to Massachusetts, Montana, and partially as to Rhode Island (Counts XV, XX, and XXX), for failure to plausibly allege an exception to those states' *Illinois Brick* doctrines (*see* § II.C);

6.  As to Massachusetts, Missouri, Montana, and Vermont (Counts XV, XIX, XX, and XXXV), for failure to plausibly allege that the IPPs and their putative class members are not resellers (*see* § III.A);

7.   As to Hawaii (Count IX) for failure to plausibly allege that the IPPs notified the state's attorney general or that the IPPs and their putative class members are consumers (*see* § III.B);

8.   As to Nevada (Count XXIII) for failure to plausibly allege that the IPPs and their putative class members are elderly or disabled (*see* § III.C);

9.   As to the apparent California UCL claim (Count V) which does not permit damages claims (*see* § III.D);

10. As to Illinois (Count XI) for failure to plausibly allege how the IPPs' consumer protection claims are distinct from antitrust claims (*see* § III.E); and

11. As to Guam, Count VIII, for failure to plausibly allege a jurisdictional basis over those claims (*see* § III.F).

Dated September 10, 2021

Respectfully submitted,

By: /s/ *Adam L. Schwartz*
Adam L. Schwartz
Florida Bar No.: 0103163
**HOMER BONNER JACOBS ORTIZ, P.A.**
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, Florida 33131
Tel. (305) 350-5100
aschwartz@homerbonner.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Stephen Neuwirth (*pro hac vice*)
Sami Rashid (*pro hac vice*)
Max Meadows (*pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel. (212) 849-7000
stephenneuwirth@quinnemanuel.com
samirashid@quinnemanuel.com
maxmeadows@quinnemanuel.com

Christopher Tayback (*pro hac vice*)
Will Sears (*pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
Tel. (213) 443-3000
christayback@quinnemanuel.com
willsears@quinnemanuel.com

*Counsel for Defendant SalMar ASA*

By: /s/ *Lawrence D. Silverman*
Lawrence D. Silverman
Florida Bar No: 7160
Diane O. Fischer
Florida Bar No: 994560
**AKERMAN LLP**
Three Brickell City Centre
98 SE 7th Street, Suite 1100
Miami, Florida 33131
lawrence.silverman@akerman.com
deedee.fischer@akerman.com

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Karen Hoffman Lent (*pro hac vice*)
Matthew M. Martino (*pro hac vice*)
Matthew Lisagar (*pro hac vice*)
Danielle S. Menitove (*pro hac vice*)
One Manhattan West
New York, NY 10001
karen.lent@skadden.com
matthew.martino@skadden.com
matthew.lisagar@skadden.com
danielle.menitove@skadden.com

*Counsel for Defendants Mowi ASA (f/k/a Marine Harvest ASA), Mowi USA, LLC (f/k/a Marine Harvest USA, LLC), Mowi Canada West, Inc. (f/k/a Marine Harvest Canada, Inc.), and Mowi Ducktrap, LLC (an assumed name of Ducktrap River of Maine, LLC)*

By: */s/Brian W. Toth*
Brian W. Toth
Florida Bar No: 57708
Freddy Funes
Florida Bar No. 87932
**TOTH FUNES PA**
201 S. Biscayne Blvd., 28th Floor
Miami, Florida 33131
btoth@tothfunes.com
ffunes@tothfunes.com

**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**
700 13th Street NW, 10th Floor
Washington, D.C. 20005
Eric J. Mahr *(pro hac vice)*
Richard Snyder *(pro hac vice)*
Meredith Mommers *(pro hac vice)*
eric.mahr@freshfields.com
richard.snyder@freshfields.com
meredith.mommers@freshfields.com

*Counsel for Defendants Grieg Seafood ASA,
Grieg Seafood BC Ltd., Grieg Seafood Sales
North America Inc. (f/k/a Ocean Quality
North America Inc.), Grieg Seafood Sales
USA, Inc. (f/k/a Ocean Quality USA Inc.), and
Grieg Seafood Premium Brands, Inc. (f/k/a
Ocean Quality Premium Brands, Inc.)*

By: */s/ John C. Seipp*
John C. Seipp
Florida Bar No: 289264
Christine L. Welstead
Florida Bar No: 970956
**BOWMAND AND BROOKE, LLP**
Two Alhambra Plaza, Suite 800
Miami, Florida 33134
john.seipp@bowmanandbrooke.com
christine.welstead@bowmanandbrooke.com

**CLEARY GOTTLIEB STEEN &
HAMILTON LLP**
David I. Gelfand *(pro hac vice)*
Matthew Bachrack *(pro hac vice)*
2112 Pennsylvania Avenue, NW
Washington, D.C. 20037
dgelfand@cgsh.com
mbachrack@cgsh.com

*Counsel for Defendants Lerøy Seafood AS
and Lerøy Seafood USA Inc.*

By: */s/ Britt M. Miller*
Britt M. Miller (*pro hac vice*)
Robert E. Entwisle (*pro hac vice*)
Luiz Miranda
**MAYER BROWN LLP**
71 S. Wacker Dr.
Chicago, IL 60606
Ph: (312) 782-0600
bmiller@mayerbrown.com
rentwisle@mayerbrown.com
lmiranda@mayerbrown.com

William Stallings (*pro hac vice*)
**MAYER BROWN LLP**
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000
wstallings@mayerbrown.com

*Counsel for Defendants Cermaq Group AS,
Cermaq Norway AS, Cermaq Canada Ltd.,
and Cermaq US LLC*

By: */s/ James R. Bryan*
James R. Bryan
Florida Bar No: 696862
**LEÓN COSGROVE, LLP**
255 Alhambra Circle, 8th Floor
Miami, Florida 33134
Tel: 305-740-1975
Email: jbryan@leoncosgrove.com

Stephen P. Safranski (*pro hac vice*)
Ryan W. Marth (*pro hac vice*)
Eric P. Barstad (*pro hac vice*)
Samia S. Young (*pro hac vice*)
**ROBINS KAPLAN LLP**
800 LaSalle Ave, Suite 2800
Minneapolis, MN 55402
Tel: 612-349-8500
Email: ssafranski@robinskaplan.com
Email: rmarth@robinskaplan.com
Email: ebarstad@robinskaplan.com
Email: syoung@robinskaplan.com

*Counsel for Defendant Sjór AS*

# EXHIBIT I

| States Applying *Associated General Contractors* to State Antitrust Claims |
|---|
| **Arizona** |
| *Luscher v. Bayer A G*, No. CV 2004-014835, 2005 WL 6959406, at *1-2 (Ariz. Super. Ct. Sept. 16, 2005) (applying *AGC* factors to dismiss Arizona state antitrust claims by indirect purchasers); *In re Refrigerant Compressors Antitrust Litig.*, No. 2:09-MD-02042, 2013 WL 1431756, at *10 (E.D. Mich. Apr. 9, 2013) ("[T]he Court concludes that the following jurisdictions apply the AGC test: Arizona ...."); *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1095 (same).  To the extent that Plaintiffs argue *Keurig* suggests *AGC* does not apply, they are incorrect.  The court in *Keurig* is an outlier among both state and federal courts for holding the contrary. |
| **California** |
| *Vinci v. Waste Mgmt., Inc.*, 36 Cal. App. 4th 1811, 1814 n.1 (Cal. Ct. App. 1995) ("[T]he California courts look to cases construing the federal antitrust laws for guidance in interpreting the Cartwright Act."); *In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4743425, at *3 (finding California courts would dismiss Cartwright Act cases by applying *AGC*); *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *10 (("[T]he Court concludes that the following jurisdictions apply the AGC test: … California");  *cf. Dang v. San Francisco Forty Niners*, 964 F. Supp. 2d 1097, 1110 (N.D. Cal. 2013) ("[T]he Court finds that the *AGC* factors will be applied to Plaintiff's state-based antitrust claims along with his claims predicated upon federal antitrust law."  Permitting claims to proceed given market-specific factual allegations of pass-through and clear traceability.). |
| **Illinois** |
| *O'Regan v. Arbitration Forums, Inc.*, 121 F.3d 1060, 1066 (7th Cir. 1997) (holding that Illinois would apply the federal antitrust standing rules to a claim under state antitrust laws). |
| **Kansas** |
| *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1094–95  (applying *AGC* factors to claims under Kansas's antitrust statute); *Orr v. Beamon*, 77 F. Supp. 2d 1208, 1211 (D. Kan. 1999), *aff'd sub nom. Orr v. BHR, Inc.*, 4 F. App'x 647 (10th Cir. 2001); *In re Refrigerant Compressors Antitrust Litig.*, 2013 WL 1431756, at *10 (concluding that Kansas courts apply the *AGC* test).  The *Keurig* court's ruling that *AGC* does not apply is contrary to the majority rule in federal courts, as is its interpretation of Kansas's *Illinois Brick* repealer as implicating *AGC* because the underlying purpose of *AGC* differs from *Illinois Brick* and Kansas has not statutorily repealed *AGC*. |
| **Maine** |
| *Knowles v. Visa U.S.A., Inc.*, No. CIV.A. CV-03-707, 2004 WL 2475284, at *5 (Me. Super. Ct. 2004) ("It is probable that the Maine Law Court, if presented with this issue, would look to the [*AGC*] factors in determining standing under Maine's antitrust laws and would apply those factors except to the extent that those factors cannot be reconciled with the legislature's adoption of the *Illinois Brick* repealer."); *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1094 (applying the *AGC* factors under Maine state antitrust law). |
| **Michigan** |
| *Stark v. Visa U.S.A. Inc.*, No. 03–055030–CZ, 2004 WL 1879003, at *2-4 (Mich. Cir. Ct. July 23, 2004) (applying *AGC* factors under Michigan state antitrust law); *In re Keurig*, 383 F. Supp. 3d at 260 (concluding "Michigan Supreme Court . . . would apply the *AGC* factors."). |

| Mississippi |
| --- |
| *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 339 (Miss. 2004) (citing *AGC* favorably); *In re Interior Molded Doors Antitrust Litig.*, No. 3:18-CV-00718-JAG, 2019 WL 4478734, at *14-15 (E.D. Va. Sept. 18, 2019) (applying *AGC* to Mississippi state antitrust law claims); *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1095 (same). |

| Missouri |
| --- |
| *Duvall v. Silvers, Asher, Sher & McLaren, M.D.'s*, 998 S.W.2d 821, 825 (Mo. Ct. App. 1999) (quoting *AGC* favorably). |

| Nevada |
| --- |
| Nev. Rev. Stat. Ann. § 598A.050 ("The provisions of this chapter shall be construed in harmony with prevailing judicial interpretations of the federal antitrust statutes."); *In re Keurig*, 383 F. Supp. 3d at 264 ("Given the mandatory language of Nevada's harmonization provision and the lack of any contravening state authority, I conclude that the Supreme Court of Nevada would apply the *AGC* factors in accordance with federal precedent."). |

| New Hampshire |
| --- |
| *Minuteman, LLC v. Microsoft Corp.*, 795 A.2d 833, 838–40 (N.H. 2002); *In re Keurig*, 383 F. Supp. 3d at 263–64 ("[T]he New Hampshire Supreme Court expressly adopted the *Illinois Brick* rule against indirect purchaser suits in *Minuteman*"); *Oliver v. Am. Express Co.*, No. 19CV00566NGGSJB, 2021 WL 386749, at *4 (E.D.N.Y. Feb. 1, 2021) ("[I]n [*Minuteman*], the New Hampshire Supreme Court expressly adopted the *Illinois Brick* rule against indirect purchaser suits, holding that 'it is sound to limit antitrust lawsuits to direct purchasers.'"). |

| New Mexico |
| --- |
| *Nass-Romero v. Visa U.S.A. Inc.*, 279 P.3d 772, 778-80 (N.M. Ct. App. 2012) (*AGC* factors apply under New Mexico antitrust statute); *In re Keurig*, 383 F. Supp. 3d at 260 ("As a result, I conclude that . . . the New Mexico Supreme Court would apply the *AGC* factors."). |

| New York |
| --- |
| *Oliver v. Am. Express Co.*, No. 19CV566NGGSMG, 2020 WL 2079510, at *14 (E.D.N.Y. Apr. 30, 2020) (citing *X.L.O. Concrete Corp. v. Rivergate Corp*, 634 N.E.2d 158, 161 (N.Y. 1994)) (applying *AGC* to Donnelly Act claims); *In re Keurig*, 383 F. Supp. 3d at 260 (dismissing the indirect purchasers' Donnelly Act claim based on New York case law applying *AGC*); *Gatt Commc'ns Inc. v. PMC Assocs., LLC*, 711 F.3d 68, 81 (2d Cir. 2013) ("We see no reason . . . to interpret the Donnelly Act differently than the Sherman Act with regard to antitrust standing."); *Ho v. Visa U.S.A. Inc.*, 2004 WL 1118534, at *2–3 (N.Y. Sup. Ct. Apr. 21, 2004) (dismissing the plaintiffs' Donnelly Act claims by applying the *AGC* factors to determine antitrust standing), *aff'd*, 16 A.D.3d 256 (1st Dep't 2005); *cf. In re Interior Molded Doors*, 2019 WL 4478734, at *16 (applying *AGC* to the plaintiffs' New York claim based on *Ho v. Visa U.S.A. Inc.*, but holding that the plaintiffs had standing under *AGC*). |

| North Carolina |
| --- |
| *Crouch v. Crompton Corp.*, No. 02 CVS 4375, 2004 WL 2414027, at *18-20 (N.C. Super. Ct. Oct. 26, 2004) (applying factors adapted from *AGC*); *In re Interior Molded Doors*, 2019 WL 4478734, at *15 (applying the standing factors from *Crouch*). |

| North Dakota |
| --- |
| *Beckler v. Visa U.S.A., Inc.*, No. CIV. 09-04-C-00030, 2004 WL 2475100, at *4 (Dist. N.D. 2004) (dismissing the plaintiffs' claims under the NDUSAA for failure to "satisfy antitrust standing principles identified in *Associated General Contractors*"); *In re Aftermarket Auto.* |

| |
|---|
| *Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007–GW(PJWx), 2009 WL 9502003, at *4–6 (C.D. Cal. July 6, 2009) (concluding that North Dakota would apply *AGC* to determine standing under its antitrust law and dismissing plaintiffs' claims); *In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1094–96 (applying *AGC* to dismiss the indirect plaintiffs' North Dakota antitrust claims). |

| Oregon |
|---|
| *Oregon Laborers-Emps. Health & Welfare Tr. Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 1170, 1176–78, 1176 n.2 (D. Or. 1998) (applying the *AGC* factors to the plaintiffs' Oregon antitrust law claims and dismissing those claims), *aff'd*, 185 F.3d 957 (9th Cir. 1999). |

| Rhode Island |
|---|
| *ERI Max Entm't v. Streisand*, 690 A.2d 1351, 1353 n.1 (R.I. 1997) (citing R.I. Gen. Law § 6-36-2(b) and holding that "federal cases interpreting parallel federal provisions are appropriately consulted in interpreting state antitrust laws"); *Oliver*, 2021 WL 386749, at *4 (applying the *AGC* factors to the indirect purchasers' Rhode Island antitrust claims and granting the defendants' motion for judgment on the pleadings). |

| South Dakota |
|---|
| *Byre v. City of Chamberlain*, 362 N.W.2d 69, 74 (S.D. 1985) ("[G]reat weight should be given to the federal cases interpreting the federal [antitrust] statute."); *In re Keurig*, 383 F. Supp. 3d at 261-62 (applying the *AGC* factors to dismiss the indirect purchaser plaintiffs' South Dakota antitrust claim); *Oliver*, 2021 WL 386749, at *4 (applying the *AGC* factors and granting the defendants' motion for judgment on the pleadings); *In re Aftermarket Auto. Lighting Prods.*, 2009 WL 9502003, at *4–6 (concluding that South Dakota would apply *AGC* and dismissing the plaintiffs' claims). |

24