**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| Wood Mountain Fish LLC, *et al.*, | Civil No. 19-22128-CIV-SMITH/LOUIS |
| Plaintiffs, | |
| v. | |
| Mowi ASA (f/k/a Marine Harvest ASA), *et al.*, | |
| Defendants. | |

**INDIRECT PURCHASER PLAINTIFFS'**
**UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT WITH**
**ALL DEFENDANTS AND CERTIFICATION OF SETTLEMENT CLASS AND**
**<u>INCORPORATED MEMORANDUM OF LAW</u>**

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 1

III.    LEGAL STANDARD................................................................................................ 3

IV.     ARGUMENT ............................................................................................................ 4

        A.     The Court Should Grant Final Approval. ................................................. 4

               1.     Class Members Received the Best Notice Practicable. ............................4

               2.     The Settlement is Fair, Reasonable, and Adequate....................................5

                      a)     The Parties' Negotiations and Efforts of Class
                             Counsel Support a Preliminary Finding of Fairness. ..................... 6

                      b)     IPPs Obtained Substantial Relief for the Class............................. 7

                      c)     The Settlement Treats Class Members Equitably and
                             Effectively Distributes the Settlement Fund. ................................ 8

        B.     The Settlement Class Should Be Certified............................................... 9

        C.     Class Counsel's Request for Reimbursement of Fees and Expenses
               Should Be Granted. ............................................................................. 11

V.      CONCLUSION.................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Airline Ticket Comm'n Antitrust Litig.*,
  953 F. Supp. 280 (D. Minn. 1997)................................................................9

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d. 1185 (S.D. Fla. 2006) ......................................................8

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997).............................................................................3, 10

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ...........................................................5, 6, 7, 8

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980).............................................................................11

*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006).........................................................3, 9

*Busby v. JRHBW Realty, Inc.*,
  513 F.3d 1314 (11th Cir. 2008) .........................................................10

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) .........................................................11

*Carter v. Forjas Taurus S.A.*,
  No. 1:13-CV-24583, 2016 WL 3982489 (S.D. Fla. July 22, 2016)..................4

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011).........................................................6

*Cifuentes v. Regions Bank*,
  No. 11-cv-23455, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) ............12

*In re Corrugated Container Antitrust Litig.*,
  556 F. Supp. 1117 (S.D. Tex. 1982) .................................................9

*Diakos v. HSS Sys., LLC*,
  No. 14-61784, 2016 WL 3702698 (S.D. Fla. Feb. 5, 2016) .....................12

*In re Domestic Drywall Antitrust Litig.*,
  No. 13-MD-2437, 2019 WL 1258832 (E.D. Pa. Mar. 19, 2019)..................8

*Duque v. 130 NE 40th St., LLC*,
    Case No. 14-23965-CIV, 2016 WL 7442797 (S.D. Fla. Jan. 27, 2016) ...................................12

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    MDL No. 1486, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013) ..........................................9

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    MDL No. 1486, 2013 WL 12387371 (N.D. Cal. Nov. 5, 2013)..........................................13

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    MDL No. 1486, 2014 WL 12879520 (N.D. Cal. June 27, 2014) ..........................................9

*Eisenband v. Schumacher Auto., Inc.*,
    No. 18-cv-80911, 2019 WL 1301746 (S.D. Fla. Feb. 20, 2019) ......................................6

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
    999 F.3d 1247 (11th Cir. 2021) ...............................................................3, 6, 9, 11

*Ervin v. Scotts Co., LLC*,
    No. 17-60344, 2020 WL 13413684 (S.D. Fla. Oct. 15, 2020) ......................................6, 7

*Gevaerts v. TD Bank, N.A.*,
    Case No. 11:14-cv-20744, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ........................12, 13

*Greco v. Ginn Dev. Co., LLC*,
    635 F. App'x 628 (11th Cir. 2015) ...............................................................13

*In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*,
    No. 3:18-cv-00850, 2021 WL 5195089 (E.D. Va. July 27, 2021)........................................12

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ...................................................................11

*Johnson v. NPAS Solutions, LLC*,
    975 F.3d 1244 (11th Cir. 2020) ...........................................................11, 12, 13

*Jones v. Singing River Health Servs. Found.*,
    865 F.3d 285 (5th Cir. 2017) ....................................................................7

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ...............................................................4, 9

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    No. 14-md-02542, 2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020)........................................5

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
    No. 14-md-02542, 2021 WL 2328431 (S.D.N.Y. June 7, 2021)........................................12

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020).........................................12

*Lloyd v. James E. Albertelli, P.A.*,
No. 20-cv-60300, 2020 WL 7295767 (S.D. Fla. Dec. 10, 2020)...............................................9

*Morgan v. Public Storage*,
301 F. Supp. 3d 1237 (S.D. Fla. 2016) ...........................................................................5, 12, 13

*In re Motorsports Merch. Antitrust Litig.*,
112 F. Supp. 2d 1329 (N.D. Ga. 2000).....................................................................................12

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015)......................................................................................................8, 12

*In re Packaged Ice Antitrust Litig.*,
No. 08-MDL-01952, 2011 WL 6209188 (E.D. Mich. Dec. 13, 2011) ........................................9

*Perez v. Asurion Corp.*,
501 F. Supp. 2d 1360 (S.D. Fla. 2007) .......................................................................................4

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985)....................................................................................................................4

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
MDL No. 2328, 2015 WL 4528880 (E.D. La. July 27, 2015)...............................................5, 12

*In re Pork Antitrust Litig.*,
No. 18-cv-1776, 2022 WL 4238416 (D. Minn. Sept. 14, 2022)..................................................5

*Rosen v. J.M. Auto Inc.*,
270 F.R.D. 675 (S.D. Fla. 2009) .................................................................................................9

*Roundtree v. Bush Ross, P.A.*,
304 F.R.D. 644 (M.D. Fla. 2015)...............................................................................................11

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
297 F.R.D. 683 (S.D. Fla. 2014) .................................................................................................4

*Schorr v. Countrywide Home Loans, Inc.*,
No. 4:07-cv-00019, 2015 WL 13402606 (M.D. Ga. Apr. 1, 2015)..............................................5

*Sullivan v. DB Investments, Inc.*,
667 F.3d 273 (3d Cir. 2011)....................................................................................................8, 9

*In re Terazosin Hydrochloride Antitrust Litig.*,
220 F.R.D. 672 (S.D. Fla. 2004)...........................................................................................9, 10

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)........................................................................................................9

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) ...........................................................................11, 13

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009) ..................................................................................10

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1715(b) ...........................................................2

**Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................. *passim*

Fed. R. Civ. P. 30(b)(6).....................................................................................................6

Manual for Complex Litig. (Third) § 30.42 (1995)........................................................6

I.      **INTRODUCTION**

Indirect purchasers of farm-raised salmon ("IPPs" or "Plaintiffs") brought this class action against salmon producers alleging anticompetitive conduct that inflated the price of farm-raised salmon and salmon products ("Salmon") in the United States. IPPs obtained a $33 million class-wide settlement with all Defendants. The settlement will provide direct cash relief to class members and avoid the risks inherent in a complex indirect-purchaser antitrust action brought against foreign Defendants. The Court granted preliminary approval of the settlement on November 17, 2022, directed notice to the proposed settlement class, and scheduled a final approval hearing for February 24, 2023. ECF No. 341. Because the settlement is fair, adequate, and reasonable, Plaintiffs respectfully request that the Court grant final approval of the settlement, certify the settlement class, award fees to Class Counsel, and approve reimbursement of litigation expenses.

II.     **BACKGROUND**

IPPs have set forth the detailed factual background and procedural history of this case in their motion for preliminary approval and motion for fees and costs, which are incorporated by reference here. *See* ECF No. 336 (Motion for Preliminary Approval); ECF No. 345 (Motion for Fees and Expenses). In short, IPPs filed this case alleging that Defendants, a group of Norwegian Salmon producers, coordinated prices of Salmon in violation of the antitrust laws. ECF No. 1 ¶ 1.[1]

IPPs reached the $33 million settlement with all Defendants through a mediation overseen by the Honorable Edward Infante, retired Chief Magistrate Judge for the Northern District of California. The parties executed a settlement agreement on September 8, 2022. ECF No. 336-2 ("Settlement Agreement"). The Settlement Agreement defined the following Settlement Class:

> All persons and entities who indirectly purchased, for resale, Defendants' farm-raised salmon or products derived therefrom in any of the following states, districts, or territories: Alabama, Arizona, Arkansas, California, the District of Columbia, Florida, Guam, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina,

---

[1] A related case by direct purchasers of salmon ("DPPs") against the same defendants was filed on April 23, 2019. *See* Complaint, *In re Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, Case No. 19-cv-21551, ECF No. 1. The parties in the DPP action reached a settlement, which was granted final approval by the court on September 8, 2022. *In re Farm-Raised Salmon*, ECF No. 543.

> North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, or Wisconsin.

Settlement Agreement ¶ 6, ECF No. 336-2. The Settlement Class excludes the Court, its personnel, and any Defendants and their parent, subsidiary, or affiliated companies. *Id.*

The claims released by this agreement are described in full in paragraph 1.s of the Settlement Agreement, and include all claims "related to or arising from conduct alleged in the Complaint," with the exception of the following claims: "(a) Claims based on negligence, personal injury, bailment, failure to deliver lost goods, damaged or delayed goods, product defects, breach of product warranty, or breach of contract; or (b) Claims based upon a Releasing Party's purchase(s) of farm-raised Atlantic salmon occurring outside the United States or its territories for use or consumption outside of the United States or its territories." *Id.* ¶ 1.s; *see id.* ¶ 16.

The Court granted preliminary approval of the agreement on November 17, 2022. Shortly thereafter, and consistent with the Settlement Agreement, Defendants paid $33 million into an escrow account, establishing the Settlement Fund. *Id.* ¶¶ 2.b, 1.aa. Under the Settlement Agreement, funds may only be disbursed upon final approval by the court and entry of judgment, except that "Class Counsel may pay from the Settlement Fund, without further approval from Defendants or the Court, the costs and expenses reasonably and actually incurred up to the sum of USD $500,000 in connection with providing notice and the administration of the settlement after Preliminary Approval." *Id.* ¶ 2.c. As directed by the Court's preliminary approval order, on November 22, 2022, Defendants confirmed they had notified the relevant state and federal officials of the settlement in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b). *See* ECF No. 343.

On December 1, 2022, Plaintiffs filed a motion for an award of attorney's fees and reimbursement of litigation expenses. *See* ECF No. 345. In the Settlement Agreement, the parties agreed that Class Counsel would not seek more than 30% of the settlement fund in attorney's fees. Settlement Agreement ¶ 14.a. Consistent with that agreement, Class Counsel requested a fee award of $9,900,000, or 30% of the gross settlement fund and separately requested reimbursement of $1,278,166.09 in litigation expenses. ECF No. 345 at 1.

The Court-appointed Settlement Administrator issued individual notice to potential Settlement Class members on December 15, 2022. Decl. of Derek Smith Regarding Notice Administration ("Smith Decl.") ¶ 9. Notice was delivered via email to 40,352 potential class

members. *Id.* For potential class members whose email notices were not delivered, a notice was sent via U.S. mail. *Id.* ¶ 11. Another 353,537 notices were sent via U.S. mail to potential class members where no email address was identified. *Id.* ¶ 9. As part of the notice program, the Settlement Administrator also published notice in several industry publications likely to be viewed by potential Settlement Class members. *Id.* ¶¶ 13–14.

The deadline for opting out of the Settlement Class passed on January 13, 2023. *See* ECF No. 344. No opt-out requests postmarked by that deadline have been received. Smith Decl. ¶ 21. The deadline to file objections is January 26, 2023. *See* ECF No. 344. To date, no objections have been filed. Smith Decl. ¶ 22.[2] Settlement Class members will have until February 17, 2023 to file claims. To date, 40,692 claims have been filed. *Id.* ¶ 19.

The Settlement Administrator established a settlement website with information about the settlement and claims process for class members. *Id.* ¶ 15. The website contains relevant documents and instructions on how to file a claim, opt-out of the settlement, and object to the settlement. *Id.* Claims can be submitted through mail or directly through the secure claim form available on the website. *Id.*

## III.   LEGAL STANDARD

"A class action may be settled only with court approval, which requires the court to find the settlement 'fair, reasonable, and adequate' based on a number of factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (quoting Fed. R. Civ. P. 23(e)(2)).

Upon final approval of a settlement, a court may certify a class "solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006). To certify a settlement class, the court must first find that the requirements of Rule 23(a) and the relevant provision of Rule 23(b) are satisfied, but it need not consider "whether the case, if tried, would present intractable management problems." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

---

[2] Neither Class Counsel nor the Settlement Administrator have received any objections to date. If any objections are filed between this filing and the deadline, Plaintiffs will respond to those objections and be prepared to address them at the final approval hearing. Plaintiffs will also be prepared to provide an update on the number of claims filed.

IV.    **ARGUMENT**

    A.    **The Court Should Grant Final Approval.**

        1.    Class Members Received the Best Notice Practicable.

Before exercising jurisdiction over claims for damages by absent class members, the Court must ensure sufficient procedural due process protections are in place, consistent with the Constitution and Rule 23. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014). "Absent class members must receive notice and an opportunity to be heard and to participate in the litigation, whether in person or through counsel." *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007). To satisfy constitutional due process, "[t]he notice must be the best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotation marks omitted).

The notice program in this case satisfied both Rule 23 and constitutional due process requirements. The Settlement Class consists of individuals and entities that indirectly purchased Defendants' Salmon for resale in the U.S. jurisdictions that permit antitrust recovery by indirect purchasers. To identify potential class members, the Settlement Administrator used a commercially available database of grocery stores, meat and fish markets, eating places, caterers, and non-commercial businesses, schools, and institutions that may have eating places. In total, the Settlement Administrator identified and delivered individual notice to over 350,000 potential class members. Smith Decl. ¶ 9. This direct notice program was supplemented by a media campaign by posting advertisements in several industry-specific e-newsletters read by potential class members in the onsite food service industry, foodservice professionals, restaurant operators, and food retailers. *Id.* ¶¶ 13–14.

"Where certain class members' names and addresses cannot be determined with reasonable efforts, notice by publication is generally considered adequate." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). In this case, IPPs worked with an experienced settlement administrator to use reasonable efforts to identify individual class members and provided direct notice to over 350,000 potential class members. Smith Decl. ¶ 9. In addition, notice was published widely in trade newsletters frequently read by potential class members. *Id.* ¶ 13–14. Under these circumstances, where the names and addresses of some class members are not readily available through Defendants' records, publication by notice was appropriate. *See, e.g., Carter v. Forjas*

*Taurus S.A.*, No. 1:13-CV-24583, 2016 WL 3982489, at *6 (S.D. Fla. July 22, 2016); *Schorr v. Countrywide Home Loans, Inc.*, No. 4:07-cv-00019, 2015 WL 13402606, at *5 n.3 (M.D. Ga. Apr. 1, 2015). For example, a comprehensive notice program of direct communications, supplemented with notice by publication, can satisfy due process. *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1262 (S.D. Fla. 2016).

This robust notice program of targeted, direct communications supplemented by publication is consistent with court-approved notice programs in indirect antitrust actions nationwide. *See, e.g.*, *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2015 WL 4528880, at *7, 21 (E.D. La. July 27, 2015) (approving notice by distribution supplementing a direct notice program in indirect purchaser action); *In re Pork Antitrust Litig.*, No. 18-cv-1776, 2022 WL 4238416, at *7 (D. Minn. Sept. 14, 2022) (approving notice by publication in indirect action by consumers); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-02542, 2020 WL 7389330, at *5 (S.D.N.Y. Dec. 16, 2020) (approving notice by publication in indirect purchaser action). Therefore, the notice program used in this case provided the best notice practicable under the circumstances, satisfying Rule 23 and procedural due process.

2.      The Settlement is Fair, Reasonable, and Adequate.

This settlement satisfies the factors used to evaluate the fairness of a settlement in the Eleventh Circuit. *See* Fed. R. Civ. P. 23(e); *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).

A court should consider whether "the class representatives and class counsel have adequately represented the class," the proposed settlement "was negotiated at arm's length," the relief proposed to the class is adequate, and the class members are treated "equitably relative to each other." Fed. R. Civ. P. 23(e)(2). When deciding whether the relief is adequate, the court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Id.*

The Eleventh Circuit has instructed district courts to consider several additional factors, known as the *Bennett* factors, which include: "(1) 'the likelihood of success at trial'; (2) 'the range of possible recovery'; (3) 'the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable'; (4) 'the complexity, expense and duration of

litigation'; (5) 'the substance and amount of opposition to the settlement'; and (6) 'the stage of proceedings at which the settlement was achieved.'" *In re Equifax Inc.*, 999 F.3d at 1273 (quoting *Bennett*, 737 F.2d at 986). Weighing these factors "is left to the sound discretion of the trial court" and should be "informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett*, 737 F.2d at 986.

a)   *The Parties' Negotiations and Efforts of Class Counsel Support a Preliminary Finding of Fairness.*

Courts in the Eleventh Circuit have noted that "[s]ettlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 662 (S.D. Fla. 2011) (citing Manual for Complex Litig. (Third) § 30.42 (1995)); *e.g.*, *Ervin v. Scotts Co., LLC*, No. 17-60344, 2020 WL 13413684, at *4 (S.D. Fla. Oct. 15, 2020); *Eisenband v. Schumacher Auto., Inc.*, No. 18-cv-80911, 2019 WL 1301746, at *4 (S.D. Fla. Feb. 20, 2019). In this case, Class Counsel have zealously represented the class since before the case was filed and engaged in arm's-length negotiations under the oversight of an experienced mediator to reach this settlement. These circumstances support a "preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 275 F.R.D. at 662; *see* Fed. R. Civ. P. 23(e)(2).

As detailed in the motion for preliminary approval, Class Counsel vigorously represented the class by: (1) investigating the claims prior to filing; (2) obtaining early discovery of documents Defendants had produced to government investigators; (3) amending the complaint twice, based, at least in part, on documents produced to government investigators; (4) developing a document review protocol and reviewing hundreds of thousands of documents, most of which were in Norwegian; (5) obtaining discovery from relevant third-parties by serving 17 subpoenas and engaging in meet-and-confers with those parties; (6) crafting a unique deposition protocol to manage the challenges of depositions of foreign citizens during a global pandemic; (7) conducting Rule 30(b)(6) depositions and identifying fact witnesses to be deposed; (8) seeking additional discovery after reviewing Defendants' productions; (9) managing the collection of Plaintiffs' documents, many of which were stored on paper; (10) reviewing Plaintiffs' documents to produce relevant discovery to Defendants and beginning production; (11) retaining an expert to analyze Defendants' data and identify the information needed to prove damages at trial. These efforts, especially in light of the challenges presented by litigating against foreign corporations primarily

conducting business in the Norwegian language, demonstrate how the Class Counsel's representation of the class was more than adequate.

The circumstances of the settlement negotiations similarly support a preliminary finding of fairness for several reasons. First, the settlement was overseen by former Magistrate Judge Infante, who has extensive experience with mediations in complex, antitrust litigation. Judge Infante had also overseen the mediation in the DPP action, so was familiar with the facts of the cases and the potential barriers to settlement. His management of the settlement process is a "strong indicator of procedural fairness." *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 295 (5th Cir. 2017); Fed. R. Civ. P. 23(e)(2)(B) advisory committee's notes to 2018 amendment ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."). Second, IPPs conducted substantial discovery prior to the mediation and were thus well-informed about the strengths and risks of the case while negotiating the settlement. *See Ervin*, 2020 WL 13413684, at *4. Third, IPPs continued to litigate the case until the settlement was reached, producing documents, reviewing discovery, negotiating deposition witnesses, and arguing a motion to compel.

In short, the circumstances of the settlement and the significant litigation efforts by Class Counsel support a finding a fairness.

b)      *IPPs Obtained Substantial Relief for the Class.*

The Rule 23(e)(2) factors measuring the adequacy of relief and the *Bennett* factors weigh strongly in favor of the settlement obtained by IPPs. Fed. R. Civ. P. 23(e)(2)(C); *Bennett*, 737 F.2d at 986. The $33 million recovery obtained here is substantial and avoids years of protracted litigation and the risks inherent in a complex antitrust case.

The "costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), and the first, fourth, and sixth *Bennett* factors, which relate to "the likelihood of success at trial," "the complexity, expense and duration of litigation," and the timing of the settlement weigh in favor of final approval here. The case has been pending since May 2019 and was settled prior to a ruling on Defendants' motion to dismiss and before IPPs filed a motion for class certification. At this early stage, it is likely the litigation would have continued for years absent a settlement. While IPPs were confident in the strength of their case based on the evidence reviewed to date, there are many complexities and risks typical in indirect purchaser actions. Courts routinely comment on

7

the complexity of such cases. *See e.g. Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d. 1185, 1206 (S.D. Fla. 2006) ("Courts in this Circuit recognize that large class actions involving various legal theories are, by their nature, very difficult."); *In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2019 WL 1258832, at *3 (E.D. Pa. Mar. 19, 2019); *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304–05 (3d Cir. 2011) (en banc); *In re Nexium Antitrust Litig.*, 777 F.3d 9, 26 (1st Cir. 2015). The complexity of this case was even more pronounced because it involved foreign defendants and a large volume of documents in a foreign language. Based on these risks and complexities, the settlement obtained here is fair. Absent this settlement, class members would likely need to wait several years before obtaining any recovery. Any outcome favorable to IPPs would also likely be appealed, introducing even more delay.

The second and third *Bennett* factors, "the range of possible recovery" and "the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable," similarly weigh in favor of a finding of fairness here. Indirect antitrust claims may only be brought in jurisdictions that permit such claims. Accordingly, this case only involves commerce in 34 U.S. jurisdictions, not the entire U.S., and the settlement amount reflects that reduced range of possible recovery.

Next, the fifth *Bennett* factor, "the substance and amount of opposition to the settlement," weighs in favor of final approval. To date, no objections have been filed and no opt-out requests have been received. Smith Decl. ¶¶ 21–22. With a class of thousands of indirect salmon purchasers, these numbers indicate that the amount of opposition is very low. Because no objections have been filed, there is no indication of any substantive opposition to the settlement.

Finally, the Rule 23(e)(2)(C) factor related to attorneys' fees weighs in favor of final approval. As explained in the motion for fees, the fee request in this case is reasonable and consistent with similar class actions nationwide and in the Eleventh Circuit. Even after fees and expenses, the settlement amount for the class remains substantial.

For these reasons, the Court should find that the settlement in this case is fair, reasonable, and adequate.

c)    *The Settlement Treats Class Members Equitably and Effectively Distributes the Settlement Fund.*

Rule 23(e) requires the Court to consider whether the method of distribution is effective and treats class members equitably. Courts have concluded that a notice program treats class members equitably where it distributes funds on a *pro rata* basis. *See Lloyd v. James E. Albertelli,*

8

*P.A.*, No. 20-cv-60300, 2020 WL 7295767, at *1 (S.D. Fla. Dec. 10, 2020); *see also Juris v. Inamed Corp.*, 685 F.3d at 1328 n.31. The allocation plan in this case proposed to distribute funds based on the amount of Defendants' Salmon each claimant purchased during the class period in the relevant indirect purchaser states and territories, providing direct cash relief to the class. Courts routinely find this method of distribution to be equitable and effective. *See, e.g.*, *Sullivan*, 667 F.3d at 327; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486, 2013 WL 12333442, at **79–80 (N.D. Cal. Jan. 8, 2013), *report and recommendation adopted by* 2014 WL 12879520, at *1 (N.D. Cal. June 27, 2014); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188, at *15 (E.D. Mich. Dec. 13, 2011); *In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 284–85 (D. Minn. 1997); *In re Corrugated Container Antitrust Litig.*, 556 F. Supp. 1117, 1129 (S.D. Tex. 1982). Therefore, these considerations weigh in favor of final approval.

**B.**      **The Settlement Class Should Be Certified.**

The Court previously granted preliminary certification of the Settlement Class after concluding that the class satisfied the requirements of Rule 23. Because those considerations have not changed, the Court should certify the Settlement Class for purposes of this settlement only. *Borcea*, 238 F.R.D. at 671 ("A class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." (internal quotations omitted)); *accord In re Equifax Inc.*, 999 F.3d at 1277 (affirming certification of settlement class).

The Settlement Class fulfills the prerequisites of Rule 23(a). First, the class is sufficiently numerous "that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Settlement Administrator identified and delivered individual notice to over 350,000 potential class members and at least 40,692 class members have filed claims to date, which is well above the threshold required for numerosity. Smith Decl. ¶¶ 9, 19; *see Rosen v. J.M. Auto Inc.*, 270 F.R.D. 675, 680 (S.D. Fla. 2009) (noting that more than forty class members is generally adequate to satisfy numerosity). Second, the Settlement Class's antitrust claims share common questions of law or fact that can be resolved in a common manner. *See Fed R. Civ. P. 23(a)(2)*; *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Defendants' liability for the state-law antitrust claims alleged by IPPs could be resolved in a common manner because IPPs have alleged a common price-manipulation scheme that raised prices across the United States. *See In re Terazosin Hydrochloride*

*Antitrust Litig.*, 220 F.R.D. 672, 686 (S.D. Fla. 2004) ("Specifically in the antitrust context, courts in this Circuit have consistently held that allegations of price-fixing, monopolization, and conspiracy by their very nature involve common questions of law or fact.").

Third, IPPs' claims are typical of the Settlement Class because they "arise from the same event or pattern or practice and are based on the same legal theory." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1356 (11th Cir. 2009); *see* Fed. R. Civ. P. 23(a)(3). The Class Representatives include restaurants, grocery stores, and a caterer who purchased Salmon for resale and are alleged to have paid increased prices for Salmon. Fourth, these Class Representatives and Class Counsel have adequately represented the class. Fed. R. Civ. P. 23(a)(4). The adequacy inquiry considers "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008). The Class Representatives have no conflicts of interest here because they stand to gain the same monetary relief as the class. That relief will be distributed on a *pro rata* basis based on the amount of Salmon they purchased during the relevant time period. Further, Class Counsel and the Class Representatives have more than adequately prosecuted this action, bringing the case through three years of litigation, including substantial discovery. In short, the Settlement Class and Class Counsel clearly meet the requirements of Rule 23(a).

Plaintiffs have satisfied the predominance requirement of Rule 23(b)(3) for settlement purposes. The predominant factual and legal issues here relate to Defendants' alleged anticompetitive conspiracy to raise the price of Salmon through unlawful price coordination. *See, e.g.*, Second Am. Compl. ¶¶ 227–34. These common issues predominate over individualized issues and can be decided in the same manner for the Settlement Class with respect to Plaintiffs' claims under the antitrust laws of the 34 jurisdictions at issue. *See In re Terazosin Hydrochloride*, 220 F.R.D. at 695; *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. at 620 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Resolving this dispute through a class action is the superior method of resolving the dispute. Fed. R. Civ. P. 23(b)(3). At least 40,692 claims have been filed to date. Smith Decl. ¶ 19. Without a class mechanism to resolve these claims, each of those class members could obtain relief only by bringing a separate case. On a class-wide basis, the recovery is substantial, especially given the stage of litigation and other risks inherent in complex litigation, as discussed above.

However, the individual recovery for each of these class members, especially those who have purchased less Salmon, would make individual litigation infeasible. *See Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 663 (M.D. Fla. 2015). Thus, a class action is the superior method of adjudicating this case.

In short, the Court should grant final certification of the class for settlement purposes. The Settlement Class clearly satisfies each of the requirements of Rule 23(a) and Rule 23(b)(3).

### C.   Class Counsel's Request for Reimbursement of Fees and Expenses Should Be Granted.

IPPs respectfully request that the Court award $9,900,000 in attorneys' fees, which is 30% of the $33 million gross settlement fund, and reimburse $1,278,166.09 in reasonable and necessary litigation expenses. The factual and legal bases for this request are set forth in IPPs' motion for attorneys' fees and litigation expenses, which IPPs incorporate by reference. *See* ECF No. 345.[3] For the reasons discussed in that motion, and as summarized below, the Court should award fees and reimburse litigation expenses.

Under Rule 23 and the common fund doctrine followed by the Eleventh Circuit, "[a]ttorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval." *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) (citing Fed. R. Civ. P. 23(e)). The common fund doctrine originates in the equitable powers of the federal courts to ensure individuals benefitting from a case are not "unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Eleventh Circuit has directed district courts to follow the common fund doctrine by awarding fees in the amount of a reasonable percentage of the settlement fund. *Camden I*, 946 F.2d at 774; *see Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999); *In re Equifax Inc.*, 999 F.3d at 1280.

Under the factors established by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), and later adopted by the Eleventh Circuit in *Camden I*, a fee award of 30% is appropriate in this case. *See Camden I*, 946 F.2d at 772 n.3. Several *Johnson* factors relate to the work performed by Class Counsel and the difficulty and skill required

---

[3] IPPs' filed their motion for fees and expenses on December 1, 2022, before class notice was issued and well before the deadlines for opt-outs or objections. Accordingly, IPPs satisfied the timing requirements discussed in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244, 1252 (11th Cir. 2020).

to litigate the case. *See* ECF No. 345 at 7–11 (analyzing *Johnson* factors 1, 2, 3, 4, 7, and 9). Class Counsel have vigorously litigated this complex case for over three years, investigating the claims, reviewing tens of thousands of pages of discovery in translation, negotiating discovery protocols, conducting depositions, serving 17 subpoenas on third parties, collecting Plaintiffs' documents for production, litigating discovery disputes, and briefing a motion to dismiss. While performing that work, Class Counsel faced several complexities based on the legal claims raised and the nature of the facts in this case. *See, e.g.*, *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000) (noting complexities of antitrust cases); *In re Nexium Antitrust Litig.*, 777 F.3d at 26 (noting complexities of indirect purchaser actions). Defendants are foreign corporations doing business in Norwegian, and Class Counsel had to navigate litigation during a global pandemic. The efforts of Class Counsel and the complexity of this case weigh in support of the fee award requested.

Two *Johnson* factors consider how the percentage sought compares to fees in similar cases. *See* ECF No. 345 at 12–13 (discussing *Johnson* factors 5 and 12). The 30% award sought here is consistent with antitrust cases in this district and nationwide. That percentage is exactly what the court awarded in the recently settled direct purchaser action and is at or below the percentage typically awarded in this district. *In re Farm-Raised Salmon*, ECF No. 543; *see, e.g.*, *Morgan v. Public Storage*, 301 F. Supp. 3d at 1252–53; *Diakos v. HSS Sys., LLC*, No. 14-61784, 2016 WL 3702698, at *7 (S.D. Fla. Feb. 5, 2016); *Duque v. 130 NE 40th St., LLC*, No. 14-23965-CIV, 2016 WL 7442797, at *3 (S.D. Fla. Jan. 27, 2016); *Gevaerts v. TD Bank*, No. 11:14-cv-20744, 2015 WL 6751061, at *14 (S.D. Fla. Nov. 5, 2015); *Cifuentes v. Regions Bank*, No. 11-cv-23455, 2014 WL 1153772, at *8 (S.D. Fla. Mar. 20, 2014). Moreover, the 30% sought here is in line with awards in indirect purchaser settlements. *See, e.g.*, *In re Interior Molded Doors Indirect Purchaser Antitrust Litig.*, No. 3:18-cv-00850, 2021 WL 5195089, at *3 (E.D. Va. July 27, 2021); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-02542, 2021 WL 2328431, at *1 (S.D.N.Y. June 7, 2021); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2020 WL 7264559, at *23 (N.D. Cal. Dec. 10, 2020); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 2015 WL 4528880, at *21. Because the award requested here is on par with awards in similar cases, these factors weigh in favor of the award.

The *Johnson* factors related to the risk borne by Class Counsel similarly weigh in favor of the award sought here. *See* ECF No. 345 at 14–15 (analyzing *Johnson* factors 6, 8, and 10). The

$33 million recovery is substantial and an excellent result for the class, especially because the case was still in its early stages when settlement was reached. The settlement thus avoids years of litigation. *See Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 633 (11th Cir. 2015). There were substantial risks avoided by settling this case, including risks unique to indirect purchaser actions. *See In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, MDL No. 1486, 2013 WL 12387371, at *20 (N.D. Cal. Nov. 5, 2013).

In short, because the *Johnson* factors weigh strongly in favor of the fee award requested, the Court should award 30% of the settlement fund as attorneys' fees.

IPPs have also requested reimbursement of litigation expenses. Courts may reimburse litigation expenses that were reasonable and necessary to the prosecution of the case. *Waters*, 190 F.3d at 1299; *Morgan*, 301 F. Supp. 3d at 1258. Common expenses courts have recognized as reasonable and necessary include "among others, fees for experts, photocopies, travel, online research, translation services, mediator fees, and document review and coding expenses." *Gevaerts*, 2015 WL 6751061, at *14. Class Counsel have detailed the expenses incurred in the prosecution of this case, *see* ECF No. 345 at 16, all of which fit into the categories of necessary litigation expenses for a complex case. In total, IPPs seek $1,278,166.09 in expenses, an amount that is less than half of the expenses recently awarded in the direct purchaser case. Order Approving Class Settlement at 9, *In re Farm-Raised Salmon*, ECF No. 543. Because the expenses sought here are reasonable and were necessary to bring this case, the Court should reimburse Class Counsel for litigation expenses from the settlement fund.

## V.    <u>CONCLUSION</u>

IPPs obtained a $33 million settlement for the class of indirect purchasers in this case. This is an excellent result for the class, as it provides direct cash relief that will be distributed on a *pro rata* basis. To date, no class member has filed an objection. The settlement clearly meets the requirements of Rule 23(e) and is fair, reasonable, and adequate. The Settlement Class also meets the requirements for class certification under Rule 23(a) and 23(b)(3). Accordingly, IPPs request that the Court approve the settlement, certify the class for settlement purposes only under Rule 23, appoint IPPs as Class Representatives, and appoint the law firms of Zwerling, Schachter & Zwerling LLP (Fred T. Isquith) and Lockridge Grindal Nauen P.L.L.P. (Heidi M. Silton) as Settlement Class Counsel. Class Counsel's fee request is similarly reasonable and fair, especially in light of the complex issues in this case, the amount of work performed by counsel, and the risks

associated with antitrust cases. Class Counsel respectfully request that the Court grant their motion for an award of attorneys' fees and reimbursement of litigation expenses. After the Final Approval Hearing currently scheduled for February 24, 2023, Plaintiffs respectfully request that the Court grant these motions and enter an order granting the relief described above.

## <u>CERTIFICATION OF PRE-FILING CONFERENCE</u>

On January 11, 2023, Class Counsel provided Defendants with a copy of this motion. Defendants have agreed that they do not oppose this motion.

Dated: January 19, 2023

/s/ *Nathan C. Zipperian*
Jayne A. Goldstein (FBN 144088)
Nathan C. Zipperian (FBN 61525)
MILLER SHAH LLP
1625 North Commerce Parkway, Suite 320
Fort Lauderdale, FL 33326
(866) 540-5505
jagoldstein@millershah.com
nczipperian@millershah.com

*Liaison Counsel for Indirect Purchaser Settlement Class*

Heidi M. Silton (*pro hac vice*)
Kristen G. Marttila (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
Derek C. Waller (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com
kgmarttila@locklaw.com
jcbourne@locklaw.com
dcwaller@locklaw.com

Robert S. Schachter (*pro hac vice*)
Robin F. Zwerling (*pro hac vice*)
Fred Taylor Isquith, Sr. (*pro hac vice*)
Fred Isquith, Jr. (*pro hac vice*)
ZWERLING, SCHACHTER & ZWERLING LLP
41 Madison Avenue, 32nd Floor
New York, NY 10010
(212) 223-3900
rschachter@zsz.com
rzwerling@zsz.com
ftisquith@zsz.com
fisquith@zsz.com

*Co-Lead Class Counsel for the Indirect Purchaser Settlement Class*