**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | |
|---|---|
| Wood Mountain Fish LLC, *et al.*, | Civil No. 19-22128-CIV-SMITH/LOUIS |
| Plaintiffs, | |
| v. | |
| Mowi ASA (f/k/a Marine Harvest ASA), *et al.*, | |
| Defendants. | |

**INDIRECT PURCHASER**
**PLAINTIFFS' AMENDED UNOPPOSED MOTION FOR DISTRIBUTION**
**OF SETTLEMENT FUNDS AND INCORPORATED MEMORANDUM OF LAW**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................... 1

      A.     Procedural History ................................................................................... 1

      B.     Claims Processing .................................................................................... 3

      C.     Distribution of the Net Settlement Fund .................................................. 4

III.    ARGUMENT ........................................................................................................ 5

      A.     The Court Should Approve the Recommendations of the Settlement
            Administrator and Co-Lead Class Counsel Concerning Claims
            Acceptance. ............................................................................................... 5

      B.     The Court Should Approve Payment of Valid Late Claims. ................................ 6

      C.     The Court Should Approve a Minimum Payment of $5 Per Claim........................ 6

      D.     The Court Should Approve a Residual Distribution of *De Minimis*
            Funds to a *Cy Pres* Beneficiary. ............................................................. 7

IV.    CONCLUSION................................................................................................... 8

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Cendant Corp. Prides Litig.*,
    233 F.3d 188 (3d Cir. 2000)...................................................................................................6

*Frank v. Gaos*,
    139 S. Ct. 1041 (2019).........................................................................................................7

*George v. Academy Mortg. Corp. (UT)*,
    369 F. Supp. 3d 1356 (N.D. Ga. 2019) ...............................................................................5

*Juris v. Inamed Corp.*,
    685 F.3d 1294 (11th Cir. 2012) ..........................................................................................5

*Lloyd v. James E. Albertelli, P.A.*,
    No. 20-cv-60300, 2020 WL 7295767 (S.D. Fla. Dec. 10, 2020)........................................5

*In re Lupron Mktg. & Sales Practices Litig.*,
    345 F. Supp. 2d 135 (D. Mass. 2004) .................................................................................7

*Nelson v. Mead Johnson & Johnson Co.*,
    484 F. App'x 429 (11th Cir. 2012) .................................................................................5, 7

*Perez v. Owl, Inc.*,
    2022 WL 3371401 (M.D. Fla. July 18, 2022) ....................................................................7

*Poertner v. Gillette Co.*,
    618 F. App'x 624 (11th Cir. 2015) .....................................................................................7

*Valley Drug Co. v. Geneva Pharms., Inc.*,
    262 F. App'x 215 (11th Cir. 2008) .................................................................................6, 7

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir. 1999) .................................................................................4, 6, 7

**Other Authorities**

Federal Rule of Civil Procedure 23(e) .............................................................................................1

ii

## I.     **INTRODUCTION**

The Court certified a settlement class (the "Class") and approved a settlement between indirect purchasers of farm-raised salmon ("IPPs" or "Plaintiffs") and Defendants in this case on February 27, 2023. *See* ECF No. 352 ¶ 14 ("Final Approval Order"). The Court-appointed Settlement Administrator has completed processing claims from the Class, and IPPs now seek an order authorizing distribution of settlement funds pursuant to the Court's Final Approval Order and Federal Rule of Civil Procedure 23(e).

The Settlement Administrator worked closely with Class Counsel to process claims and verify eligibility. Of the claims submitted, the Settlement Administrator identified 1,443 valid claims, and IPPs request that the Court approve distribution of settlement funds for those claimants. Four valid claims were received after the deadline, including one late but otherwise valid response to a deficiency notice,[1] and IPPs request that the Court approve those claims. IPPs also request that the Court approve payment of a minimum of $5 for all valid claims where the *pro rata* distribution amount would be less than $5. Finally, IPPs request authorization to pay the outstanding costs of settlement administration and distribute the remaining *de minimis* funds to a charitable beneficiary, consistent with the Court's Final Approval Order.

## II.    **BACKGROUND**

### A.     **Procedural History**

IPPs filed this case alleging that Defendants coordinated prices of farm-raised salmon ("Salmon") in violation of the antitrust laws. ECF No. 1 ¶ 1.[2] The Court approved the settlement

---

[1]      The original version of this motion excluded one claim validated by a late deficiency response from the Settlement Administrator's calculations and declaration. *See* ECF No. 361 (Motion for Distribution of Funds); ECF No. 361-1 (Declaration of Derek Smith in Support of Motion for Distribution of Funds). Class Counsel learned last week about this untimely deficiency response from the Settlement Administrator, who had erroneously excluded this response from its prior declaration. Class Counsel took immediate steps to address the issue and, with this amended motion and the supporting supplementing declaration, Class Counsel asks the Court to approve the claim validated by the late deficiency response. This will ensure the late deficiency response is treated consistently with the other untimely claims that are otherwise valid. *See* Supp. Decl. of Derek Smith Regarding Claims Processing and Distribution ("Supp. Smith Claims Decl.") ¶ 5. This amended motion supersedes the previously filed motion, which Class Counsel hereby withdraws and which may be denied as moot.

[2]      IPPs have set forth the detailed factual background and procedural history of this case in previous motions. *See* ECF No. 336 (Motion for Preliminary Approval); ECF No. 345 (Motion for Fees and Expenses).

of $33 million (the "Settlement Fund"), which had been negotiated under the oversight of the Honorable Edward Infante, retired Chief Magistrate Judge for the Northern District of California. ECF No. 336-2 ("Settlement Agreement"). The Court certified the following Settlement Class:

> All persons and entities who indirectly purchased, for resale, Defendants' farm-raised salmon or products derived therefrom in any of the following states, districts, or territories: Alabama, Arizona, Arkansas, California, the District of Columbia, Florida, Guam, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, or Wisconsin.

Final Approval Order ¶ 4. The Court also granted IPPs' motion for attorneys' fees and reimbursement of litigation expenses, approving $9,900,000 in fees and $1,278,166.09 in expenses to be paid from the settlement fund. *Id.* ¶¶ 18–19. After all costs, attorneys' fees, and other expenses are paid from the Settlement Fund, the Court directed the remaining funds to be distributed to the Class on a *pro rata* basis in accordance with the Settlement Agreement. *Id.* ¶ 25. The Court dismissed the action and entered final judgment, and it retained jurisdiction over the Settlement Agreement. *Id.* ¶¶ 24, 28.

The Court-appointed Settlement Administrator issued individual notice to potential Settlement Class members on December 15, 2022. Decl. of Derek Smith Regarding Notice Administration ("Smith Notice Decl.") ¶ 9. Notice was delivered via email to 40,352 potential class members. *Id.* For potential class members whose email notices were not delivered, a notice was sent via U.S. mail. *Id.* ¶ 11. Another 353,537 notices were sent via U.S. mail to potential class members where no email address was identified. *Id.* ¶ 9. As part of the notice program, the Settlement Administrator also published notice in several industry publications likely to be viewed by potential Settlement Class members. *Id.* ¶¶ 13–14. No opt-out requests or objections were filed.

The Court set the deadline to file claims on February 17, 2023. Under the Plan of Allocation submitted to the Court in connection with Plaintiffs' Motion for Preliminary Approval, settlement funds would be distributed to Settlement Class Members who submitted "timely and valid claims showing indirect purchases of Defendants' farm-raised salmon, or products derived from Defendants' farm-raised salmon." ECF No. 336-6 ("Plan of Allocation") at 1. The "Net Settlement Fund" constitutes the settlement funds remaining after subtracting court-approved funds for administrative costs, attorneys' fees, and litigation expenses. *Id.* The Net Settlement Fund was

proposed to "be allocated, *pro rata*, to eligible Settlement Class Members on a claims-made basis, based upon the total dollar value of each Settlement Class Member's credited verified purchase amount ('Verified Claim Amount') in proportion to the total amount of the Net Settlement Fund." *Id.* Therefore, each settlement class member would receive a percentage of their claim amount, and that percentage would vary based on the number and dollar amounts of valid claims submitted. *Id.*

The Plan of Allocation established a process to submit and verify claims and to cure claim deficiencies. If a claim was determined to be deficient by the Settlement Administrator, the Settlement Administrator sent a notice identifying the deficiency and explaining how and during what time period the claimant could seek to cure it. *Id.* at 2. In cases where the claim was valid but inaccurately calculated, the Settlement Administrator would send a notice of claim adjustment. *Id.* Claim adjustment notices informed the class member how to object to the adjustment. *Id.* If a class member disputed the Settlement Administrator's claim determination, the class member was provided information on how to seek Court review of the claim. *Id.* at 3.

**B.** **Claims Processing**

The Settlement Administrator processed 111,126 claims, which were submitted by potential class members and third parties on behalf of class members. Supp. Decl. of Derek Smith Regarding Claims Processing and Distribution ("Supp. Smith Claims Decl.") ¶ 2. The claims were for a total of $6,893,400,547.64 in salmon purchases. *Id.* The vast majority were submitted on a timely basis, by February 17, 2023, and four were submitted after the deadline. *Id.*

The Settlement Administrator reviewed and analyzed each claim according to the process set forth in the Plan of Allocation and approved by the Court. In analyzing the claims submitted, the Settlement Administrator identified four types of deficiencies: (1) claim forms with missing purchase information; (2) failure to submit adequate information or documentation to support their purchases; (3) multiple claims filed by a single individual, as determined by the name, mailing address, or Internet Protocol (IP) address of the claim, that did not appear to be duplicates but were suspicious; and (4) claims submitted where it was unclear whether the salmon was purchased for resale, that is, they appeared to be individual claimants and not business entities. Supp. Smith Claims Decl. ¶ 3. The Settlement Administrator found that 108,480 claims were deficient, the vast majority of which appeared to be by individuals who purchased salmon for personal consumption. *Id.* ¶ 4. If the purchase was for personal consumption, those individuals were not members of the

Settlement Class, which only includes indirect purchasers who purchased Defendants' salmon for resale. *See* Final Approval Order ¶ 4.

The Settlement Administrator sent deficiency notices by email to all 108,480 claimants who submitted claims that were initially deficient. Supp. Smith Claims Decl. ¶ 4. These claimants had an opportunity to respond with more information and correct or dispute the deficiency. The Settlement Administrator received 457 responses to the deficiency notice emails. *Id.* Of those, 161 claims were validated based on responses. *Id.* The remaining responses did not provide information necessary to validate their claims, and they were notified the claim would be denied. *Id.*

Of the 111,126 claims submitted to the Settlement Administrator, 35 were rescinded and 1,377 were duplicative of other claims. *Id.* ¶ 6. Of the four late claims, three were approved and one was not validated because it did not claim any salmon purchases. *Id.* The three late claims totaled $15,759,912.24 in purchases. In total, 1,443 claims were approved for a total of $4,417,756,556.19 in purchases. *Id.* The Settlement Administrator calculated payments for approved claimants on a pro rata basis based on a Net Settlement Fund of $22,359,161.06, with a $5.00 minimum payment. *Id.* ¶ 7. The Settlement Administrator has submitted an exhibit showing each claim, the purchase amount, and the settlement payment. *See* Supp. Smith Claims Decl. Ex. A. The Settlement Administrator expects payment amounts to change slightly based on the available interest in the Fund at the time of distribution. *Id.* ¶ 7.

**C.**     **Distribution of the Net Settlement Fund**

Defendants paid a total of $33 million into the Settlement Fund pursuant to the Settlement Agreement. This money has been earning interest since it was deposited. An accounting of the Net Settlement Fund is as follows:

| | |
|---|---|
| Gross Settlement Fund | $33,000,000.00 |
| Interest | $1,251,669.15 |
| Attorneys' Fees | - $9,900,000.00 |
| Litigation Expenses | - $1,278,166.09 |
| Income Taxes | - $314,342.00 |
| Administrative Costs | - $400,000.00 |
| **Net Settlement Fund** | **$22,359,161.06** |

### III.    ARGUMENT

This Court has supervisory authority over class action settlements and has retained jurisdiction over this case for resolving matters related to the settlement. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1300 (11th Cir. 1999) (discussing the "supervisory role" of district courts in class action settlements); Final Approval Order ¶ 24. Class settlements distributed to eligible class members on a *pro rata* basis are typically found to treat class members equitably. *See Lloyd v. James E. Albertelli, P.A.*, No. 20-cv-60300, 2020 WL 7295767, at *1 (S.D. Fla. Dec. 10, 2020); *George v. Academy Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1379 n.6 (N.D. Ga. 2019); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1328 n.31 (11th Cir. 2012). Where there are residual funds in a class settlement, a *cy pres* distribution to a public charity is appropriate. *See Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 435 (11th Cir. 2012).

### A.    The Court Should Approve the Recommendations of the Settlement Administrator and Co-Lead Class Counsel Concerning Claims Acceptance.

KCC performed a thorough claims review process and has recommended 1,443 claims to be paid according to the proposed plan of distribution. The Court should approve these recommendations and order disbursement of settlement funds.  The process was fair, thorough, and provided ample opportunity for claimants to correct any deficiencies.

The deficiencies identified by KCC were appropriate reasons to deny claims. The vast majority of claims denied by KCC were claims by individual consumers who did not appear to have purchased salmon for resale. Supp. Smith Claims Decl. ¶¶ 3, 4. Because the Settlement Class only includes indirect purchasers of Defendants' salmon who purchased the salmon for resale, these claims were properly denied by KCC. *See* Final Approval Order ¶ 4. The remaining deficient claims lacked purchase information altogether, were missing adequate information or supporting documentation, or appeared to be suspicious because they were submitted under the same name or from the same IP address. Supp. Smith Claims Decl. ¶ 3. These are valid reasons to deny claims, and each claimant was notified of the deficiency and an opportunity to correct claims. Of those notified of deficiencies, 457 responded and 161 of those claims were validated. *Id.* ¶¶ 4, 5.

Class Counsel has carefully reviewed denial reasons and samples of denied claims to verify KCC's analysis and recommendations. The denied claims contain many from uncommon email domains, duplicative names, apparently false names, and claims all submitted from the same IP address with slightly different information. Based on Class Counsel's review, and in consultation

with KCC, Class Counsel is confident the claims process used will protect settlement funds by excluding improper claims and ensuring that genuine Settlement Class Members receive payment. In contrast to the denied claims, the approved claims are primarily businesses[3] and all were able to provide information to validate their purchase of Defendants' salmon.

### B. The Court Should Approve Payment of Valid Late Claims.

KCC received three otherwise valid claims after the claim submission deadline, and one otherwise valid claim that was corrected several months late. These claims amounted to a total of $15,759,912.24 in purchases, and the late deficiency response totaled an additional $8,015,000.34 in purchases. Supp. Smith Claims Decl. ¶ 6. The Court has discretion to approve these claims, and because they are appropriate and otherwise valid, the Court should do so.

Two claims were submitted by educational institutions and received on April 5, 2023. One claim was submitted by a seafood supplier on May 23, 2023. KCC was able to process these claims and validate the purchase amounts, and none of the claims delayed the claims review process. The late deficiency response was received on December 14, 2023. *Id.* ¶ 5. The Court has discretion to approve late claims. *See Waters*, 237 F.3d at, 1279 (recognizing the court's "equitable power to accept late claims" in a class settlement); *see also In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 197 (3d Cir. 2000) (finding that district court did not abuse its discretion in allowing late-filed and late-cured claims in class settlement). Additionally, the Settlement Agreement does not restrict the approval of late-filed claims. Settlement Agreement ¶ 13; *see Valley Drug Co. v. Geneva Pharms., Inc.*, 262 F. App'x 215, 218 (11th Cir. 2008) (noting that where deadlines were negotiated by parties as part of a settlement, courts will treat the deadline as a contract term). In these circumstances, IPPs request that the Court exercise its discretion to approve the four late-filed, but otherwise valid, claims.

### C. The Court Should Approve a Minimum Payment of $5 Per Claim.

The Court has approved a *pro rata* distribution. For small payment amounts, however, a *pro rata* distribution would result in a payment that may be worth less than the cost of sending that

---

[3]     Some legitimate indirect purchasers may be individuals including, for example, Class Representative Amy Mehaffey, who is the sole proprietor of an unincorporated catering business. Claims were not denied solely because the claimant was an individual where the individual submitted information demonstrating their purchases for resale.

payment to the class member, may be less likely to be cashed or deposited, and it is administratively more efficient for the Settlement Administrator to distribute minimum payments in an amount of $5 rather than varying amounts of less than $5. Further, setting a $5 minimum payment amount for all valid claims (rather than a strict pro rata amount) does not materially affect other Settlement Class Members. Only 219 claims are less than $5, so those class members will receive, in total, $1,095 out of $22,359,161.06 of net settlement fund going to the class. If there were no minimum award amount set, those 219 class members would receive a total of $457.72, but the expense of sending most of those payments would be greater than the payment itself. Therefore, IPPs request that the Court establish a minimum $5 payment per claim. In other words, any Settlement Class Member whose *pro rata* distribution would be $5 or less would receive a payment of $5. Because this amount has not been set by the parties in the Settlement Agreement, the Court has discretion to set an amount. *Cf. Waters*, 237 F.3d at 1279 (recognizing court's equitable powers to manage settlement); *Valley Drug Co.*, 262 F. App'x at 218 (noting that courts respect negotiated settlement terms). A payment of less than $5 would waste settlement funds through the costs of administration, and courts have adopted cut-offs at higher amounts to promote an efficient and fair use of class settlement funds. *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 144 (D. Mass. 2004) (authorizing class counsel to set a minimum payment); *cf. Perez v. Owl, Inc.*, 2022 WL 3371401, at *6 (M.D. Fla. July 18, 2022) (setting minimum payment of $100 in Fair Labor Standards Act collective action). For these reasons, the Court should approve a minimum payment of $5 per claim.

**D.** **The Court Should Approve a Residual Distribution of *De Minimis* Funds to a *Cy Pres* Beneficiary.**

The Settlement Agreement and this Court's Final Approval Order contemplated a distribution to a charitable beneficiary for any residual funds left after distribution to the Settlement Class. Settlement Agreement ¶ 2.d ("If, following further distribution, the remaining funds become *de minimis* in Class Counsel's reasonable judgment, such residual funds shall be made the subject of an application to the Court by Indirect Purchase Plaintiffs for *cy pres* distribution."); *accord.* Final Approval Order ¶ 25 (permitting *de minimis* funds to be made to "Just the Beginning – A Pipeline Organization, 70 West Madison Street, Suite 2900, Chicago, IL 60602").

"In the class action context, *cy pres* refers to the practice of distributing settlement funds not amenable to individual claims or meaningful pro rata distribution to nonprofit organizations

whose work is determined to indirectly benefit class members." *Frank v. Gaos*, 139 S. Ct. 1041, 1045 (2019). The Eleventh Circuit has held that *cy pres* distributions are "a permissible method to distribute unclaimed settlement funds." *Nelson*, 484 F. App'x at 435; *see Poertner v. Gillette Co.*, 618 F. App'x 624, 629 (11th Cir. 2015) (finding no abuse of discretion where *cy pres* distribution was awarded to 501(c)(3) charities). Here, IPPs propose to distribute all remaining funds to the Settlement Class, but it is possible that some payments will not be deposited and will remain unclaimed. To efficiently address that possibility, IPPs request that the Court approve a residual *cy pres* distribution to Just the Beginning, a 501(c)(3) public charity dedicated to offering pipeline programs aimed at increasing diversity in the legal profession and judiciary, if Class Counsel determines that any unclaimed funds are not practicable to redistribute to the Settlement Class. *See* Final Approval Order ¶ 25.

## IV.   **CONCLUSION**

The Court should approve IPP's motion for distribution. The Settlement Administrator has diligently reviewed over 100,000 claims, properly identified valid claims for Settlement Class Members, and properly denied invalid claims. Any claimant whose claim was deemed deficient received proper notice and ample opportunity to respond. Therefore, the Court should approve the recommended distribution of the settlement proceeds.

<u>**CERTIFICATION OF PRE-FILING CONFERENCE**</u>

Class Counsel conferred with counsel for Defendants about this motion on March 12, 2024.

Defendants do not oppose this motion.


Dated: March 12, 2024                          MILLER SHAH LLP

<u>*/s/ Nathan C. Zipperian*</u>
Jayne A. Goldstein (FBN 144088)
Nathan C. Zipperian (FBN 61525)
1625 North Commerce Parkway, Suite 320
Fort Lauderdale, FL 33326
(954) 515-0123
jagoldstein@millershah.com
nczipperian@millershah.com

*Liaison Counsel for Indirect Purchaser*
*Settlement Class*

Heidi M. Silton (*pro hac vice*)
Joseph C. Bourne (*pro hac vice*)
Derek C. Waller (*pro hac vice*)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900
hmsilton@locklaw.com
jcbourne@locklaw.com
dcwaller@locklaw.com

Robert S. Schachter (*pro hac vice*)
Robin F. Zwerling (*pro hac vice*)
Fred Taylor Isquith, Sr. (*pro hac vice*)
ZWERLING, SCHACHTER & ZWERLING LLP
41 Madison Avenue, 32nd Floor
New York, NY 10010
(212) 223-3900
rschachter@zsz.com
rzwerling@zsz.com
ftisquith@zsz.com

*Co-Lead Class Counsel for the Indirect Purchaser*
*Settlement Class*